## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

MAX MINDS, LLC,

                Plaintiff,

v.

TRIANGLE EXPERIENCE GROUP, INC.,
ROBERT CLARE, JEFFREY MASE,
KEVIN MULLICAN, and JOHN DOES 1-10,

                Defendants.

CAUSE NO.  1-24-cv-0779-MPB-MKK

JURY TRIAL DEMANDED

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE ECONOMIC ESPIONAGE ACT AS AMENDED BY THE DEFEND TRADE SECRETS ACT, COPYRIGHT INFRINGEMENT, REMOVAL OR FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION, CIRCUMVENTION, AND FALSE DESIGNATION OF ORIGIN

Max Minds, LLC, ("MAX") by counsel, hereby files this Complaint and alleges the following against defendants and alleges as follows:

### SUMMARY OF THE ACTION

1. This is an action for trade secrets theft and misappropriation by a prime contractor to the government in violation of the Economic Espionage Act of 1996 as amended by the Defend Trade Secrets Act of 2016; copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, et. seq.; circumvention in violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1201; removal or falsification of copyright management information in violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1202; and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

2. The victim, plaintiff Max Minds, LLC, seeks expedited preliminary injunctive relief and a seizure order pursuant to 18 U.S.C. § 1836(b)(2) due to the national security threat

posed by the actions of defendants in exposing plaintiff's confidential, trade secret source code on the internet.

3.      The defendants' actions threaten the security of plaintiff's software which is used by federal agencies in the Department of Defense (DOD) to operate classified command and control systems. A motion for seizure order and preliminary injunction pursuant to 18 U.S.C. § 1836(b)(2) and supporting affidavits are filed separately herewith.

## JURISDICTION AND VENUE

4.      This is an action arising under the Economic Espionage Act of 1996 as amended by the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b); the Copyright Act, 17 U.S.C. § 501; the Digital Millenium Copyright Act, 17 U.S.C. §§ 1201, 1202; the Lanham Act, 15 U.S.C. § 1125(a).

5.      This Court has subject matter jurisdiction over these claims pursuant 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a).

6.      This Court has personal jurisdiction over Defendant TEG because TEG consented to jurisdiction and venue pursuant to the parties' agreements.

7.      This Court also has personal jurisdiction over TEG because, among other things (i) this case arises out of agreements made or to be performed in Indiana and (ii) TEG has derived substantial revenue from goods and/or services rendered in Indiana and from interstate commerce.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(c)(2) because TEG "resides" in the Southern District of Indiana given that TEG is subject to personal jurisdiction in this District.

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district.

10.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) because the events giving rise to the claims occurred in this district, Defendants engaged in infringement in this district, Defendants reside in this district, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

11.      MAX is an Indiana limited liability company, with its principal place of business of 12400 North Meridian Street, Suite 175, Carmel, Indiana 46032.

12.      MAX creates cutting edge software platforms for commercial and governmental applications.

13.      MAX's sole member is CEO Brandon Fischer ("Fischer") who is domiciled in Indiana.  Mr. Fischer is also MAX's CEO and founder.

14.      Triangle Experience Group, Inc. ("TEG") is a Virginia stock corporation with its principal place of business at 11182 Hopson Road, Suite A, Ashland, VA 23005.

15.      Defendant Robert Clare is the President and CEO of TEG.

16.      Defendant Jeffrey Mase is the Chief Operating Officer of TEG.

17.      Defendant Kevin Mullican is an employee of TEG with the title Program Manager.

18.      Defendants John Does 1-10 are employees of TEG whose true names and identities are not yet known but who will be identified in discovery in this case.

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

## MAX'S SOFTWARE

19.     MAX creates highly functional software platforms for commercial and governmental applications.

20.     MAX's chief commercial product is currently called Alleo, and was previously known as Haptic. Alleo is an interactive content collaboration platform that allows users to customize their own easy-to-use, visual collaboration solution.

21.     Alleo is a browser-based interactive digital canvas serving as the single destination for ideating and creating customizable hybrid collaboration and presentation experiences.

22.     Alleo unifies the collaborative experience by allowing users to easily assemble the necessary people, content and tools in a way that promotes engagement and delivers collaboration equity in any hybrid environment.

23.     Initially designed as a high-level solution for hybrid collaboration called Haptic, MAX's developers evolved the system to address the changing needs of users and their preferred work models.

24.     The system MAX created known as Haptic was recently rebranded as Alleo for commercial users. The Haptic name remains in use for government users.

