# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

MAX MINDS, LLC,                              )
                                             )
    *Plaintiff,*                         )
                                             )
    v.                                  )    Case No.: 1:24-cv-00779-JPH-MG
                                             )
TRIANGLE EXPERIENCE GROUP, INC., *et al,*     )
                                             )
    *Defendants.*                       )
                                             )

## DEFENDANT TRIANGLE EXPERIENCE GROUP, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF MAX MINDS, LLC'S COMPLAINT <u>OR, IN THE ALTERNATIVE, TO STAY</u>

Marc T. Quigley, Atty. No. 21054-53
**KRIEG DeVAULT LLP**
12800 North Meridian Street, Suite 300
Carmel, Indiana 46032
Tel: (317) 566-1110
Fax: (317) 636-1507
mquigley@kdlegal.com


Alexandra Wilson Pantos, Atty. No. 37003-49
**KRIEG DeVAULT LLP**
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
Tel: (317) 636-4341
Fax: (317) 636-1507
awilson@kdlegal.com

Richard D. Kelley, *admitted pro hac vice*
Raighne C. Delaney, *admitted pro hac vice*
Stephen D. Caruso, *admitted pro hac vice*
**BEAN, KINNEY & KORMAN, PC**
2311 Wilson Boulevard, Suite 500
Arlington, VA 22201
Tel: (703) 525-4000
Fax: (703) 525-2207
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

FACTS ALLEGED IN COMPLAINT ....................................................................................... 2

    A.   The Software ................................................................................................................... 2

    B.   Max and TEG Enter a Joint Venture Relationship to Distribute the Software  to
Government Customers .................................................................................................. 2

    C.   The Relationship Sours .................................................................................................. 4

ARGUMENT ............................................................................................................................. 5

I.     THE COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) .......... 5

    A.   Legal Standard ............................................................................................................... 5

    B.   Max Fails to State a Claim for Misappropriation of Trade Secrets (Counts I  and II) ....... 7

    C.   Max Fails to State a Claim for Copyright Infringement (Count III) .................................. 9

        1.   TEG is Authorized to Sell the Software Under the Joint Venture  Agreement .............. 9

        2.   Max's Claims Allege Breach of Contract, Not Copyright  Infringement .................... 11

        3.   Max Fails to Allege Key Elements of a Copyright Infringement Claim ..................... 12

    D.   Max Fails to State Claims for Relief under the DMCA (Counts IV and V) ..................... 14

        1.   Max Fails to Plead the Infringement Nexus Required by Section 1201 of the DMCA 14

        2.   Max Fails to Plead the Dual Scienter Required by Section 1202 of the  DMCA ......... 16

    E.   Max's Lanham Act Claim is Barred as a Matter of Law (Count VI) ............................... 17

    F.   The John Doe Defendants Are Improper and Should be Dismissed ................................ 19

II.    ANY REMAINING CLAIMS SHOULD BE STAYED UNDER FED. R. CIV. P. 13(a)
AND PURSUANT TO THE COURT'S INHERENT POWER .................................................... 20

    A.   Legal Standard ............................................................................................................. 20

    B.   Procedural Background ................................................................................................. 22

    C.   Both Lawsuits Arise Out of the Parties' Joint Venture Relationship .............................. 24

    D.   Max's Preliminary Injunction Request is Effectively Moot ........................................... 24

CONCLUSION ......................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011)...................................... 10, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................................................. 6

*Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566 (7th Cir. 1989)..... 21

*Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467 (1974) ............................................................... 21

*Belden Inc. v. Nexans Inc.*, No. 1:12-cv-01722, 2013 U.S. Dist. LEXIS 104808 (S.D. Ind. Jul. 26, 2013) ........................................................................................................................................ 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 6

*Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876 (N.D. Ill. 2004).................. 18

*Burlington N. R. Co. v. Strong*, 907 F.2d 707 (7th Cir. 1990)............................................... 21, 24

*Chamberlain Group v. Skylink Techs., Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) ....................... 14, 15

*Clinton v. Jones*, 520 U.S. 681 (1997).......................................................................................... 21

*Couponcabin LLC v. Savings.com, Inc.*, No. 2:14-cv-39, 2016 U.S. Dist. LEXIS 74369 (N.D. Ind. June 8, 2016)....................................................................................................................... 14, 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)....................... 17, 18, 19

*Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*, 1 F.4th 502 (7th Cir. 2021) .............. 13

*Doorage, Inc. v. Blue Crates, LLC*, No. 1:20-cv-0421, 2023 U.S. Dist. LEXIS 170297 (N.D. Ill. Sept. 22, 2023) ............................................................................................................................ 13

*Eclipse Gaming Sys., LLC v. Antonucci*, No. 17 C 196, 2019 U.S. Dist. LEXIS 15078 (N.D. Ill. Jan. 31, 2019) ............................................................................................................... 11, 13, 15

*Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) ......................................................... 10, 12

*Fisher v. Shellpoint Mortg. Servicing, LLC*, No. 4:23-cv-00044, 2023 U.S. Dist. LEXIS 97044 (S.D. Ind. Jun. 5, 2023) ............................................................................................................. 20

*Flowers v. Bell*, No. 1:21-cv-01812, 2022 U.S. Dist. LEXIS 174652 (S.D. Ind. Sept. 27, 2022) 20

*Gaiman v. McFarlane*, 360 F.3d 644 (7th Cir. 2004)................................................................... 13

*GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) ......................................... 17

*General Universal Sys. v. Lee*, 379 F.3d 131 (5th Cir 2004)....................................................... 18

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) ........................................................ 10, 11, 13, 19

*Hartford Steam Boiler Inspection & Ins. Co. v. Campbell*, No. 4:20-cv-00117, 2021 U.S. Dist. LEXIS 62332 (S.D. Ind. Mar. 31, 2021) ................................................................................. 7, 8

*Hollander v. Brown*, 457 F.3d 688 (7th Cir. 2006)......................................................................... 7

*Hostway Corp. v. JPMorgan Chase Bank, N.A.*, Case No. 09-cv-151, 2009 U.S. Dist. LEXIS 75049 (N.D. Ill. Aug. 24, 2009).......................................................................................... 21, 24

*Hullinger v. Forgey*, No. 2:20-CV-417, 2021 U.S. Dist. LEXIS 66103 (N.D. Ind. Apr. 5, 2021) ....................................................................................................................................................... 20

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) .......................................................... 10, 12, 15

*In re Price*, 42 F.3d 1068 (7th Cir. 1994) .................................................................................... 24

*Inforizons, Inc. v. VED Software Services, Inc.*, 204 F.R.D. 116 (N.D. Ill. 2001) ...................... 21

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749 (11th Cir. 1997)...................................................... 10

*JCW Investments, Inc. v. Novelty*, 482 F.3d 910 (7th Cir. 2007)................................................. 12

*Kartik Patel v. Consol. City of Indianapolis/Marion Cnty.*, No. 1:23-cv-01495, 2024 U.S. Dist. LEXIS 32070 (S.D. Ind. Feb. 26, 2024) .................................................................................... 25

*Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929 (N.D. Ill. 2006) ........................ 21, 22

*Krechmer v. Tantaros*, 747 F. App'x 6 (2d Cir. 2018) ................................................................ 17

*Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531 (7th Cir. 2021) .................................................. 9

