**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

**CASE NO.: 1:24-cv-00779-JPH-MKK**

MAX MINDS, LLC,

                    Plaintiff,

v.

TRIANGLE EXPERIENCE GROUP, INC.,
ROBERT EDWARD CLARE, JEFFREY
MASE, KEVIN G MULLICAN AND JOHN
DOES 1-10,

                    Defendants.

_____

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION</u>**

**SRIPLAW**
California ◆ Georgia ◆ Florida ◆ Indiana ◆ Tennessee ◆ Texas ◆ New York

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................... 2

  A.  STATEMENT OF FACTS ................................................................................. 2

  B.  LEGAL STANDARD ....................................................................................... 8

    1.   Standard for a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) ........................................................................................................ 8

    2.   Whether and When to Permit Personal Jurisdiction Discovery ................................... 9

II.    ARGUMENT ......................................................................................................... 10

  A.  The Court has Specific Personal Jurisdiction over Individual Defendants Clare, Mace and Mullican .................................................................................................................... 10

  B.  Clare, Mace and Mullican Engaged in Purposeful Infringing Conduct Directed at Max in Indiana .................................................................................................................... 11

  C.  The Individual Defendants Consented to Indiana Jurisdiction over Them and Engaged in Conduct Directed at Indiana ................................................................................. 13

  D.  Max is Entitled to Jurisdictional Discovery if the Court Determines that Additional Factual Support is Needed for Jurisdiction over the Individual Defendants ........................... 15

III.    CONCLUSION ...................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*1.4G Holdings, LLC v. N. Cent. Indus., Inc.*,
   2023 U.S. Dist. LEXIS 237158 (S.D. Ind. Oct. 6, 2023) ...................................................... 9

*Am. Commercial Barge Line LLC v. IWC Oil & Refinery, LLC*,
   2023 U.S. Dist. LEXIS 208273 (S.D. Ind. Nov. 21, 2023) ................................................... 9

*Andersen v. Sportmart, Inc.*,
   179 F.R.D. 236 (N.D. Ind. 1998) ..................................................................................... 15

*B.D. v. Samsung SDI Co., Ltd.*,
   91 F.4th 856 (7th Cir. 2024) ....................................................................................... 10, 15

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................................... 11, 13

*Calder v. Jones*,
   465 U.S. 783 (1984) ......................................................................................................... 12

*Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*,
   440 F.3d 870 (7th Cir. 2006) ................................................................................. 10, 11, 15

*Colo'n v. Akil*,
   449 F. App'x 511 (7th Cir. 2011) ..................................................................................... 15

*Esquivel v. Airbus Ams., No. 1:20-cv-07525*,
   2021 U.S. Dist. LEXIS 193344 (N.D. Ill. May 3, 2021) .................................................. 10

*Felland v. Clifton*,
   682 F.3d 665 (7th Cir. 2012) ........................................................................................... 11

*Gibson v. City of Chicago*,
   910 F.2d 1510 (7th Cir. 1990) ........................................................................................... 9

*Honda Mfg. of Ind. LLC v. Custom Machs., Inc.*,
   2016 U.S. Dist. LEXIS 169507 (S.D. Ind. Dec. 7, 2016) ................................................... 9

*Intermatic, Inc. v. Taymac Corp.*,
   815 F. Supp 290 (S.D. Ind. 1993) ................................................................................... 12

*Leo Feist v. Young*,
   138 F.2d 972 (7th Cir. 1943) ........................................................................................... 12

*Martin v. Maurer*,
   2016 U.S. Dist. LEXIS 75245 (S.D. Ind. Feb. 3, 2016) ................................................... 11

*Med. Grp., Inc. v. Am. Arb. Ass'n*,
   149 F.Supp. 2d 615 (S.D. Ind. 2001) ................................................................................. 9

*Microsoft Corp. v. Rechanik*,
   249 F. App'x 476 (7th Cir. 2007) ..................................................................................... 12

*New Berry Inc. v. Smith, No. 2:19-CV-159 JD*,

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ TEXAS ◆ NEW YORK

2021 U.S. Dist. LEXIS 22261 (N.D. Ind. Feb. 5, 2021) ...................................................... 15

*Precision Universal Joint Corp. v. Republic Gear Co.*,
1976 U.S. Dist. LEXIS 15452 (N.D. Ill. Apr. 22, 1976) ................................................... 12