25.     MAX's software is used in briefing centers, experience centers, innovation centers and command and control centers. MAX's customers include Fortune 100 companies in consulting, telecommunications, IT, pharma, and manufacturing.

26.     MAX's software is typically licensed to customers as a software as a service (SAAS) system residing on a server on the internet (a "cloud" server) and customers access the software using an internet browser.

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

27.     Government customers—especially customers in the military services sector—require more security for their systems than a SAAS software offering can provide. Therefore, Government customers typically install MAX's Haptic Federal software "on premise" on their own servers to provide users with secure access that mission critical applications require.

28.     MAX began development of its software in or around March 2019.

29.     Full-time development began in May 2019.

30.     Alleo/Haptic is an original, creative software program written in several different programming languages.

31.     Alleo/Haptic is a server-based collaborative workspace that utilizes a browser interface, enabling users to collaborate in real-time. It also features screen sharing capabilities that permit users to select and share the display window of individual programs from their workstations to the Alleo/Haptic workspace. Alleo/Haptic is an infinite canvas of screen real estate that operates synchronously for all members in real-time. Alleo/Haptic is both the front-end operating system and underlying source code that is responsible for delivering these capabilities.

32.     In June 2019, MAX demonstrated its software to industry partners and potential commercial customers at InfoComm.

33.     Also in July 2019, MAX conducted another demonstration of its software to industry partners and potential customers.

34.     MAX's first customer for the government version of its software called Haptic Federal was an agency of the Department of Defense (DOD) that agreed to license Haptic Federal in August of 2019.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

35.     The agency of DOD is still a client and user of Haptic Federal through its prime contractor Peraton. The agency of DOD continues to use Haptic Federal on premise to manage command and control processes within the agency.

36.     On or about October 1, 2019, MAX posted a video demonstration of its software showing a highly functional product. The video demonstration can be viewed at this URL: https://vimeo.com/363671367/409066cb0e.

37.     In or about November 2019, Haptic Federal was installed on-premise for the aforementioned DOD agency.

### MAX'S COPYRIGHT, TECHNOLOGICAL PROTECTIONS AND COPYRIGHT MANAGEMENT INFORMATION FOR ITS SOFTWARE

38.     Max's Haptic Federal software is an original creative work of authorship entitled to copyright protection.

39.     Haptic Version 1.2.21.1 was registered as an unpublished work with the Copyright Office effective April 19, 2024, Registration No. TXu 2-425-362. A true and correct copy of the registration certificate is attached hereto as **Exhibit 1**.

40.     Haptic Version 1.2.125 was registered as an unpublished work with the Copyright Office effective April 2, 2024, Registration No. TXu 2-412-490. A true and correct copy of the registration certificate is attached hereto as **Exhibit 2**.

41.     Haptic Federal Version 3.1.21.4 was registered as an unpublished work with the Copyright Office effective March 21, 2024, Registration No. TXu 2-419-714. A true and correct copy of the registration certificate is attached hereto as **Exhibit 3**.

42.     Haptic Federal Version 3.1.21.8 was registered as an unpublished work with the Copyright Office effective March 21, 2024, Registration No. TXu 2-419-718. A true and correct copy of the registration certificate is attached hereto as **Exhibit 4**.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

43.     All Haptic Federal software is protected by technological measures that effectively control access to the software in that in the ordinary course of the software's operation, these measures require the application of information, or a process or a treatment, with the authority of MAX, to gain access to the work.

44.     One technological measure that MAX uses to protect Haptic Federal is a license key that is required to install the software.

45.     MAX applied copyright management information (CMI) to the Haptic Federal software.

46.     The copyright management information MAX applied to the Haptic Federal Software consisted of the Haptic name which is title, author and identifying information for the title and author of Haptic Federal, MAX.

## MAX'S TRADE SECRETS IN ITS SOFTWARE

47.     The Alleo/Haptic software source code was written in several different programming languages by MAX employees and developers under contract to MAX. All employees and developers working for MAX are contractually bound to maintain the confidentiality of the software they develop for the company.

48.     The source code for the Alleo/Haptic software is a compilation, program, and code, which derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

49.     The Alleo/Haptic source code is never distributed to end users in source code format. Instead, the source code is compiled into executable, binary or web format executable code in such a fashion as to obscure the underlying trade secrets contained within the code.