*Ligtel Commc'ns, Inc. v. Baicells Techs., Inc.*, 455 F. Supp. 3d 792 (N.D. Ind. 2020)................. 8

*Mango v. Buzzfeed, Inc.* 970 F3d 167 (2d Cir. 2020) ................................................................. 16

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011)................................................... 6, 13

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010)................................... 15

*Muhammad v. Oliver*, 547 F.3d 874 (7th Cir. 2008) .................................................................. 6, 7

*Naderi v. ResMed Inc.*, No. 1:22cv459, 2023 U.S. Dist. LEXIS 146126 (N.D. Ind. Aug. 21, 2023) ......................................................................................................................................... 20

*Neitzke v. Williams*, 490 U.S. 319 (1989)................................................................................... 19

*Nordstrom Consulting, Inc. v. M&S Techs., Inc.*, No. 06 C 3234, 2008 U.S. Dist. LEXIS 17259 (N.D. Ill. 2008)............................................................................................................................ 14

*Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059 (N.D. Ill. 2020).......................... 8

*Prominence Advisors, Inc. v. Dalton*, No. 17-CV-04369, 2017 U.S. Dist. LEXIS 207617, 2017 WL 6988661 (N.D. Ill. Dec. 18, 2017) ...................................................................................... 8

*Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143 (7th Cir. 2010)................................................... 6

*RT Computer Graphics, Inc. v. United States*, 44 Fed. Cl. 747 (1999) ................................. 10, 12

*Serlin v. Arthur Andersen & Co.*, 3 F.3d 221 (7th Cir. 1993)...................................................... 22

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018)............................................................ 17

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307 (Fed. Cir. 2005) ..................................................................................................................................... 14, 15

*Triangle Experience Group, Inc. v. Max Minds, LLC*, No. 1:24-cv-00650 (S.D. Ind. Dec. 28, 2023) ...................................................................................................................................... 1, 22

*Victor Elias Photography, LLC v. ICE Portal, Inc.*, 43 F.4th 1313 (11th Cir. 2022)................... 16

*Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257 (7th Cir. 1977) ................................. 24

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502 (7th Cir. 1994) ....................... 13

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013)................................................................... 6

*Wudtke v. Davel*, 128 F.3d 1057 (7th Cir. 1997) ....................................................................... 20

## Statutes

28 U.S.C. § 1498(b) ..................................................................................................................... 16

Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ................................................................. 5, 7

Digital Millenium Copyright Act, 17 U.S.C. § 1201 *et seq.*......................................... 5, 14, 16, 17

Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1 *et seq.* ................................................ 7

Lanham Act, 15 U.S.C. § 1051 *et seq.*........................................................................... 5, 17, 18, 19

**Rules**

Fed. R. Civ. P. 12(b)(2)...............................................................................................................2
Fed. R. Civ. P. 12(b)(6)...........................................................................................5, 6, 19, 20, 26
Fed. R. Civ. P. 13(a) ..............................................................................................5, 20, 21, 24, 26
Fed. R. Civ. P. 15........................................................................................................................19

**Treatises**

Restatement (Second) of Contracts.............................................................................................12

**INTRODUCTION**

This case is related to a complaint first filed by Triangle Experience Group, Inc. ("TEG") against Max Minds, LLC ("Max") for, inter alia, Max's material breaches of a Joint Venture Agreement under which the parties agreed to jointly create a new software system to be sold to and used by the United States Government. *Triangle Experience Group, Inc. v. Max Minds, LLC*, No. 1:24-cv-00650 (S.D. Ind. Dec. 28, 2023) (the "First Filed Action"). In response to TEG's First Filed Action, Max filed a 165-paragraph counterclaim alleging seven separate causes of action, including breach of contract claims and multiple tort claims. Not content with its sprawling counterclaims, however, just three days prior, Max filed, under seal, this second lawsuit based on the identical set of facts and grievances (the "Second Filed Action").

The Second Filed Action impermissibly muddies the waters. First, Max's new Complaint includes three individual officers of TEG as defendants without any factual allegations to support their inclusion, as well as an improper "placeholder" for unnamed defendants "John Does 1-10." Second, the Complaint improperly recasts the parties' contractual dispute as intellectual property claims—with an ex parte request for seizure and injunctive relief—even though Max's counterclaims in the First Filed Action were also filed "to protect its intellectual property from its former business partner," (First Filed Action Countercl. ¶ 1, Dkt. 37), and Max's counterclaims in that action repeatedly allege that TEG infringed on Max's intellectual property rights.[1] Indeed, the crux of the contractual dispute in the First Filed Action is the authorship (and thus ownership) of the software system that is the subject of the parties' Joint Venture Agreement. Thus, resolution of the First Filed Action's contract claims will necessarily resolve the issues and claims underlying the Second Filed Action. Max's Second Filed Action serves no purpose other than to distract from

---

[1] *See, e.g.*, First Filed Action Countercl. ¶¶ 1, 5, 29, 48, 57, 62-64, 74-75, 79-82, 122-24, Dkt. 37.

the core contractual dispute pending in the First Filed Action, increasing litigation costs and wasting judicial resources. Max should not be rewarded for its vexatious litigation tactics.

## FACTS ALLEGED IN COMPLAINT

Max alleges as follows.[2] Max is a company based in Indiana that creates software platforms for commercial and government applications. (Compl. ¶¶ 11-12, 19, Dkt. 1.) Max's commercial application for its software platform is currently called "Alleo." (Compl. ¶ 20, Dkt. 1.) "Alleo" is browser based and licensed to customers as software as a service. (Compl. ¶¶ 21-26, Dkt. 1.)

### A.    The Software

"Alleo" was previously known as "Haptic," which name remains in use for government applications. (Compl. ¶¶ 20, 24, Dkt. 1.) Government customers typically install "Haptic" software "on premise" on their own servers to provide more secure access. (Compl. ¶¶ 27, Dkt. 1.) The "Haptic" software for government use (the "Haptic Federal Software" or "Software") is protected by a license key that is required to install the Software. (Compl. ¶¶ 43-44, Dkt. 1.) Max also applied copyright management information ("CMI") to the Haptic Federal Software, (Compl. ¶¶ 45-46, Dkt. 1), and registered certain versions of the Haptic Federal Software with the U.S. Copyright Office. (Compl. ¶¶ 38-42, Dkt. 1.) The source code for the Haptic Federal Software is confidential and Max maintains it in secrecy. (Compl. ¶¶ 47-49, 68, Dkt. 1.)

### B.    Max and TEG Enter a Joint Venture Relationship to Distribute the Software to Government Customers

Max and TEG first met in 2016 and then again in 2019, when TEG invited Max's CEO, Brandon Fischer, to demonstrate the then-current version of the Software at the U.S. Government Joint Staff Lab in Norfolk, Virginia. (Compl. ¶¶ 13, 69-70, Dkt. 1.) In preparation for the

---

[2] The named individual defendants have filed a separate motion to dismiss this lawsuit against them for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). TEG therefore confines its recitation of the Complaint's factual allegations to those involving TEG.

demonstration, TEG and Max entered into a Mutual Nondisclosure Agreement dated July 17, 2019. (Compl. ¶ 71, Dkt. 1; Compl. Ex. 7, Dkt. 1-7.) Between that time and early 2020, the parties discussed, tested, and demonstrated the Software and decided to work together in selling Software to the U.S. Government. (Compl. ¶¶ 75-80, Dkt. 1.)