*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) .......................................................................................... 10

*Ramada Franchise Systems, Inc. v. Boychuk*,
283 F.Supp.2d 777 (N.D.N.Y. 2003) .............................................................................. 12

*State Civil Rights Comm'n v. Cty. Line Park, Inc.*,
738 N.E.2d 1044 (Ind. 2000) .......................................................................................... 12

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) .......................................................................................... 11

*the Federal Due Process Clause of the Fourteenth Amendment. Link America Corp. v. Cox*
Federal Due Process Clause of the Fourteenth Amendment. Link America Corp. v. Cox, 857
N.E.2d 961 (Ind. 2006) ..................................................................................................... 9

*United Nat. Foods, Inc. v. Teamsters Local 414*,
2021 U.S. Dist. LEXIS 243011 (N.D. Ind. Dec. 20, 2021) ............................................. 15

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................................................ 10

*Woodmar Coin Ctr., Inc. v. Owen*,
447 N.E.2d 618 (Ind. Ct. App. 1983) .............................................................................. 13

**Statutes**

Section 9.4.2 .......................................................................................................................... 5

**Rules**

Rule 12(b)(2) ................................................................................................................. 3, 9, 10

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ TEXAS ◆ NEW YORK

# I.    INTRODUCTION

The Motion to Dismiss for lack of personal jurisdiction (ECF 49) should be denied. The claims against defendants Robert Clare, Jeffrey Mase, and Kevin Mullican are asserted against them in their individual capacities. These defendants are not being sued as representatives of TEG. They are being sued for committing the misappropriation, infringement, circumvention and other claims asserted in the complaint individually.

The individual defendants' motion appears to assume that Clare, Mase and Mullican are entitled to the fiduciary shield doctrine. They are not. The fiduciary shield doctrine does not insulate the defendants individually since it does not apply in Indiana. Nor does the defendants' status as corporate officers insulate them from jurisdiction. Intentional tortfeasors, and officers of corporations, are personally liable for the torts they commit, participate in or direct. That is what the defendants are accused of doing. The torts they committed injured Max in Indiana and there is more than sufficient contacts for the defendants to expect to be hailed into court in Indiana.

The declaration of Brandon Fischer, CEO of Max accompanying this memorandum of law (the "Fischer Decl."), lays out additional facts supporting personal jurisdiction over these individuals. However, if the court believes that the facts alleged in the complaint and those set forth in the declaration of Brandon Fischer are still insufficient, the motion should be denied without prejudice and leave to conduct jurisdictional discovery should be granted.

## A.    STATEMENT OF FACTS

1.    This is an action for trade secrets theft and misappropriation, copyright infringement, circumvention of copyright protection systems, removal or falsification of copyright management information, and for false designation of origin. (Complaint ¶ 1).

2.    MAX is an Indiana limited liability company, with its principal place of business of 12400 North Meridian Street, Suite 175, Carmel, Indiana 46032. (Complaint ¶ 11)

3.      MAX's sole member is CEO Brandon Fischer ("Fischer") who is domiciled in Indiana. (Complaint ¶ 13; Fischer Decl. ¶ 2).

4.      Max brings these allegations against TEG and three of its executives, specifically, Defendant, Robert Clare ("Clare") is the Chief Executive Officer (CEO) of Triangle Experience Group, Inc ("TEG"). Defendant, Jeffrey Mase ("Mase") is the Chief Operating Officer (COO) of TEG. Defendant, Kevin Mullican ("Mullican"), is the Chief Technology Officer (CTO) of TEG. (Fischer Decl. ¶ 3).

5.      The relationship between Max and TEG dates back to 2016, when Max's CEO Brandon Fischer was working for a software company called Prysm. At the time, TEG was a licensed reseller of Synthesis, a software created by Fischer who sold it Prysm in 2014. (Fischer Decl. ¶ 5).

6.      In March of 2018, Mullican first contacted Fischer, who was in Indiana at the time, soliciting Fischer's assistance to supply Software to TEG. (Fischer Decl. ¶ 6). However, Fischer was under a non-compete with Prysm and could not work with TEG until the non-compete expired in June 2019. (*Id.*).