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

### THE HAPTIC FEDERAL EULA

50.     When Haptic Federal is licensed to end users it is always pursuant to restrictions contained in an End User License Agreement (EULA) such as the EULA attached hereto as **Exhibit 5.**

51.     Pursuant to the EULA, users of the Haptic Federal software are granted a limited "non-exclusive, non-transferable, non-sublicensed" license for a limited time.

52.     Pursuant to the EULA, users of the Haptic Federal software agree not to "directly or indirectly (i) sell, rent out, lease, license, distribute, market, exploit the Product or any of its parts commercially, (ii) reverse engineer, decompile, disassemble, adapt, reproduce, or create derivative works of this Product," "(iii) create, use and/or distribute "auto", "trainer", "script" or "macro" computer programs or other "cheat" or "hack" programs or software applications for this Product (whether over the internet or in local area network); (iv) remove, alter, disable or circumvent any copyright and trademark indications or other authorship and origin information, notices or labels contained on or within this Product and (v) export or re-export this Product or any copy of adaptation in violation of any applicable laws or regulations."

53.     Pursuant to the EULA, users of the Haptic Federal software agree that MAX retains and owns all intellectual property rights in the Haptic Federal software.

54.     Pursuant to the EULA, users of the Haptic Federal software agree to comply with all applicable laws, rules and regulations applicable to the software.

55.     Pursuant to the EULA, users of the Haptic Federal software agree not to "create, use, share and/or publish by any means in relation to the Product any material (text, words, images, sounds, videos, etc.) which would breach of a duty of confidentiality, infringe any intellectual property right or an individual's right to privacy or which would incite the

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

committing of an unlawful act (in particular, piracy, cracking or circulation of counterfeit software)."

56.     Pursuant to the EULA, users of the Haptic Federal software agree not to "create, supply or use alternative methods of using the Products, for example server emulators."

57.     Pursuant to the EULA, users of the Haptic Federal software agree not to "modify, distort, block, abnormally burden, disrupt, slow down and/or hinder the normal functioning of all or part of the Product, or their accessibility to other users, or the functioning of the partner networks of the Product, or attempt to do any of the above."

58.     Pursuant to the EULA, "the laws of the United States and the State of Indiana" apply to the EULA.

59.     Pursuant to the EULA, "any action at law or in equity arising under this EULA shall be finally adjudicated or determined in any court or courts of the State of Indiana, or of the United States of America, in Hamilton County, Indiana."

## THE HAPTIC FEDERAL SOURCE CODE LICENSE AGREEMENT

60.     The Haptic Federal source code has only been distributed in limited circumstances pursuant to significant restrictions contained in a Source Code License Agreement ("SCLA").

61.     The source code for MAX's software has never been distributed to users.

62.     One limited circumstance where MAX agreed to provide restricted access to the Haptic Federal source code was to TEG pursuant to a Source Code License Agreement dated March 30, 2021 (SCLA) attached hereto as **Exhibit 6**.

63.     Subject to and conditioned on TEG's payment of fees owed pursuant to the SCLA and TEG's compliance with all the terms and conditions of the SCLA, MAX grated TEG "a non-exclusive, non-sublicensable, and non-transferable (except in compliance with Section 12(g) of

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

the SCLA), a license during the SCLA's term to (i) use the Source Code for the [Haptic Federal]

system for [TEG's] Internal business purposes; and (ii) use and make a reasonable number of

copies of the Documentation [for the Haptic Federal software] solely for [TEG's] internal

business purposes in connection with [TEG's]  use of the Source Code."

64. The SCLA further restricted the use of the Haptic Federal source code to

"Authorized Users." An "Authorized User" is defined as "an employee or other end user of

[TEG] who [TEG] permits to access and use the Source Code for the software and/or

Documentation pursuant to [TEG's] license."

65. The SCLA restricted TEG's use of the Haptic Federal source code further. The

section entitled "Use Restrictions" provides:

> <u>Use Restrictions</u>. Licensee shall not use the Source Code or Documentation for
> any purposes beyond the scope of the license granted in this Agreement. Without
> limiting the foregoing and except as otherwise expressly set forth in this
> Agreement, Licensee shall not at any time, directly or indirectly: (i) copy, modify,
> or create derivative works of the Source Code or the Documentation, in whole or
> in part, ii)rent, lease, lend, sell, sublicense, assign, distribute, publish, transfer, or
> otherwise make available the Source Code or the Documentation to any third
> party: (iii) remove any proprietary notices from the source Code or the
> Documentation; or (iv) use the Source Code in any manner or for any purpose that
> infringes, misappropriates. or otherwise violates any intellectual property right or
> other right of any person, or that violates any applicable law.