On January 23, 2020, Max and TEG entered into a Joint Venture Agreement ("JVA"). (Compl. ¶ 81, Dkt. 1; Compl. Ex. 9, Dkt. 1-9.)[3] Under the JVA, Max and TEG agreed to implement a "[c]ollective approach to sell, deliver and sustain a collaborative capability to the US Government," and "share revenues awarded by US Government customers." (Compl. Ex. 9 at 1, Dkt. 1-9.) TEG and Max agreed to "partner together to deliver capabilities to the end user in the federal customer space." (*Id.*) Moreover, any intellectual property resulting from the custom software development paid for by TEG will be "co-owned by TEG and MAX." (Compl. Ex. 9 at 2, Dkt. 1-9.) TEG's rights and obligations under the JVA included, among other things, the exclusive right to distribute the Haptic Federal Software to the federal Government market. (Compl. Ex. 9 at 2, Dkt. 1-9; Compl. ¶¶ 82-88, Dkt. 1.) To that end, the JVA provided TEG with the Software for testing and demonstration purposes, together with the ability to create unlimited user accounts. (Compl. Ex. 9 at 2, Dkt. 1-9.)

TEG also made payments to Max. (Compl. ¶ 89, Dkt. 1; Compl. Ex. 9 at 1, Dkt. 1-9.) Max and TEG agreed to share equally in the sales revenue from the "total sale of Haptic Federal product and user license sales in federal customer and opportunity business space." (Compl. ¶ 90, Dkt. 1; Compl. Ex. 9 at 3, Dkt. 1-9.) Similarly, Max and TEG agreed to share the proceeds from any acquisition of the Software source code by a third party. (Compl. Ex. 9 at 3, Dkt. 1-9.)

---

[3] The Joint Venture Agreement is a valid and enforceable contract. Compl. ¶¶ 81-94, Dkt. 1; Compl. Ex. 9, Dkt. 1-9; First Filed Action Answer, Aff. Defenses, and Countercls., p. 24 ¶¶ 1, 5; p. 30 ¶ 3; pp. 38-40 ¶¶ 46-47, 51-55; p. 48 ¶ 102; p. 53 ¶ 126; p. 55 ¶ 138, Dkt. 37.

After entering into the JVA, the parties executed other contracts relating to the Haptic Federal Software, namely, a Source Code License Agreement ("SCLA")[4] dated March 30, 2021, (Compl. ¶¶ 60-68, Dkt. 1; Compl. Ex. 6, Dkt. 1-6), and, in August 2023, a Certification Agreement. (Compl. ¶¶ 96-102, Dkt. 1; Compl. Ex. 10, Dkt. 1-10.) Both the SCLA and the Certification Agreement contain confidentiality provisions to protect, among other things, the Software source code. (Compl. ¶¶ 67, 101-02, Dkt. 1; Compl. Ex. 6 ¶ 6, Dkt. 1-6; Compl. Ex. 10 ¶ 3, Dkt. 1-10.)

## C.    The Relationship Sours

On September 13, 2023 and September 22, 2023, Max transferred Software source code to TEG so that TEG or its Government customers could complete required security scans. (Compl. ¶ 111, Dkt. 1; *see* Compl. Ex. 10, Dkt. 1-10.) Max alleges that TEG failed to obtain chain of custody documentation and signatures, withheld the Government scan reports, and retained the Software source code in violation of the Certification Agreement. (Compl. ¶¶ 112-14, Dkt. 1.)

In February 2024, Max claims to have "discovered that TEG installed Haptic Federal on internet facing servers accessible on at least six uniform resource locators (URL)," that allegedly exposed source code to the public in violation of TEG's confidentiality obligations. (Compl. ¶¶ 103, 105-06, 109, Dkt. 1.) On these servers, Max claims, TEG removed the CMI from the Software and replaced it with a copyright notice using the terms "VJOC" and "C4MAP." (Compl. ¶¶ 104, 129-31, Dkt. 1.) According to Max, this removal of CMI constituted an "unauthorized rebranding" of the Software and "allowed TEG to misrepresent [the Haptic Federal Software] to industry partners and customers as TEG's own creation." (Compl. ¶¶ 132-44, Dkt. 1.)

---

[4] On June 21, 2024, TEG filed a motion to dismiss several of Max's counterclaims, including Max's Count I for breach of the SCLA because the SCLA is not a valid and enforceable contract. First Filed Action TEG Br. 4-7, Dkt. 50.

Finally, Max alleges that TEG has circumvented the license key designed to track TEG's sales to its Government customers, (Compl. ¶¶ 115-20, 128, Dkt. 1), and generally "misused" software licenses granted to TEG. (Compl. ¶¶ 121-27, Dkt. 1.)

## ARGUMENT

Max's Second Filed Action raises six causes of action: (1) misappropriation of trade secrets under the Defend Trade Secrets Act (Compl. ¶¶ 145-53, Dkt. 1); (2) misappropriation of trade secrets under Indiana law (Compl. ¶¶ 154-63, Dkt. 1); (3) copyright infringement (Compl. ¶¶ 164-75, Dkt. 1); (4) circumvention of copyright protection systems under the Digital Millenium Copyright Act ("DMCA") (Compl. ¶¶ 176-82, Dkt. 1); (5) removal and/or falsification of copyright management information under the DMCA (Compl. ¶¶ 183-88, Dkt. 1); and (6) false designation of origin under the Lanham Act (Compl. ¶¶ 189-98, Dkt. 1.) Each of these claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), including claims related to the John Doe defendants. Should any claims survive the pleading stage, however, those claims should be stayed under Fed. R. Civ. P. 13(a) and pursuant to the Court's inherent power to control its own docket.

## I.   THE COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6)

The Second Filed Action's Complaint cannot withstand scrutiny under Fed. R. Civ. P. 12(b)(6). Each of the Complaint's Counts fails to allege facts sufficient to raise a right to relief above the speculative level or there are no set of facts consistent with the allegations that can state a claim as a matter of law.

### A.   Legal Standard

A complaint that fails "to state a claim upon which relief can be granted" is subject to dismissal. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6),

the court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). To survive a motion to dismiss, however, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss should be granted if a complaint fails to allege facts that are "enough to raise a right to relief above the speculative level," contains mere "labels and conclusions," or merely states a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In evaluating whether a claim is sufficient to survive a motion to dismiss, a court limits its consideration to the allegations set forth in the complaint, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and "information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The court may also "draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Moreover, when an affirmative defense is disclosed in the complaint, there is a proper basis for that affirmative defense to be considered in a Fed. R. Civ. P. 12(b)(6) motion. *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). This rule is based on the principle that a plaintiff can "plead [itself] out of court" by including factual allegations that "are sufficient to establish [a] defense," thus establishing the deficiency of its claim for relief. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). No purpose is served by compelling a defendant to file an answer rather

than proceed by motion to dismiss when the complaint is sufficient to demonstrate an affirmative defense. *Muhammad*, 547 F.3d at 878.

**B.      Max Fails to State a Claim for Misappropriation of Trade Secrets (Counts I and II)**

Counts I and II of the Complaint allege parallel trade secret misappropriation claims under federal and state law. Count I alleges that TEG has misappropriated Max's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"). (Compl. ¶¶ 145-50, 152-53, Dkt. 1.) Count II alleges the same under the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3 ("IUTSA"). (Compl. ¶¶ 154-60, 162-63, Dkt. 1.) The Complaint fails to state a claim under either statute, however, because Max cannot allege a plausible claim of misappropriation.