7.      In February 2019, Fischer invited representatives of TEG to a demonstration of MAX's Haptic software. TEG's representatives declined but invited Fischer to demonstrate Haptic the next day at the U.S. Government Joint Staff Lab in Norfolk, Virginia. (Complaint ¶ 70).

8.      In or around March 2019, MAX began development of a software product called "Haptic," with full-time development beginning in May 2019. Haptic is an interactive content collaboration software and was originally designed for use in both the public and private sector. MAX created Haptic independently. (Fischer Decl. ¶ 7).

9.      In July 2019, MAX conducted another demonstration of the Haptic platform to industry partners and potential customers. Clare and Mase attended that demonstration. After the demonstration, Clare pursued Fischer in an effort to convince me to work with TEG. (Fischer Decl. ¶ 10).

10.     In September 2019, Clare and Mase requested that Fischer provide them with Haptic user accounts so that they could test and evaluate Haptic. (Fischer Decl. ¶ 11).

11.     On October 2, 2019, Fischer provided TEG's CEO Rob Clare and COO Jeff Mase with Haptic Federal user accounts. (Fischer Decl. ¶ 12; Complaint ¶ 75).

12.     The user accounts permitted Clare and Mase access to and the ability to demonstrate Haptic Federal to TEG's customers. (Complaint ¶ 77).

13.     The Haptic user accounts required Clare and Mase to visit a website on the internet maintained by MAX in Indiana and login to the Haptic software. (Fischer Decl. ¶ 12).

14.     Impressed with Haptic Federal's capabilities, Clare contacted Fischer on November 3, 2019, to discuss how TEG could become an authorized reseller of Haptic Federal to the U.S. Government. (Complaint ¶ 79).

15.     Thereafter, in January 2020 Max entered into a business relationship with TEG, whereby TEG would be the exclusive reseller of Max's software to the federal government, memorialized by a Joint Venture Agreement. (Complaint ¶ 84-85, Ex. 9; Fischer Decl. ¶ 13).

16.     The JVA was negotiated between MAX and TEG by Fischer and Clare using the telephone and video calls while Fischer was located in Indiana. (Fischer Decl. ¶ 14).

17.     In August 2020, Max modified the Haptic login page to add a requirement that users agree to the Haptic "End User License Agreement" ("EULA") when accessing the software through the Haptic login page. (Fischer Decl. ¶ 17).

18.     Before a user can access the Haptic software, the user must agree that they read and accepted the EULA by checking a box that states "[X] I accept the End User License Agreement." (Fischer Decl. ¶ 18)

19.     In addition to Clare and Mase, Mullican also was provided with a Haptic user account, but not until 2020. (Fischer Decl. ¶ 19).

20.     Section 9.4.2 of the Haptic EULA that Clare, Mase and Mullican all accepted requires the user to agree to a number of terms including the following:

> "Any action at law or in equity arising under this EULA shall be finally adjudicated or determined in any court or courts of the state of Indiana, or of the United States of America, in Hamilton County, Indiana and the parties hereto hereby submit generally and unconditionally to the personal and exclusive jurisdiction and venue of these courts in respect to any such matter and consent to service of process by any means authorized by Indiana law." (Fischer Decl. ¶ 22; Complaint ¶ 58-59, 78, Ex. 5).

21.     Max keeps records of all users who login to Haptic with their user accounts and accept the EULA. The records of logins by Clare, Mase and Mullican in Max's records indicate the following:

a.  Beginning on August 12, 2020, and continuing through November 13, 2021, Clare logged in and agreed to the Haptic EULA at least 124 times.

b.  Beginning on August 10, 2020, and continuing through November 16, 2021, Mase logged in and agreed to the Haptic EULA at least 317 times.

c.  Mullican logged in and agreed to the Haptic EULA at least two times, once on October 8, 2020, and again on July 22, 2021.

(Fischer Decl. ¶ 20).