66. Pursuant to the SCLA, TEG "acknowledges that, as between [MAX and TEG,

MAX] owns all rights. title, and interests, including all intellectual property rights in and to the

Source Code and Documentation.

67. The SCLA contains an extensive confidentiality agreement in which TEG

acknowledged and agreed that the Haptic Federal Source Code and the Documentation for the

Haptic Federal Source Code was "confidential intellectual property (including trade secrets)" of

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

MAX and that TEG would maintain all Confidential Information provided to TEG by MAX as confidential and to not disclose such information.

68.     The Haptic Federal source code is a compilation, program, and code, which derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. The Haptic Federal source code is a trade secret of MAX.

### MAX'S RELATIONSHIP WITH TEG

69.     MAX's CEO Brandon Fischer first met representatives of TEG in 2016 when TEG was a licensed distributor of software sold by Fischer's prior employer.

70.     In February 2019, Fischer invited representatives of TEG to a demonstration of MAX's Haptic software. TEG's representatives declined but invited Fischer to demonstrate Haptic the next day at the U.S. Government Joint Staff Lab in Norfolk, Virginia.

71.     Prior to the demonstration, MAX and TEG entered into the mutual Non-Disclosure Agreement ("NDA"), attached herewith as **Exhibit 7**.

72.     Fischer later discovered that the demonstration fulfilled an obligation of TEG under a pre-existing $49.5 million sole-source government contract awarded to TEG.

73.     On July 25, 2019, a week after the demonstration, TEG received an additional $16.6 million contract award described as "Cross Domain Solutions- Comprehensive, Collaborative, Command and Control Mission Application Platform Service (C4MAP)."

74.     Fischer had no prior knowledge of the C4MAP contract award.

75.     On October 2, 2019, Fischer provided TEG's CEO Rob Clare and COO Jeff Mase with Haptic Federal user accounts.

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

76.     Before signing-in to their user accounts, Clare and Mase agreed to the Haptic Privacy Policy, attached herewith as **Exhibit 8**.

77.     The user accounts permitted Clare and Mase access to and the ability to demonstrate Haptic Federal to TEG's customers.

78.     In order to use the Haptic Federal software, Clare and Mase agreed to the Haptic Federal EULA.

79.     Impressed with Haptic Federal's capabilities, Clare contacted Fischer on November 3, 2019 to discuss how TEG could become an authorized reseller of Haptic Federal to the U.S. Government.

80.     Fischer and Clare met in January 2020.

81.     On January 23, 2020, MAX and TEG signed the Joint Venture Agreement (JVA) attached hereto as **Exhibit 9**.

82.     Pursuant to the JVA, TEG agreed to create a distribution channel to license Haptic Federal to customers in the federal government.

83.     The JVA stated that MAX would "[c]reate and maintain a branch of the Haptic source code, called Haptic Federal" that would be "for exclusive use by the US government."

84.     The JVA provided that TEG would be the exclusive distributor of MAX's federal government product, Haptic Federal, so long as TEG hit certain licensing goals and shared half the revenue with MAX.

85.     The JVA granted TEG the right to be "the exclusive distributor/reseller of the Haptic Federal product into the federal market," so long as TEG hit certain "license-based revenue targets, paid to MAX[.]"

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

86.     Under the JVA, TEG was required to "maintain a web presence for marketing material of the Haptic Federal product [and] deliver, deploy, sustain, and develop customer requirements."

87.     Under the JVA, TEG was required to "establish and manage all federal channel sales partnerships."

88.     The JVA required "TEG and Max [ ] to establish and share an electronic files system." Specifically, "TEG and MAX agree[d] to work collaboratively on the preparation and delivery of: Proposals, Marketing materials, [and] Activity reporting to government customers[.]" "TEG and MAX agree[d] to conduct routine project and program management review discussions."

89.     The JVA provided that in the first year, TEG would make retainer payments to MAX that would be credited toward revenue targets. MAX would use the retainer payments to create and maintain Haptic Federal, install and support two installations with TEG for testing and demonstration purposes, and provide TEG with a software update at least once every three months.

90.     With respect to sales revenue, MAX and TEG agreed to equally share revenue from "total sale of Haptic Federal product and user license sales[.]". However, TEG agreed that "[a]ny channel discount will be negotiated using TEG's portion of the TEG/MAX shared revenue."