"The elements of a claim under the DTSA and IUTSA are similar; key to each is the existence of a trade secret[5] and its misappropriation." *Hartford Steam Boiler Inspection & Ins. Co. v. Campbell*, No. 4:20-cv-00117, 2021 U.S. Dist. LEXIS 62332, at *12 (S.D. Ind. Mar. 31, 2021) (analyzing together the sufficiency of a plaintiff's trade secret misappropriation claims under both the DTSA and the IUTSA). Under both the DTSA and the IUTSA, "misappropriation" is defined as either: (1) acquisition of a trade secret of another by improper means; or (2) the disclosure or use of a trade secret of another without express or implied consent. 18 U.S.C. § 1839(5)(A)-(B); Ind. Code. § 24-2-3-2.

Max's Complaint does not allege—and cannot allege—that TEG acquired the Software by improper means because TEG obtained access to the Software as Max's joint venturer under the JVA. (*See* Compl. ¶¶ 96, 111, Dkt. 1; Compl. Ex. 9 at 1-2, Dkt. 1-9.) The Complaint itself makes plain that rather than acquiring the alleged trade secret Software by improper means, TEG acquired

---

[5] For purposes of this motion to dismiss only, TEG does not challenge the sufficiency of the Complaint's allegations of a trade secret. (*See* Compl. ¶¶ 47-49, Dkt. 1.)

it through the normal course of TEG and Max's business under the JVA. For example, after noting that Max itself transferred alleged trade secrets to TEG in September 2023, Max alleges only that TEG "retained the source code," "withheld the government scan report," "withheld Chain of Custody documents," and "failed to obtain signatures" from those who touched the source code. (Compl. ¶¶ 111-12, Dkt. 1.) Yet the mere possession of trade secrets is insufficient to allege plausibly the disclosure or use of those trade secrets. *Ligtel Commc'ns, Inc. v. Baicells Techs., Inc.*, 455 F. Supp. 3d 792, 808 (N.D. Ind. 2020) ("[H]aving had access to trade secrets and misappropriating trade secrets are two entirely different allegations."). Similarly, the failure to return lawfully acquired information does not constitute "misappropriation" of that information. *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020) (citing *Prominence Advisors, Inc. v. Dalton*, No. 17-CV-04369, 2017 U.S. Dist. LEXIS 207617, 2017 WL 6988661, at *4 (N.D. Ill. Dec. 18, 2017)).

Max's misappropriation claims thus hinge on whether Max has adequately alleged TEG's actual or threatened disclosure or use of its trade secrets without its consent. *Hartford Steam*, 2021 U.S. Dist. LEXIS 62332, at *12. Max has failed to make such a plausible claim, relying on merely conclusory statements that TEG exposed trade secret source code on certain internet facing servers, (Compl. ¶¶ 2, 103, 105-06, Dkt. 1), and unsupported, boilerplate recitations. (Compl. ¶¶ 149, 158, Dkt. 1) ("Defendants disclosed MAX's trade secret Haptic Federal Source Code."). The material posted by TEG on the alleged uniform resource locators ("URLs"), however, were used by TEG to comply with its agreement under the JVA to "maintain a web presence for marketing material of the Haptic Federal product." (Compl. Ex. 9 at 1 ¶ 1, Dkt. 1-9.) As such, the disclosure was not without Max's consent. Moreover, Max makes no showing whatsoever that any "source code" allegedly disclosed to the public through these URLs revealed any "concrete secrets." *See Life*

*Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540-41 (7th Cir. 2021) (because trade secret law focuses on concrete secrets rather than broad areas of technology, trade secret protection may be preserved even where certain aspects have been publicly disclosed) (citations omitted).

Under the terms of the JVA, Max has not alleged and cannot allege facts sufficient to draw a reasonable inference that TEG acquired the Software by improper means or disclosed a trade secret without Max's express or implied consent. Counts I and II of the Complaint should be dismissed.

**C.      Max Fails to State a Claim for Copyright Infringement (Count III)**

Max's factual allegations in support of its copyright infringement claim are scant, conclusory, and difficult to discern. The Complaint essentially alleges that TEG misused some unnamed software licenses "by providing free extended trials," in violation of an unspecified requirement for TEG to authorize each free trial of the Software in advance. (Compl. ¶¶ 121-24, Dkt. 1.) In addition, Max alleges, TEG "made unauthorized copies," and exceeded the scope of unspecified licenses. (Compl. ¶¶ 125-27, 169-71, Dkt. 1.) Such allegations cannot state a claim for copyright infringement because not only is TEG authorized to distribute and sell the Software under the JVA, but also, Max's "copyright infringement" allegations allege no more than breaches of contractual covenants, not conditions precedent to Max's duty to perform. As such, Max is limited to its breach of contract claims alleged in the First Filed Action and Count III of the Complaint should be dismissed with prejudice as a matter of law.

**1.      *TEG is Authorized to Sell the Software Under the Joint Venture Agreement***

Under the plain terms of the JVA, TEG is authorized to distribute and sell the Software. TEG alleges, in the First Filed Action, that its authorization springs from TEG's status as a joint

owner of the Software. But even accepting as true Max's allegations that TEG is merely a licensee or authorized distributor, Max cannot state a claim for copyright infringement.

"It is a hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement." *Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295, 302 (S.D.N.Y. 2011); *see I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement") (citing *Effects Assocs. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990)). Labels, however, are of no import. A copyright owner can grant a nonexclusive license orally or it may be implied from conduct. *Shaver*, 74 F.3d at 775. Indeed, "consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing." *Id.*; *see Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997) (copyright owner's "giving permission" and "failing to object" created a nonexclusive license).

Here, the plain, unambiguous language of the JVA provides that "TEG is the exclusive distributor/reseller" for the federal Government market. (Compl. Ex. 9 at 2, Dkt. 1-9; *see* Compl. ¶¶ 84-85, Dkt. 1.)[6] TEG was and is authorized to sell and distribute the Software to its Government customers. No matter how Max characterizes TEG's conduct (as an exclusive licensee, nonexclusive licensee, distributor, or reseller), TEG has acted according to the rights and permissions granted to it under the Joint Venture Agreement to service TEG's federal Government customers. And those rights and permissions continue to this day. *See Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) (noting that "the district court could not have found that Graham infringed James's copyright unless the licensing agreement already had been rescinded"); *RT Computer*

---

[6] It is beyond dispute that the JVA is a valid and enforceable contract. Compl. ¶¶ 81-90, Dkt. 1; First Filed Action Answer, Aff. Defenses, and Countercls., p. 24 ¶¶ 1, 5, p. 30 ¶ 3, pp. 38-40 ¶¶ 46-47, 51-55, p. 48 ¶ 102, p. 53 ¶ 126, p. 55 ¶ 138, Dkt. 37.

*Graphics, Inc. v. United States*, 44 Fed. Cl. 747, 759-60 (1999) (discussing and agreeing with other courts that a copyright holder must take affirmative steps to rescind or terminate the license prior to the filing of an infringement suit).

Because TEG is authorized to distribute the Software under the JVA, Max's allegations of misconduct cannot constitute copyright infringement.