22.     In 2022, Max changed the name of the commercial version of its software from Haptic to Alleo. Beginning in December of 2022, users needed to accept the "Alleo End User

License Agreement" when logging into the software. Before logging in, users must check a box that states, "[X] I accept the End User License Agreement." The Alleo EULA contains a similar forum and jurisdiction selection clause to the Haptic EULA that reads "Any action or proceeding arising out of or relating to this Agreement shall be brought exclusively in a state or federal court of competent jurisdiction located in Indianapolis, Indiana." (Fischer Decl. ¶ 23).

23.     Max keeps records of all users who login to Alleo with their user accounts and accept the EULA. The records of logins by Clare, Mase and Mullican in Max's records indicate the following:

    a.  Clare accepted and agreed to the Alleo EULA at least 26 times between December 27, 2021, and March 27, 2022.

    b.  Mase accepted and agreed to the Alleo EULA at least 129 times between December 23, 2021, and February 19, 2024.

    (Fischer Decl. ¶ 24).

24.     Throughout the parties' working relationship, Clare visited MAX in Carmel, Indiana on multiple occasions. (Fischer Decl. ¶ 4).

25.     On December 19, 2022, Clare contacted me asking if he and another TEG employee could "swing by" Max's offices in Indiana. Clare said that he was in Indianapolis on business. Clare visited me at the Max offices that day in person. Clare came back again the next morning December 20, 2022. In addition, Clare visited Max's offices in Indiana for meetings on January 12, 2023, and January 13, 2023. (Fischer Decl. ¶ 15).

26.     The purpose of all of the meetings was to attempt to negotiate and renegotiate new terms for the parties' relationship. During the meetings Fischer and Clare discussed a variety of things, merging companies, forming a holding company, and replacing the JVA with a

new agreement. After the meetings, Clare sent follow-up emails recapping his notes from the

meetings. Each meeting took place at Max's headquarters in Carmel, Indiana, and lasted

approximately four hours each day. (Fischer Decl. ¶ 16).

27.     After TEG and Max entered into the JVA, Max made the source code for Haptic

available to TEG for limited purposes, such as to scan for vulnerabilities and security issues.

28.     These transfers were made subject to significant use restrictions including, (1)

requiring chain of custody documentation, (2) a Certification Agreement (the "CA"), and (3) a

Source Code License Agreement ("SCLA"). (Complaint ¶ 62, 96, 100, Ex. 6 and 10).

29.     The use restrictions included, among other things, that:

a.     Haptic Federal Source Code is at all times maintained as confidential, not

disclosed except to customer personnel having a need to receive the Haptic

Federal source code (Complaint ¶ 102, Ex. 10);

b.     Haptic Federal source code is used only by the customer to complete required

security scans. TEG shall secure from the customer in each instance a chain of

custody form reasonably acceptable to Max Minds (similar to the DA 4137)

(Complaint ¶ 102, Ex. 10); and

c.     That TEG's use of Haptic Federal Source Code was to be limited to internal

business purposes only (Complaint ¶ 65, Ex. 6).

30.     Despite being aware of the significant restrictions contained in the CA and SCLA,

Clare, Mase and Mullican:

a.     personally disclosed and/or caused, directed and authorized employees of TEG to

disclose MAX's trade secret Haptic Federal Source Code without permission or

authority of MAX (Complaint ¶ 107, 108, 151, 161); and

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ TEXAS ◆ NEW YORK

    b.   authorized or directed employees of TEG to modify the Haptic Federal software source code and distribute that modified software to customers of TEG. (Fischer Decl. ¶ 36).

31.    In addition, Clare, Mase and Mullican authorized the back-dating of computers to circumvent licensing keys to the software and provide extended trials to customers of TEG. A TEG employee admitted to Max in 2023 on a recorded telephone conversation. Clare and Mase were the only individuals who would request and be issued license keys. (Fischer Decl. ¶ 32-34).

32.    Clare, Mase and Mullican engaging in these acts harmed Max in Indiana. (Fischer Decl. ¶ 25, 31).

33.    Clare, Mase and Mullican purposefully sought out Fischer and Max, both domiciliary of Indiana, to do business with. (Fischer Decl. 5-6, 10-11, 14).

34.    Clare, Mase and Mullican committed the acts alleged in the complaint, knowing that those acts would cause harm to Max in Indiana. (Fischer Decl. ¶ 14, 15, 20, 24, 31).