91.     Notably, the JVA does not entitle TEG to share revenue earned by MAX through sale of products other than Haptic Federal. And the JVA does not state that TEG is the exclusive distributor of all of MAX's software.

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

92.     MAX and TEG also agreed to equally share revenue from "total sale in non-federal opportunities, when using co-owned [intellectual property]." However, co-owned intellectual property would only exist in the event that TEG paid MAX for "custom software development," which never occurred.

93.     Nothing in the JVA granted TEG ownership rights in the Haptic Federal software.

94.     The JVA applied to the Haptic Federal product only.

95.     After the JVA was entered into, TEG also entered into the SCLA attached as **Exhibit 6**, and the EULA attached as **Exhibit 5**.

## THE CERTIFICATION AGREEMENT

96.     Beginning in June 2020, MAX made the source code securely availably to TEG over a dozen times to allow their government customer(s) to scan for vulnerabilities and security issues.

97.     TEG was required to provide MAX with a "chain of custody" document with signatures from everyone who accessed the source code stating that each person witnessed destruction of the source code after the scan.

98.     TEG failed to provide the required chain of custody documentation to MAX on numerous occasions.

99.     In the Summer of 2023, TEG failed to provide chain of custody documentation multiple times as MAX required in order to protect its trade secret source code from unauthorized disclosure.

100.    As a result, on August 17, 2023, MAX and TEG entered into a Certification Agreement. The agreement was intended to formalize confidentiality safeguards for Haptic Federal. The Certification Agreement is attached as **Exhibit 10**.

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

101.    The Certification Agreement recites that "the Parties wish to maintain the source code for the Haptic Federal software platform ("Source Code") confidential and to preserve its value as a trade secret, and therefore wish to limit disclosure of the Source Code."

102.    Pursuant to the Certification Agreement, TEG "acknowledge[d] and agree[d] that it shall be responsible for implementing procedures to ensure that:

> a.    Haptic Federal Source Code is at all times maintained as confidential, not disclosed except to customer personnel having a need to receive the Haptic Federal source code, and

> b.    Haptic Federal source code is used only by the customer to complete required security scans. TEG shall secure from the customer in each instance a chain of custody form reasonably acceptable to Max Minds (similar to the DA 4137)."

**TEG'S TRADE SECRET THEFT AND MISAPPROPRIATION VIOLATIONS**

103.    In February 2024, MAX discovered that TEG installed Haptic Federal on internet facing servers accessible on at least six uniform resource locators (URL).

104.    In each instance, TEG removed the Haptic CMI from the Haptic Federal software and replaced the Haptic CMI with false CMI indicating that the software was TEG's software by using the terms "VJOC" and "C4MAP."

105.    At each URL the servers hosting the Haptic Federal software exposed source code maps and source code to the public internet.

106.    The exposure of MAX's Haptic Federal source code is a serious issue of concern for MAX since it exposes MAX's trade secrets to the public that TEG is required to maintain as secret.

107.    Defendants Robert Clare, Jeffrey Mase, and Kevin Mullican are aware of, know about and complicit in the exposure of MAX's Haptic Federal source code online.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

108.    Defendants Robert Clare, Jeffrey Mase, and Kevin Mullican know that MAX's Haptic Federal source code is a trade secret of MAX.

109.    Pursuant to the Certification Agreement and the SCLA, TEG is under a continuing obligation to maintain the confidentiality of the Haptic Federal Software and the Haptic Federal Source Code.

110.    After the parties entered into the Certification Agreement, MAX discovered TEG violated the Certification Agreement in ways that infringed upon MAX's intellectual property rights numerous times.

111.    On September 13, 2023 and September 22, 2023, MAX engaged in source code transfers (versions 3.1.21.8 and 3.1.21.9) to TEG.

112.    With respect to each transfer, TEG (1) retained the source code; (2) withheld the government scan report; (3) withheld Chain of Custody documents; and (4) failed to obtain signatures from everyone who touched the Haptic Federal source code.

113.    MAX asked TEG at least twenty times to remedy these issues, but TEG stalled and eventually stopped responding to MAX in December 2023.

114.    TEG's Certification Agreement violations willfully endangered the Haptic Federal source code, resulting in damage to MAX.