### 2.    *Max's Claims Allege Breach of Contract, Not Copyright Infringement*

Max's copyright infringement claim similarly fails under the plain terms of the JVA because, even accepting as true Max's characterization of TEG as a mere licensee, Max has not and cannot allege that TEG's alleged conduct was in breach of a condition precedent to the JVA.

A copyright owner who licenses his work to another typically waives his right to sue the licensee for copyright infringement. *Eclipse Gaming Sys., LLC v. Antonucci*, No. 17 C 196, 2019 U.S. Dist. LEXIS 15078, at *4 (N.D. Ill. Jan. 31, 2019) (citations omitted). The copyright owner must instead sue for breach of contract. *Id.* Whether a licensee's alleged misconduct may also constitute copyright infringement turns on the distinction between a contractual covenant and a condition precedent.

Where a copyright owner alleges a breach of a contractual covenant, he states a claim for breach of contract only. *Graham*, 144 F.3d at 236-37; *Eclipse Gaming*, 2019 U.S. Dist. LEXIS 15078, at **4-5. Where a copyright owner alleges a licensee's failure to satisfy a condition precedent to the license, he may also state a claim for copyright infringement. *Graham*, 144 F.3d at 237. A covenant is a contractual promise, a "manifestation of intention to act or refrain from acting in a particular way." *Eclipse Gaming*, 2019 U.S. Dist. LEXIS 15078, at **4-5 (citation omitted). A condition precedent, on the other hand, "is an act or event that must occur before a duty to perform a promise arises." *Id.* Stated another way, a condition is "an event . . . which must

11

occur . . . before performance under a contract becomes due." *RT Computer Graphics*, 44 Fed. Cl. at 756 (quoting Restatement (Second) of Contracts § 224 (1981)).

Max's copyright infringement claim vaguely describes exceeding the scope of the JVA and, perhaps, some other unnamed license. But Max does not allege, and cannot allege, that any of TEG's alleged actions were in violation of a *condition precedent* to Max's duty to perform under the JVA (or whatever other contracts Max is alluding to in its allegations). Without pointing to plain, unambiguous language in the contract, Max cannot state a claim for breach of a condition precedent. Moreover, "[c]onditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language." *Shaver*, 74 F.3d at 778 (quoting *Effects Assocs.*, 908 F.2d at 559 n.7).

Accordingly, Max's only redress is under the breach of contract claims it has already pleaded in the First Filed Action. The Complaint's allegations do not and cannot state a claim for copyright infringement and, therefore, Count II should be dismissed with prejudice.

### 3.   *Max Fails to Allege Key Elements of a Copyright Infringement Claim*

Max's Complaint does not even attempt to allege plausible facts sufficient to demonstrate the elements required to prove a copyright infringement claim. To state a claim for copyright infringement, a plaintiff must plead sufficient facts to show: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty*, 482 F.3d 910, 914 (7th Cir. 2007). Max alleges no facts to support the second requirement—*actionable* copying by TEG.

To show actionable copying, Max must allege a substantial similarity between TEG's allegedly infringing code and the protectable elements of Max's claimed work. *Doorage, Inc. v. Blue Crates, LLC*, No. 1:20-cv-0421, 2023 U.S. Dist. LEXIS 170297, at *8 (N.D. Ill. Sept. 22,

2023). Under the substantial similarity test, the Court[7] must "separate the protected elements of [Max's] work from unprotected elements." *Doorage*, at *9 (quoting *Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*, 1 F.4th 502, 503 (7th Cir. 2021)). Substantial similarity is then determined by comparing those protectable elements and asking, "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 509 (7th Cir. 1994).

Yet Max's Complaint alleges no facts from which the Court can draw a reasonable inference of substantial similarity, pleading only conclusory statements and legal conclusions, which are insufficient to state a claim for relief. *McCauley*, 671 F.3d at 617. Max states only that TEG "exceeded the scope of software licenses" (Compl. ¶¶ 125 127, Dkt. 1), made and distributed "unauthorized copies," (*Id.* ¶¶ 126, 169, 171), and created "derivative works." (*Id.* ¶¶ 169, 171.) As demonstrated in Part I.C.2, *supra*, however, these allegations—conclusory or not—cannot state a claim for copyright infringement because they allege breach of contract covenants, not conditions. *Graham*, 144 F.3d at 236-37; *Eclipse Gaming*, 2019 U.S. Dist. LEXIS 15078, at **4-5.

Max's failure to plead a sufficient copyright infringement claim under the substantial similarity test demonstrates yet again that the core of Max's claims sound in contract, not copyright. Again, Cout II of the Complaint should be dismissed with prejudice.

---

[7] The issue of copyrightability is a question of law to be determined by the court. *Gaiman v. McFarlane*, 360 F.3d 644, 648-49 (7th Cir. 2004).

**D.**      **Max Fails to State Claims for Relief under the DMCA (Counts IV and V)**

   **1.**      *Max Fails to Plead the Infringement Nexus Required by Section 1201 of the DMCA*

Count IV of the Complaint alleges that TEG violated § 1201(a)(1)(A) of the DMCA when it bypassed the license key in the Software. (Compl. ¶¶ 43-44, 115, 119-20, 177-78, 180-81, Dkt.1.) Max has not—and cannot—state a plausible claim for circumvention under the DMCA because there is no nexus between the circumvention and copyright infringement.

This section of the DMCA provides: "No person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). To state a prima facie claim under this section of the DMCA, Max must allege the following: (1) ownership of a valid copyright on a work, (2) effectively controlled by a technological measure, which has been circumvented, (3) that third parties can now access (4) without authorization, in a manner that (5) infringes or facilitates infringing a right protected by the Copyright Act. *Couponcabin LLC v. Savings.com, Inc.*, No. 2:14-cv-39, 2016 U.S. Dist. LEXIS 74369, at *15 (N.D. Ind. June 8, 2016) (quoting *Chamberlain Group v. Skylink Techs., Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004)).[8]

The Federal Circuit's holding in *Chamberlain Group* (applying Seventh Circuit law on appeal from the Northern District of Illinois) requires a plaintiff to show that "the access resulting from the circumvention of the technological measure [was] in a manner that 'infringes or facilitates infringing a right protected by the Copyright Act.'" *Couponcabin*, 2016 U.S. Dist. LEXIS 74369, at **15-16 (quoting *Nordstrom Consulting, Inc. v. M&S Techs., Inc.*, No. 06 C 3234, 2008 U.S. Dist. LEXIS 17259, at *8 (N.D. Ill. 2008) (quoting *Chamberlain Group*, 381 F.3d at 1203)). Thus,

---

[8] *Couponcabin* and *Chamberlain Group* involved violations of § 1201(a)(2). In *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, the Federal Circuit clarified that the same infringement nexus requirement applies as well to § 1201(a)(1) of the DMCA. 421 F.3d 1307, 1318 (Fed. Cir. 2005).

14

"[a] copyright owner seeking to impose liability on an accused circumventor must demonstrate a reasonable relationship between the circumvention at issue and a use relating to a property right for which the Copyright Act permits the copyright owner to withhold authorization." *Couponcabin*, at *16 (quoting *Chamberlain Group*, 381 F.3d at 1204). This "infringement nexus requirement" has been adopted by several courts, including district courts within this Circuit. *Id.* TEG respectfully submits this Court should do the same.[9]

Fatally missing from Max's circumvention allegations are facts sufficient to draw a reasonable inference that TEG's alleged circumvention—the removal of the license key—constitutes copyright infringement or facilitates copyright infringement. First, as demonstrated in Part I.C. *supra*, TEG's distribution of the Software to its Government customers as permitted under the JVA does not and cannot constitute copyright infringement. Max must, therefore, rely on its contractual rights because there is no sufficient nexus between the rights protected by copyright law and the license key. *Storage Tech. Corp.*, 421 F.3d at 1319 ("The activation of the maintenance code may violate [plaintiff's] contractual rights vis-a-vis its customers, but those rights are not the rights protected by copyright law.").