**B.**    **LEGAL STANDARD**

    **1.**    **Standard for a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint where there is a "lack of personal jurisdiction over the defendant. "When deciding a Rule 12(b)(2) motion, the court accepts the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff if they weigh on the issue of personal jurisdiction." *Am. Commercial Barge Line LLC v. IWC Oil & Refinery, LLC,* 2023 U.S. Dist. LEXIS 208273, at *10 (S.D. Ind. Nov. 21, 2023) (*citing Med. Grp., Inc. v. Am. Arb. Ass'n*, 149 F.Supp. 2d 615, 623 (S.D. Ind. 2001). In doing so, "the Court reviews any affidavits and other documentary evidence that have been filed, as long as factual disputes are resolved in favor of the non-movant

…" *Honda Mfg. of Ind. LLC v. Custom Machs., Inc.*, 2016 U.S. Dist. LEXIS 169507, at *9 (S.D. Ind. Dec. 7, 2016) (*citing Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990).

Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(A), allows personal jurisdiction to the limit allowed by the Federal Due Process Clause of the Fourteenth Amendment. *Link America Corp. v. Cox*, 857 N.E.2d 961, 966-67 (Ind. 2006). Due process requires that "[a] non-resident defendant 'generally must have certain minimum contacts … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *1.4G Holdings, LLC v. N. Cent. Indus., Inc.*, 2023 U.S. Dist. LEXIS 237158, at *7 (S.D. Ind. Oct. 6, 2023) (*quoting Walden v. Fiore*, 571 U.S. 277, 283 (2014)) (internal quotations omitted).

### 2.    Whether and When to Permit Personal Jurisdiction Discovery

"A complaint need not include facts alleging personal jurisdiction.*" Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, once the defendant moves to dismiss the complaint pursuant to Rule 12(b)(2) based on lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Id.* More specifically, "[o]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783.

"[Jurisdictional] discovery is proper if a plaintiff establishes a colorable or prima facie showing of personal jurisdiction." *B.D. v. Samsung SDI Co.*, Ltd., 91 F.4th 856, 864 (7th Cir. 2024) (*citing Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 876 (7th Cir. 2006). "Generally, courts grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *JT's Frames, Inc. v. Casares*, No. 16-cv-2504, at *6 (N.D. Ill. Feb. 12, 2018).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ TEXAS ◆ NEW YORK

Furthermore, it is well known that when a plaintiff alleges a prima facie case of personal jurisdiction, "courts should permit [the plaintiff] to conduct limited discovery to address the personal jurisdiction issues raised by a defendant's motion to dismiss." *Esquivel v. Airbus Ams.*, No. 1:20-cv-07525, 2021 U.S. Dist. LEXIS 193344, at *3 (N.D. Ill. May 3, 2021). In determining whether a plaintiff has sufficiently alleged a prima facie case for personal jurisdiction, courts read "the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff. *Id.* (*citing Cent. States*, 440 F.3d at 878).

## II.    ARGUMENT

### A.    The Court has Specific Personal Jurisdiction over Individual Defendants Clare, Mace and Mullican

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Martin v. Maurer*, 2016 U.S. Dist. LEXIS 75245, at *9 (S.D. Ind. Feb. 3, 2016) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Specific Jurisdiction can be based on relatively modest contacts with the forum if they have a substantial connection to the plaintiff's action." *Honda Mfg. of Ind. LLC v. Custom Machs., Inc.*, 2016 U.S. Dist. LEXIS 169507, at *10-11 (S.D. Ind. Dec. 7, 2016) (citing *Burger King*, 471 U.S. at 474-76).

The analysis for determining specific personal jurisdiction varies depending upon the types of claims alleged. *Martin*, 2016 U.S. Dist. LEXIS at *9-10. For intentional torts, "the inquiry focuses on whether the conduct underlying the claim was *purposefully directed* at the forum state. *Id.* at *10 (*citing Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012)). "[P]urposeful direction is established when the following factors are met: (1) intentional conduct (or intentionally and allegedly tortious conduct); (2) expressly aimed at the forum state; and (3)

with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state." *Id.* (*citing Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)).