**TEG'S CIRCUMVENTION AND COPYRIGHT INFRINGEMENT VIOLATIONS**

115.    TEG circumvented the technological measures in the Haptic Federal source code.

116.    TEG made at least $5 million of undisclosed software/service sales of Haptic Federal or trials in Haptic Federal in 2022 and 2023.

117.    In each case of a sale, TEG required a license key to install Haptic Federal.

118.    MAX never provided license keys for these sales to TEG.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

119.     Instead, to get around the licensing key requirement, TEG modified the Haptic Federal source code by stripping out or modifying the licensing logic from the source code to circumvent the licensing key technological measure.

120.     At no time did the defendants ever request or receive permission or authority to strip out or modify the licensing logic from the source code to circumvent the licensing key technological measure.

121.     In 2020-2021, MAX discovered that TEG misused software licenses by providing free extended trials.

122.     MAX was required to authorize each free trial of Haptic Federal software that TEG provided to a customer in advance of installation.

123.     In mid-2021, MAX discovered at least a dozen trials that TEG had extended to customers without MAX's authorization.

124.     In response, TEG told MAX these were free trials. However, this was false. TEG was paid to install and support the trail installations of Haptic Federal.

125.     TEG also provided unauthorized trials to customers by exceeding the scope of the two software licenses granted to TEG pursuant to the JVA.

126.     TEG made unauthorized copies and distributed those unauthorized copies of Haptic Federal to third parties for live events and live exercises for which TEG received compensation.

127.     TEG exceeded the scope of software licenses purchased from MAX by copying and distributing Haptic Federal numerous times without MAX's authorization.

128.     On May 16, 2023, TEG admitted to back-dating computers to circumvent MAX's licensing policy for Haptic Federal.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

## TEG'S CMI REMOVAL VIOLATIONS

129.   Without notice to MAX or permission from MAX, TEG removed "Haptic" from the main page of Haptic Federal and changed the name of Haptic Federal to "C4MAP" when it demonstrated Haptic Federal to certain government customers.

130.   Without notice to MAX or permission from MAX, TEG removed "Haptic" from the main page of Haptic Federal and changed the name of Haptic Federal to "VJOC," an abbreviation for Virtual Joint Operations Center, to other government customers.

131.   TEG removed the Haptic name from the Haptic Federal software without MAX's knowledge, agreement or authorization.

## TEG'S LANHAM ACT VIOLATIONS

132.   TEG engaged in a campaign of unauthorized rebranding of Haptic Federal under TEG's brand names.

133.   TEG rebranded the Haptic Federal software as "C4MAP 3.0" or "VJOC."

134.   Calling the Haptic Federal software "C4MAP 3.0" or "VJOC" allowed TEG to misrepresent Haptic Federal to industry partners and customers as TEG's own creation.

135.   TEG replaced product trademarks in the Haptic Federal software with TEG's own VJOC logo.

136.   TEG marketed Haptic Federal as C4MAP on the e-marketplace CHESS where the U.S. Army shops for commercial information technology ("IT") software and services.

137.   TEG marketed Haptic Federal as "C4MAP (VJOC)" on the military IT solutions website SupplyCore.

138.   TEG promoted C4MAP without mentioning Haptic Federal or MAX on the websites www.digitaltwinconsortium.org and www.opencommons.org.

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

139.    TEG marketed MAX's intellectual property as its own in various bid proposals submitted to the Government.

140.    TEG either did not disclose its bid proposals to MAX or did not disclose full and accurate versions of the proposals.

141.    MAX learned about TEG's actions and confronted TEG in March 2020.

142.    In response, TEG agreed that it would always call the product "C4MAP powered by Haptic."

143.    Despite TEG's agreement to the contrary, TEG later reverted to leaving out any reference to Haptic or MAX when marketing Haptic Federal.

144.    TEG's rebranding has deprived end customers of their ability to make informed procurement decisions and caused financial harm to both MAX and the end customers.

## COUNT I
## (MISAPPROPRIATION OF TRADE SECRETS - VIOLATION 18 U.S.C. § 1836(B))
### AGAINST ALL DEFENDANTS

145.    MAX incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

146.    The Haptic Federal Source Code is a trade secret of MAX consisting of scientific, technical or engineering information, including patterns, plans, compilations, program devices, formulas, designs, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

147.    MAX has taken reasonable measures to keep the Haptic Federal Source Code secret.

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

148.    The Haptic Federal Source Code derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

149.    Defendants disclosed MAX's trade secret Haptic Federal Source Code.

150.    At the time of disclosure, Defendants knew or had reason to know that the Haptic Federal Source Code was a trade secret of MAX because TEG acquired the Haptic Federal Source Code under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

151.    Defendants ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN personally disclosed and/or caused, directed and authorized employees of TEG to disclose MAX's trade secret Haptic Federal Source Code without permission or authority of MAX.