Second, TEG is not facilitating copyright infringement. The only third parties accessing the Software are TEG's Government customers, who are licensed customers under the terms of the JVA. As permitted users, TEG's customers cannot infringe Max's copyright rights. *See Shaver*, 74 F.3d at 775 ("the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement"). Any attempt by Max to bring allegations of copyright infringement against TEG's Government Customers is also improper because the Court

---

[9] The Ninth Circuit adopts the contrary view, rejecting an infringement nexus requirement. *See MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 948-52 (9th Cir. 2010). While at least one district court in this Circuit has applied this contrary view, the Seventh Circuit has not yet decided the issue. *See Eclipse Gaming*, 2019 U.S. Dist. LEXIS 15078, at **6-9. TEG urges this Court to adopt the *Chamberlain* rule.

of Federal Claims has exclusive jurisdiction over copyright infringement claims brought against the Government. 28 U.S.C. § 1498(b).

Max's circumvention claim under the DMCA cannot state a claim as a matter of law and, therefore, should be dismissed with prejudice.

### 2. *Max Fails to Plead the Dual Scienter Required by Section 1202 of the DMCA*

Count V of the Complaint alleges that TEG violated § 1202 of the DMCA when it allegedly removed Max's CMI[10] from the Software and replaced it with a copyright notice using the terms "VJOC" and "C4MAP." (Compl. ¶¶ 45-46, 104, 129-31, 184, 186-87.) Because Max fails to plead facts sufficient to show that any of TEG's alleged conduct was committed with the requisite intent to infringe or to facilitate infringement, Count V should be dismissed.

The DMCA seeks "to strengthen copyright protection in the digital age" by, among other things, protecting copyright management information or "CMI." *Victor Elias Photography, LLC v. ICE Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022) (quoting *Mango v. Buzzfeed, Inc.* 970 F3d 167, 170-71 (2d Cir. 2020)). Sections 1202(a) and (b) of the statute prohibit removing or altering CMI as well as providing or distributing false CMI. Both subsections require what courts have called the "dual scienter" or "double scienter" requirement.

Section 1202 prohibits a person from "knowingly" providing or distributing false CMI "with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a). Section 1202 also prohibits removing or altering CMI "intentionally" (or "knowing" that CMI has been removed or altered) "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right of this title." 17 U.S.C. § 1202(b); *see Victor Elias Photography*, 43 F.4th at 1319-21 (discussing statutory basis for the double scienter

---

[10] Copyright Management Information or "CMI" is defined in § 1202(c). 17 U.S.C. § 1202(c).

requirement); *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 840 (N.D. Ill. 2019) (citing *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018) and *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018)).

For the same reasons that Max can allege no set of facts in which either TEG or its Government customers can be liable for copyright infringement, Max can allege no set of facts in which TEG has the requisite second scienter; namely, the intent to, or with knowledge or reasonable grounds to know that its actions will "induce, enable, facilitate, or conceal [copyright] infringement" as required by § 1202 of the DMCA.

In sum, because Max can allege no set of facts sufficient as a matter of law to support the "infringement nexus" or the "double scienter" required by the DMCA, Counts IV and V of the Complaint should be dismissed with prejudice.

### E.   Max's Lanham Act Claim is Barred as a Matter of Law (Count VI)

In Count VI of the Complaint, Max asserts that TEG's actions in using the names C4MAP or VJOC in connection with the Software rather than Max's "Haptic" name constituted reverse passing off in violation of § 43(a) of the Lanham Act. (Compl. ¶¶ 132-40, 144, 190-95, 197, Dkt. 1.) Max's Lanham Act claim must be dismissed with prejudice because it is barred as a matter of law by the Supreme Court's *Dastar* decision and its progeny. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 (2003).

In *Dastar*, plaintiff Twentieth Century Fox made essentially the same allegation as Max does here: that defendant Dastar's sale of videos (copied and derived from a television series in which Fox claimed exclusive rights) "without proper credit" to the copied television series constituted "reverse passing off" in violation of § 43(a) of the Lanham Act. *Id.* The Ninth Circuit agreed with Fox, but the Supreme Court reversed, holding that a false designation of origin claim

under § 43(a)(1)(A) of the Lanham Act is inapplicable where the alleged "false designation" is of the creator of a creative or communicative work. *Id.* at 37-38. This is because, the Court reasoned, the word "origin" in this statutory context denotes only the producer of the physical goods and not the creator of the intellectual property embodied in those goods. *Id.*

The *Dastar* reasoning has been applied equally to claims of false affiliation or sponsorship as well as to claims of false advertising under § 43(a). *Agence Fr. Presse*, 769 F. Supp. 2d at 307-08. It has also been applied to allegations such as those made by Max here where a plaintiff alleges a defendant copied its source code and marketed it as its own. *See Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 879-80 (N.D. Ill. 2004) (granting motion to dismiss Lanham Act claim under *Dastar* where plaintiff alleged defendant was selling software directly derived from plaintiff's software, giving the false impression to customers that the software system was defendant's own); *General Universal Sys. v. Lee*, 379 F.3d 131, 148-49 (5th Cir 2004) (affirming summary judgment grant against Lanham Act claims where plaintiff alleged defendant created derivative work of its software and marketed it as its own).

The gravamen of Max's Count VI is that TEG has violated the Lanham Act by marketing and selling software directly derived from the Haptic Federal Software source code without acknowledging Max as the creator of the software. (Compl. ¶¶ 134, 138, 195, Dkt. 1.) But TEG *is* the actual source or origin of the tangible C4MAP / VJOC software product being provided to TEG's customers. (Compl. Ex. 9 at 2, Dkt. 1-9; *see* Compl. ¶¶ 84-85, Dkt. 1.) There is no consumer confusion as to source. Max's only complaint is that TEG fails to give Max appropriate credit as

the alleged original author of the source code embodied in that product. Such a claim is solely the province of the copyright laws under *Dastar*.[11] 539 U.S. at 32-34.

Max's Lanham Act claim urges this Court to adopt precisely the kind of "misuse or over-extension" of trademark protection rejected by the Supreme Court. *Id.* at 34. Taking all of the Complaint's allegations as true, Max's Lanham Act claim fails as a matter of law and Count VI should be dismissed with prejudice. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

### F.    The John Doe Defendants Are Improper and Should be Dismissed

Finally, Max names "John Does 1-10" as anonymous defendants in this Second Filed Action, but fails to plead any facts to support any claim against these unnamed defendants. Indeed, other than the case caption, the only reference to the John Doe Defendants is a single paragraph stating, "Defendants John Does 1-10 are employees of TEG whose true names and identities are not yet known but who will be identified in discovery in this case."[12] (Compl. ¶ 18, Dkt. 1.) Max makes no factual allegations relating to the John Does—no identifying facts, no alleged conduct, and no factual allegations as to how or why these anonymous employees could be personally liable for any of the causes of action pleaded in the Second Filed Action's Complaint.