### B.   Clare, Mace and Mullican Engaged in Purposeful Infringing Conduct Directed at Max in Indiana

The Individual Defendants focus their argument for lack of personal jurisdiction on the fact that personal jurisdiction cannot be based on corporate affiliation. (*See* DE 50 at 10). Defendants are essentially inviting the Court to apply the fiduciary shield doctrine, which "precludes a state from exercising jurisdiction over an individual sued in his or her capacity if the only basis for jurisdiction is his or her contacts with the forum in which he or she was acting solely as a fiduciary of a corporation." *Honda*, 2016 U.S. Dist. LEXIS at *15-16 (quoting *Intermatic, Inc. v. Taymac Corp.*, 815 F. Supp 290, 293 (S.D. Ind. 1993)). This defense, however, is not available in Indiana. *Id.*

Moreover, the defendant's status as a corporate officer "does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). Under Indiana law, "an officer is personally liable for the torts in which [he] has participated or which [he] has authorized or directed." *Honda*, U.S. Dist. LEXIS at *16 (quoting *State Civil Rights Comm'n v. Cty. Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000)). "Copyright infringement is unquestionably a tort…" *Precision Universal Joint Corp. v. Republic Gear Co.*, 1976 U.S. Dist. LEXIS 15452, at *6 (N.D. Ill. Apr. 22, 1976) (quoting *Leo Feist v. Young*, 138 F.2d 972, 975 (7th Cir. 1943)).  Under this rule, Courts have "extend[ed] liability to corporate officers who were proven to be 'a moving, active, conscious force' behind the corporation's infringement.'" *Coach, Inc. v. Diva's House of Style & Elizabeth Bond*, at *24 (N.D. Ind. Dec. 5, 2012) (quoting *Ramada Franchise Systems, Inc. v. Boychuk*, 283 F.Supp.2d 777, 788-89 (N.D.N.Y. 2003). "An individual can be jointly liable for a company's infringing conduct." *Microsoft Corp. v. Rechanik*, 249 F. App'x

476, 478 (7th Cir. 2007) (upholding district court's determination that corporate officer was liable for trademark and copyright infringement where the corporate officer intentionally encouraged the company's infringement).

Max's pleadings and affidavits make allegations beyond mere corporate affiliation, that Clare, Mase, and Mullican, each individually, intentionally encouraged the company's infringing conduct. (Complaint ¶ 107, 108, 151, 161; Fischer Decl. ¶ 32-34). Clare, Mase and Mullican were the driving force behind the relationship between TEG and Max from its inception. (*See generally* Fischer Decl. ¶ 6, 10, 11, 13, 15, 33-34). That Clare, Mase and Mullican purposefully directed their activities at Max, an Indiana company, and caused harm to Max in Indiana.

Specifically, Robert Clare intentionally pursued Max to convince Max to work with TEG. (Fischer Decl. ¶ 11). Clare visited Max's office in Indiana on two occasions, once completely unsolicited, to negotiate contracts between the parties, the substance of which related to TEG's use of the software and access to the source code. (Fischer Decl. ¶ 16, 27). Thereafter, Clare engaged in intentional efforts to deceive Max and ignore any contractual duties he owed to Max and profit from infringing Max's intellectual property rights. Clare authorized and directed TEG employees to modify Max's software and to circumvent Max's license key technology in order to increase its profits by extending licenses beyond what the license key would allow and get paid for services rendered under unauthorized extended trials to the United States government. (Fischer Decl. ¶ 32-36). Clare did so to conceal revenue owed to Max for software license sales and therefore knew his actions would harm Max. Clare by authorizing and directing employees of TEG to modify the Haptic Federal software source code and distribute that modified software to customers of TEG, intentionally engaged in tortious conduct (namely, copyright infringement) which he knew would harm Max in Indiana.

Jeffrey Mase authorized or directed TEG employees to circumvent Max's licensing key technology to provide extended licenses to customers. Mase knew that in order to provide licenses to customers he needed to request a licensing key from Max. (Fischer Decl. ¶ 33). Despite this knowledge, he instructed TEG's employees to modify the software and circumvent license keys and instructed TEG's customers to back-date computers to circumvent extend licenses that had expired. (Fischer Declaration ¶ 32, 34, 36). Mase took these actions to avoid obligations he had to Max in Indiana and knew that such actions would harm Max in Indiana.