152.    MAX has been damaged.

153.    The harm caused to MAX has been irreparable.

## COUNT II

## (MISAPPROPRIATION OF TRADE SECRETS – VIOLATION OF IC 24-2-3) AGAINST ALL DEFENDANTS

154.    MAX incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

155.    The Haptic Federal Source Code is a trade secret of MAX consisting of scientific, technical or engineering information, including patterns, plans, compilations, program devices, formulas, designs, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

156.    MAX has taken reasonable measures to keep the Haptic Federal Source Code secret.

157.    The Haptic Federal Source Code derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

158.    Defendants disclosed MAX's trade secret Haptic Federal Source Code.

159.    At the time of disclosure, TEG knew or had reason to know that the Haptic Federal Source Code was a trade secret of MAX because TEG acquired the Haptic Federal Source Code under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

160.    The trade secrets themselves are integral to MAX's software products, namely Haptic Federal and Alleo, both of which are licensed via interstate commerce.

161.    Defendants ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN personally disclosed and/or caused, directed and authorized employees of TEG to disclose MAX's trade secret Haptic Federal Source Code without permission or authority of MAX.

162.    MAX has been damaged.

163.    The harm caused to MAX has been irreparable.

## COUNT III
## (COPYRIGHT INFRINGEMENT)
## AGAINST ALL DEFENDANTS

164.    MAX incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

165.    MAX owns a valid copyright in the Haptic Federal source code.

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

166.    The Haptic Federal source code is a "computer program" within the meaning of 17 U.S.C. § 101 and constitutes copyrightable subject matter within the meaning of 17 U.S.C. § 102.

167.    MAX registered the Haptic Federal source code with the Register of Copyrights of the United States Copyright Office.

168.    Defendants had access to the Haptic Federal source code.

169.    Defendants copied and distributed the Haptic Federal source code and created derivative works of the Haptic Federal source code without authorization of MAX.

170.    Defendants knew their copying, distribution, and creation of derivative works was unlawful.

171.    Defendants unauthorized use and copying of the Haptic Federal source code, and creation of one or more derivative works therefrom, constitutes direct violations of MAX's exclusive copyright rights.

172.    Defendants ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN caused, directed and authorized employees of TEG to copy, distribute or make derivative works of the Haptic Federal source code without permission or authority of MAX.

173.    Defendants' actions were knowing and willful.

174.    MAX has been damaged.

175.    The harm caused to MAX has been irreparable.

**COUNT IV**

**(CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS IN VIOLATION OF 17 U.S.C. §1201)**

**AGAINST ALL DEFENDANTS**

176.    MAX incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

177.    Defendants without permission or authority of MAX or the law, modified the Haptic Federal source code and backdated computers to bypass the license key requirement.

178.    Defendants' actions constitute circumvention of MAX's technological measures to protect that source code and violated 17 U.S.C. §1201(a)(1)(A).

179.    Defendants ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN caused, directed and authorized employees of TEG to circumvent MAX's technological measures without permission or authority of MAX.

180.    Defendants committed these acts knowingly and intentionally.

181.    Plaintiff has been damaged by Defendants' actions described herein.

182.    The harm caused to Plaintiff has been irreparable.

**COUNT V**

**(REMOVAL AND/OR FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF 17 U.S.C. §1202)**

**AGAINST ALL DEFENDANTS**

183.    MAX incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

184.    Defendants without permission or authority of MAX or the law, removed MAX's copyright management information and distributed copyright management information knowing that it was false without authority of MAX.

185.    Defendants ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN caused, directed and authorized employees of TEG to distribute copyright management information without permission or authority of MAX.

186.    Defendants committed these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of the MAX's rights in the Haptic Federal Source Code protected under the Copyright Act.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

187.    Plaintiff has been damaged by Defendants' actions described herein.

188.    The harm caused to Plaintiff has been irreparable.

## COUNT VI

## (REVERSE PASSING OFF – VIOLATION OF LANHAM ACT 15 U.S.C. § 1125)

189.    MAX incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

190.    The Haptic mark is a trademark of MAX for software.

191.    The Haptic mark as used for the Haptic Federal software is inherently distinctive or suggestive.

192.    TEG removed the Haptic mark on the Haptic Federal software and replaced it with C4MAP and JVOC when the software was displayed, advertised, and marketed to TEG's clients.