These unnamed defendants must be dismissed because "it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Naderi v. ResMed Inc.*, No.

---

[11] Tellingly, the Copyright Act expressly limits the right of attribution to specified "works of visual art" only. 17 U.S.C. § 106A(a)(1)(A) (*quoted in Dastar*, 539 U.S. at 34-35). No software code is entitled to author attribution under the Copyright Act. *See Graham*, 144 F.3d at 236 ("The generally prevailing view in this country under copyright law has been that an author who sells or licenses her work does not have an inherent right to be credited as author of the work.").

[12] The Court also lacks personal jurisdiction over the John Doe Defendants for the reasons stated in the Rule 12(b)(2) motion filed contemporaneously with this motion.

1:22cv459, 2023 U.S. Dist. LEXIS 146126, at *8 (N.D. Ind. Aug. 21, 2023) (quoting *Wudtke v.*
*Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997)). Indeed, this Court and other courts in this Circuit
have repeatedly and consistently held that "John Doe" defendants "are not proper parties to a
lawsuit in federal court" and are properly dismissed on a motion to dismiss. *Flowers v. Bell*, No.
1:21-cv-01812, 2022 U.S. Dist. LEXIS 174652, at *15 (S.D. Ind. Sept. 27, 2022); *accord Fisher
v. Shellpoint Mortg. Servicing, LLC*, No. 4:23-cv-00044, 2023 U.S. Dist. LEXIS 97044, at *8 (S.D.
Ind. Jun. 5, 2023) (dismissing John Doe Defendants when complaint contained "no factual
allegations which suggest who the Doe Defendants might be or what role the Doe Defendants
played in [plaintiff's] claims."); *Hullinger v. Forgey*, No. 2:20-CV-417, 2021 U.S. Dist. LEXIS
66103, at *21 (N.D. Ind. Apr. 5, 2021) ("The law in the Seventh Circuit is clear that claims against
'unknown officers' is not appropriate and serves no purpose.") (citing *Wudtke*, 128 F.3d at 1060).

Max's anonymous "John Doe" defendants are similarly improper and should be dismissed
from this action.

## II.   ANY REMAINING CLAIMS SHOULD BE STAYED UNDER FED. R. CIV. P. 13(a) AND PURSUANT TO THE COURT'S INHERENT POWER

Should any of the Second Filed Action's claims survive Rule 12(b)(6) scrutiny, those
claims should be stayed because they are compulsory counterclaims that should have been asserted
in the First Filed Action. *See* Fed. R. Civ. P. 13(a).

### A.   Legal Standard

Rule 13(a) of the Federal Rules of Civil Procedure requires that a party must bring as a
compulsory counterclaim "any claim that—at the time of its service—the pleader has against an
opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter
of the opposing party's claim." Fed. R. Civ. P. 13(a)(1). This requirement operates to bar a party
under the doctrine of res judicata from suing on a claim that it should have brought as a compulsory

counterclaim in a prior action. *Burlington N. R. Co. v. Strong*, 907 F.2d 707, 710 (7th Cir. 1990) ("[I]f a counterclaim is compulsory and the party does not bring it in the original lawsuit, that claim is thereafter barred.") (citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) and *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 572 (7th Cir. 1989)).

Fed. R. Civ. P. 13(a) does not necessarily bar a party from asserting a claim in a separate action "that it could have brought as a compulsory counterclaim in a pending action (i.e., where res judicata has not yet attached)." *Hostway Corp. v. JPMorgan Chase Bank, N.A.*, Case No. 09-cv-151, 2009 U.S. Dist. LEXIS 75049, at *6 (N.D. Ill. Aug. 24, 2009) (citing *Inforizons, Inc. v. VED Software Services, Inc.*, 204 F.R.D. 116, 118 (N.D. Ill. 2001)). A party that does so, however, risks the possibility that its second action will be dismissed or stayed in favor of the first filed action so as to avoid duplicative litigation and potentially inconsistent rulings. This is because courts faced with two separate actions involving claims that could be properly characterized as compulsory counterclaims generally will stay or dismiss the second filed action in the interests of sound judicial administration and economy. *Hostway*, 2009 U.S. Dist. LEXIS 75049, at *6; *Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929, 934-35 (N.D. Ill. 2006); *see Burlington*, 987 F.2d at 710 (compulsory counterclaim rule serves important role in conserving judicial resources by preventing multiplicity of actions).

This is consistent with the court's "broad discretion to stay proceedings as an incident to its power to control its own docket." *Belden Inc. v. Nexans Inc.*, No. 1:12-cv-01722, 2013 U.S. Dist. LEXIS 104808, at *2 (S.D. Ind. Jul. 26, 2013) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). Courts generally seek to avoid duplicative or parallel actions because it would not only be a waste of judicial and litigant resources, but it would also give rise to the possibility of

conflicting rulings. District courts have "a great deal of latitude and discretion in determining whether one action is duplicative of another." *Kim*, 412 F. Supp. 2d at 939 (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)) (citation and internal quotation marks omitted).

Here, resolution of the contract claims in the First Filed Action could fully resolve any possible remaining claims in this Second Filed Action. If TEG prevails in its interpretation of the JVA as a joint owner of the Software, TEG can neither infringe its own intellectual property rights nor misappropriate its own trade secrets. In the interest of judicial economy, the Court should exercise its discretion to stay this duplicative, parallel action—as well as Max's stale preliminary injunction request.

### B.   Procedural Background

TEG filed its complaint against Max on December 28, 2023 in the United States District Court for the Eastern District of Virginia. (*Triangle Experience Group, Inc. v. Max Minds, LLC*, No. 1:23-cv-01797 (E.D. Va. Dec. 28, 2023), Dkt. 1.) On March 4, 2024, Max filed a motion to dismiss TEG's complaint or, in the alternative, to transfer venue to this Court. (*Id.*, Dkt. 12, 13.) On April 12, 2024, Judge Nachmanoff granted Max's motion to transfer and ordered TEG's case transferred to this Court. (*Id.*, Dkt. 19.) Once the case was on this Court's docket as the First Filed Action, Max requested an automatic extension of time to respond to the complaint, (First Filed Action, Dkt. 36), and, on May 10, 2024, filed its Answer, Affirmative Defenses, and Counterclaims. (First Filed Action, Dkt. 37.)[13]

On May 7, 2024, however, just three days prior to filing its answer and counterclaims in the First Filed Action, Max filed this lawsuit under seal. (Second Filed Action, Dkt. 1.) Although dressed up as an intellectual property case, the factual allegations of the Second Filed Action's

---

[13] On June 21, 2024, TEG filed a motion to dismiss Counts I, II, V, VI, and VII of Max's counterclaims together with a motion to strike certain of Max's affirmative defenses. First Filed Action, Dkts. 49-52.

complaint are nearly identical to the factual allegations of Max's counterclaims in the First Filed

Action. (*Compare* First Filed Action, Dkt. 37 pp. 30-52 *with* Second Filed Action, Dkt. 1 pp. 3-

19.) In addition to its repetitive complaint, Max filed an ex parte request (as the case was still under

seal) for a preliminary injunction and seizure order. (Second Filed Action, Dkts. 12-15.)

      Once TEG and its counsel became aware of the Second Filed Action, counsel conferred

about Max's professed need to keep the Second Filed Action under seal. Max's sole basis for

sealing the entire Second Filed Action from view was TEG's alleged installation of source code

on certain URLs exposed to the public. (*See* Second Filed Action Pl.'s Prelim. Inj. Br. 2, Dkt. 13

(once the source code is no longer online, "the case can be unsealed immediately.")[14] Although

TEG vehemently denies Max's assertions, to allay any concerns of public exposure, TEG took

down the URLs in question and certified in a Stipulation to Lift Seal "so ordered" on June 4, 2024,

"that public internet access to the software and the allegedly copyrighted and trade secret source

code has been disabled/terminated and will remain disabled/terminated during the pendency of

this lawsuit and/or until further order of this Court." (Second Filed Action Stip., Dkt. 44.)

      The same alleged public internet exposure also serves as the only basis for Max's alleged

"irreparable harm" necessitating preliminary injunctive relief. (Second Filed Action Pl.'s Prelim.

Inj. Br. 10-11, Dkt. 13) ("TEG has made Max's proprietary Haptic Federal source code accessible

to the general public.")[15] Thus, Max concedes, once the threat of the source code being made

available online is removed, TEG's actions will no longer "pose an imminent threat to Max's

---

[14] *See also* Compl. ¶¶ 103, 105-06, Dkt. 1; Pl.'s Mot. to Seal Mem. 3-4, Dkt. 8; Rothman Decl. ¶¶ 8-10, Dkt. 8-1; Fischer Decl. ¶¶ 82, 84-87, Dkt. 15; Simon Decl. ¶¶ 3-6, Dkt. 14.

[15] *See* Pl.'s Prelim. Inj. Br. 8-9, Dkt. 13; Simon Decl. ¶¶ 3-6, Dkt. 14; Fischer Decl. ¶¶ 82, 84-87, 128, Dkt. 15) (discussing public disclosure of the source code as the trade secret exposure requiring preliminary court intervention). The Complaint's only other allegations are nothing more than unsupported, boilerplate recitations. (Compl. ¶¶ 149, 158, Dkt. 1) ("Defendants disclosed Max's trade secret Haptic Federal Source Code.").

intellectual property, to Max's relationship with its customers, and to the national security of this country." (Second Filed Action Pl.'s Prelim. Inj. Br. 2, Dkt. 13.) Because the preliminary relief requested by Max has already been accomplished and memorialized by Court Order, Max's preliminary injunction request is, effectively, moot.

### C.    Both Lawsuits Arise Out of the Parties' Joint Venture Relationship

In the Seventh Circuit, the standard for determining whether two claims arise out of the same transaction or occurrence under Fed. R. Civ. P. 13(a) is whether the claims are "logically related." *Burlington*, 987 F.2d at 711; *Hostway*, 2009 U.S. Dist. LEXIS 75049, at *7 (citing *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994)). There is no formal test to determine whether claims are logically related, but rather the words "transaction or occurrence" should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Fed. R. Civ. P. 13(a). *Hostway*, 2009 U.S. Dist. LEXIS 75049, at **7-8 (citing *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977)).

Here, a "logical relationship" between the claims (and counterclaims) in the First Filed Action and this lawsuit is more than evident. The foundation of each party's claims in both lawsuits is the JVA and the parties' other contracts relating to the Haptic Federal Software. Consequently, Max was obligated to bring its claims as compulsory counterclaims in the First Filed Action. Allowing Max to maintain its claims in this case will result in two concurrent federal actions involving the same allegations and grievances, which is contrary to the federal rules' general policy of judicial economy.

### D.    Max's Preliminary Injunction Request is Effectively Moot

The only apparent reason for Max to bring this Second Filed Action is its request for ex parte seizure and preliminary injunction. (Second Filed Action, Dkts. 12-15.) Of course, Max

could have sought preliminary injunctive relief in the First Filed Action, too. In any event, this rationale no longer applies.

On June 4, 2024, the Court "so ordered" TEG's stipulation "that public internet access to the software and the allegedly copyrighted and trade secret source code has been disabled/terminated and will remain disabled/terminated during the pendency of this lawsuit and/or until further order of this Court." (Second Filed Action Stip., Dkt. 44.) The same public internet exposure also serves as the basis for Max's alleged "irreparable harm" necessitating preliminary injunctive relief. (*See, e.g.*, Second Filed Action Pl.'s Prelim. Inj. Br. 10-11, Dkt. 13.) And Max conceded in its own preliminary injunction briefing that once the threat of the source code being made available online was removed, TEG's actions will no longer "pose an imminent threat to Max's intellectual property, to Max's relationship with its customers, and to the national security of this country." (Second Filed Action Pl.'s Prelim. Inj. Br. 2, Dkt. 13.)

Because the preliminary relief requested by Max has already been accomplished and memorialized by Court Order, Max's preliminary injunction request is, effectively, moot. *See Kartik Patel v. Consol. City of Indianapolis/Marion Cnty.*, No. 1:23-cv-01495, 2024 U.S. Dist. LEXIS 32070, at **8-9 (S.D. Ind. Feb. 26, 2024) (where court had already entered an agreed order maintaining the status quo pending review, court denied as moot plaintiffs' motions for emergency stay and for preliminary injunction because "the urgency with which Plaintiffs initiated and have pursued this case . . . has passed"). Whatever urgency might have instigated this Second Filed Action, that urgency has most certainly passed.

Moreover, resolution of the contractual claim at the heart of the parties' dispute in the First Filed Action may resolve any possible remaining claims in this lawsuit. A joint owner cannot infringe its own intellectual property and cannot misappropriate its own trade secrets. The Court,

therefore, should exercise its discretion pursuant to Fed. R. Civ. P. 13(a) and the Court's inherent power to stay any claims that may survive this motion to dismiss (together with Max's stale preliminary injunction request). Such a stay is warranted here to promote judicial economy and avoid duplicative or parallel actions that will only serve to waste judicial and litigant resources.

## **CONCLUSION**

For the foregoing reasons, TEG respectfully requests that the Court grant TEG's motion to dismiss all Counts of this Second Filed Action under Fed. R. Civ. P. 12(b)(6). Should any of Max's claims survive dismissal, TEG requests that the Court stay those causes of action, as well as Max's preliminary injunction request, pending resolution of the First Filed Action.

Dated: July 5, 2024                                       Respectfully submitted,


Marc T. Quigley, Atty. No. 21054-53                  */s/ Richard D. Kelley*
**KRIEG DeVAULT LLP**                               Richard D. Kelley, *admitted pro hac vice*
12800 North Meridian Street                         Raighne C. Delaney, *admitted pro hac vice*
Suite 300                                           Stephen D. Caruso, *admitted pro hac* vice
Carmel, Indiana  46032                              **BEAN, KINNEY & KORMAN, PC**
Tel: (317) 566-1110                                 2311 Wilson Boulevard, Suite 500
Fax: (317) 636-1507                                 Arlington, VA  22201
mquigley@kdlegal.com                                Tel: (703) 525-4000
                                                    Fax: (703) 525-2207
Alexandra Wilson Pantos, Atty. No.                   rkelley@beankinney.com
37003-49                                            rdelaney@beankinney.com
**KRIEG DeVAULT LLP**                               scaruso@beankinney.com
One Indiana Square, Suite 2800
Indianapolis, Indiana  46204
Tel: (317) 636-4341
Fax: (317) 636-1507
awilson@kdlegal.com                                 ***Attorneys for Triangle Experience Group, Inc.***