Mullican, TEG's Chief Technology Officer, with knowledge of how the software operates, authorized and directed TEG employees to modify the software source code and authorized the distribution of that modified source code. (Fischer Decl. ¶ 3, 36). Moreover, Mullican directed TEG's employees to modify the software to circumvent Max's licensing keys and directed TEG's employees to backdate computers. (Fischer Decl. 32-34). Mullican was the first individual to reach out to Max in Indiana. (Fischer Decl. ¶ 6). Mullican knew that his actions would benefit TEG to the detriment of Max.

Each Individual Defendant is subject to specific personal jurisdiction in Indiana for knowing, intentional, and willful infringement of Max's intellectual property, purposefully directed at Indiana, and knowing that such actions would cause harm to Max in Indiana.

### C.   The Individual Defendants Consented to Indiana Jurisdiction over Them and Engaged in Conduct Directed at Indiana

Specific personal jurisdiction also exists where one purposefully availed himself of the benefits and responsibilities of doing business in [Indiana] by soliciting, negotiating and forming a contract with an Indiana resident," and the Plaintiff's claims relate to that contractual relationship. *Woodmar Coin Ctr., Inc. v. Owen*, 447 N.E.2d 618, 621 (Ind. Ct. App. 1983).

"Where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 2184 (1985).

Kevin Mullican first solicited Max's Brandon Fischer to provide software services to TEG in 2018. (Fischer Decl. ¶ 6). This solicitation resulted in the parties entering into a Joint Venture Agreement, negotiated by Fischer and Clare while Fischer was in Indiana. (Fischer Decl. ¶ 13-14). Further negotiations concerning the parties relationship, modifications to the JVA, or replacing the JVA with a new agreement took place between Clare and Fischer in Carmel, Indiana at Max's place of business. (Fischer Decl. ¶ 15). In fact, at one point Clare asked to meet Fischer at Max's headquarters in Carmel, Indiana, without solicitation from Max, as he was already in town for business. (*Id.*).

Moreover, Clare, Mase and Mullican each individually agreed to the terms of the Haptic End User License Agreement and the Alleo End User License agreement which provides for Jurisdiction in Indiana and allows them access to the Software which is the subject of the Joint Venture Agreement. (Fischer Decl. ¶ 20-24). The Privacy Policy and the EULA are the only agreements to which Clare, Mase and Mullican are parties as individuals. (Fischer Decl. ¶ 20).

Clare accepted the Haptic and Alleo EULAs a total of 150 times between August 12, 2020, and March 27 2022. (Fischer Decl. ¶ 20, 24).  Mase accepted the Haptic and Alleo EULAs a total of 446 times between August 10, 2020, and February 19, 2024. (*Id.*). Mullican accepted

the Haptic EULA twice, once on October 8, 2020 and again on July 22, 2021. (*Id.* at 20). Any action arising under the EULA is to be adjudicated in Indiana. (*Id.* at 22; Complaint, Ex. 5).

Central to all these agreements is Max's software. Despite the contents of these agreements, TEG and the Individual defendants have acted as if they have carte blanche authority to do whatever they want with the Software. The Individual defendants have authorized, directed, and participated in an unknown number of violations of Max's Intellectual Property rights in and two the software. The individual defendants have far exceeded the scope of these agreements by authorizing such acts.

**D.     Max is Entitled to Jurisdictional Discovery if the Court Determines that Additional Factual Support is Needed for Jurisdiction over the Individual Defendants**

If the Court is not sufficiently persuaded by the foregoing, Jurisdictional discovery is warranted to further substantiate Plaintiff's claims that the individual defendants are subject to jurisdiction in this forum.

Jurisdictional discovery is proper if a plaintiff establishes a colorable or prima facie showing of personal jurisdiction. *Cent. States,* 440 F.3d at 876. In determining whether Plaintiff has met this burden, the court should consider the entire record and draw all reasonable inferences in favor of the plaintiff. *B.D.*, 91 F.4th at 864.

Courts generally grant jurisdictional discovery where the factual record is at least ambiguous as to the question of personal jurisdiction. *See New Berry Inc. v. Smith*, No. 2:19-CV-159 JD, 2021 U.S. Dist. LEXIS 22261, at *5-6 (N.D. Ind. Feb. 5, 2021) (*citing Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998). Courts deny jurisdictional discovery where plaintiff has not met its burden of making a colorable or prima facie showing of personal jurisdiction and plaintiff cannot identify what facts it might seek in discovery to substantiate its claim of personal jurisdiction. *See United Nat. Foods, Inc. v. Teamsters Local 414*, 2021 U.S.

15

Dist. LEXIS 243011, at *11-12 (N.D. Ind. Dec. 20, 2021); *See also Colo'n v. Akil*, 449 F. App'x 511, 515 (7th Cir. 2011).

If plaintiff has not met its burden of establishing personal jurisdiction over the defendants in this case, Plaintiff should be entitled to conduct limited jurisdictional discovery to illuminate the factual evidence it has presented.

Specifically, Robert Clare states in his affidavit that he has not conducted personal business in Indiana. (DE 50-2 ¶ 8). Despite this statement, Clare texted Fischer asking if he could "Swing by" Max's office in Carmel, Indiana as he was already in Indiana for business on. (Fischer Decl. ¶ 15). This competing testimony creates factual ambiguity as to what Clare means by personal business and why Clare was in Indiana despite never having done personal business in the State.

Moreover, Clare and Mase are the two individuals who were provided licensing keys. Clare, Mase and Mullican knew Max to be an Indiana company. A TEG employee admitted to Fischer that TEG was engaging in back-dating computers to circumvent licensing keys to the software. (Fischer Decl. ¶ 32). Clare, Mase and Mullican were responsible for this circumvention which they knew would harm Max in Indiana. (Fischer Decl. ¶ 36). Plaintiff believes further discovery would be helpful to illuminate the egregious, knowing, and willful infringing activities of the three individual defendants. Discovery will show that the individual Defendants committed these intentional acts of infringement, that such action was purposefully directed at Indiana and intended to cause harm to Max in Indiana.

Plaintiff's request for jurisdictional discovery is not be based on a hunch. Rather it is based on a well articulated factual record which could be expanded on. Jurisdictional discovery would illuminate ambiguity in the factual record as to the number of acts each Defendant

authorized, directed or participated in, the individual defendant's purposeful solicitations to do business with Max, an Indiana company, and to resolve the inconsistencies between the declaration of Robert Clare and the declaration of Brandon Fischer.

### III.   CONCLUSION

For the reasons set forth herein and in the Declaration of Brandon Fischer and the Complaint, the Motion to Dismiss for Lack of Personal Jurisdiction filed by ROBERT EDWARD CLARE, JEFFREY MASE, and KEVIN G MULLICAN should be denied.

Dated: July 26, 2024                    Respectfully submitted,


                                        */s/ J. Campbell Miller*
                                        J. CAMPBELL MILLER
                                        Bar Number: 38279-49
                                        campbell.miller@sriplaw.com

                                        **SRIPLAW, P. A.**
                                        231 South Rangeline Road
                                        Suite H
                                        Carmel, Indiana 46032
                                        332.600.5599 – Telephone
                                        561.404.4353 – Facsimile

                                        -and-

                                        JOSEPH A. DUNNE (*Pro Hac Vice*)
                                        joseph.dunne@sriplaw.com

                                        **SRIPLAW, P. A.**
                                        175 Pearl Street
                                        Third Floor
                                        Brooklyn, Indiana 11201
                                        929.200.8446 – Telephone
                                        561.404.4353 – Facsimile

                                        -and-

                                        JOEL B. ROTHMAN (*Pro Hac Vice*)
                                        joel.rothman@sriplaw.com

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ TEXAS ◆ NEW YORK

**SRIPLAW, P. A.**
21301 Powerline Road
Suite 100
Boca Raton, Indiana 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

-and-

PHILIP D SEVER
Bar Number: 25384-49
phil@landownerattorneys.com

**SEVER, STORY, WALKER**
742 South Rangeline Road
Carmel, IN  46032
317 9611202 - Telephone

*Counsel for Plaintiff Max Minds, LLC*