193.    TEG's removal and replacement of the Haptic mark is a false designation of origin in violation of 15 U.S.C. §1125(a).

194.    TEG's removal and replacement of the Haptic mark was committed in interstate commerce.

195.    TEG's removal and replacement of the Haptic mark is likely to cause confusion of consumers, namely the U.S. Government, by inducing them to believe that MAX's product originates from TEG thereby diluting the goodwill MAX has in its Haptic mark.

196.    Defendants ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN caused, directed and authorized employees of TEG to remove the Haptic mark without permission or authority of MAX.

197.    Plaintiff has been damaged by Defendants' actions described herein.

198.    The harm caused to Plaintiff has been irreparable.

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Max Minds LLC respectfully requests the following relief to be entered against Defendants:

1)  Enjoin TEG, ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN, and their respective agents, employees, officers, directors, servants, attorneys, and representatives, and all others acting in concert with them, directly or indirectly, or alone or in concert with others, from using MAX's proprietary information including MAX's trade secrets, MAX's proprietary Haptic Federal software, any derivative works thereof, and any materials authored by MAX in connection with Haptic Federal, for any purpose;

2)  Direct TEG, ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN, and their respective agents, employees, and representatives to immediately destroy, and certify the destruction of, all of MAX's proprietary information and any and all copies thereof, including, among other things, the Haptic Federal software and any derivative works thereof;

3)  Order the seizure of all of MAX's proprietary information and any and all copies thereof, including, among other things, the Haptic Federal software and any derivative works thereof, in the possession of TEG, ROBERT CLARE, JEFFREY MASE, and KEVIN MULLICAN, to prevent further propagation or dissemination of MAX's trade secrets pursuant to 18 U.S.C. § 1836(b)(2);

4)  Enter temporary, preliminary, and permanent injunctions pursuant to Federal Rule of Civil Procedure 65, 15 U.S.C. § 1116, 17 U.S.C. § 502, 17 U.S.C. § 1203, and enjoin defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from using the Haptic mark or any mark or design similar thereto, in connection with the sale or distribution of any software; from falsely representing themselves as

FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)

being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from copying, displaying, distributing or creating derivative works of Plaintiff's copyrighted Works; from circumventing plaintiff's works; from removing or falsifying plaintiff's copyright management information.

5) Award MAX damages, including punitive damages, in an amount to be determined at trial;

6) Award MAX its attorneys' fees and costs; and

7) Award MAX such other legal or equitable relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

DATED: May 7, 2024

Respectfully submitted,

*/s/ J. Campbell Miller*
J. CAMPBELL MILLER
Indiana Bar Number: 38279-49
campbell.miller@sriplaw.com

**SRIPLAW, P.A.**
231 S. Rangeline Road
Suite H
Carmel, IN 46032
561.404.4350 – Telephone
561.404.4353 – Facsimile

and

26
**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

JOEL B. ROTHMAN
*(pro hac vice forthcoming)*
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

and

*/s/ Philip D. Sever*
PHILIP D. SEVER
Indiana Bar No.:  25384-49
phil@landownerattorneys.com

**SEVER, STORY, WALKER**
742 South Rangeline Road
Carmel, IN 46032
317.961.1202 – Telephone

*Counsel for Plaintiff*

**FILED UNDER SEAL PURSUANT TO 18 U.S.C. § 1836(b)(2)**

**INDEX OF EXHIBITS**

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| 1 | Registration No. TXu 2-425-362 for Haptic Version 1.2.21.1 registered April 19, 2024 |
| 2 | Registration No. TXu 2-412-490 for Haptic Version 1.2.125 registered April 2, 2024 |
| 3 | Registration No. TXu 2-419-714 for Haptic Federal Version 3.1.21.4 registered March 21, 2024 |
| 4 | Registration No. TXu 2-419-718 for Haptic Federal Version 3.1.21.8 registered March 21, 2024 |
| 5 | End User License Agreement (EULA) |
| 6 | Source Code License Agreement dated March 30, 2021 |
| 7 | Mutual Non-Disclosure Agreement |
| 8 | Haptic Privacy Policy |
| 9 | Joint Venture Agreement (JVA) dated January 23, 2020 |
| 10 | Certification Agreement dated August 17, 2023 |

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK