UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

CASE NO.: 1:24-cv-00779-JPH-MKK

MAX MINDS, LLC,

        Plaintiff,

v.

TRIANGLE EXPERIENCE GROUP, INC.,
ROBERT EDWARD CLARE, JEFFREY
MASE, KEVIN G MULLICAN AND JOHN
DOES 1-10,

        Defendants.

## DECLARATION OF BRANDON FISCHER

I, Brandon Fischer, declare and say:

    1.    I am the Chief Executive Officer of Max Minds, LLC ("MAX"). I make this declaration based on my personal knowledge in support of MAX's response in opposition to Defendants motion to dismiss for lack of personal jurisdiction.

    2.    MAX is an Indiana limited liability company, with its principal place of business of 12400 North Meridian Street, Suite 175, Carmel, Indiana 46032. I am the sole member of MAX. I live and work in the Indianapolis area.

    3.    Defendant, Robert Clare ("Clare") is the Chief Executive Officer (CEO) of Triangle Experience Group, Inc ("TEG"). Defendant, Jeffrey Mase ("Mase") is the Chief Operating Officer (COO) of TEG. Defendant, Kevin Mullican ("Mullican"), is the Chief Technology Officer (CTO) of TEG.

    4.    During our respective companies' working relationship, Clare visited me personally in Carmel, Indiana on multiple occasions.

5. I first encountered TEG in 2016. At that time, TEG was a licensed reseller of Synthesis which was software I created and sold to a company called Prysm in 2014. I was an employee of Prysm when I met Clare and Mase.

6. In March of 2018, Mullican contacted me in Indiana to solicit my assistance to supply software to TEG. I told Mullican that I was under a non-compete with Prysm and could not help him until my non-compete expired in June 2019.

7. In or around March 2019, MAX began development of a software product called "Haptic," with full-time development beginning in May 2019. Haptic is an interactive content collaboration software and was originally designed for use in both the public and private sector. MAX created Haptic independently.

8. Haptic enables teams to communicate seamlessly and in real-time. The platform's powerful tools help teams manage tasks, share files, and stay organized. The software is capable of numerous functions such as creating: Briefing and experience centers; ideation and insight centers; customizable collaboration spaces; and dashboarding and operations centers.

9. In June 2019, MAX demonstrated Haptic to industry partners and potential commercial customers at InfoComm.

10. In July 2019, MAX conducted another demonstration of the Haptic platform to industry partners and potential customers in Tyson's Corner, Virginia. Clare and Mase did not attended that demonstration but asked me to come with them to demonstrate the software to their customer the next day at a government building in Norfolk, Virginia. After the demonstration, Clare pursued me to convince me to work with TEG.

11. In September 2019, Clare and Mase requested that I provide them with Haptic user accounts so that they could test and evaluate Haptic.

12. On October 2, 2019, I provided Clare and Mase with Haptic user accounts. The Haptic user accounts required Clare and Mase to visit a website on the internet maintained by MAX in Indiana and login to the Haptic software.

13. On January 23, 2020, MAX and TEG entered into the Joint Venture Agreement (the "JVA") attached to the complaint in this case.

14. The JVA was negotiated between MAX and TEG by me and Clare using the telephone and video calls when I was located in Indiana.

15. On December 19, 2022, Clare contacted me asking if he and another TEG employee could "swing by" Max's offices in Indiana. Clare said that he was in Indianapolis on business. Clare visited me at the Max offices that day in person. Clare came back again the next morning December 20, 2022. In addition, Clare visited Max's offices in Indiana for meetings on January 12, 2023 and January 13, 2023.

16. TEG and Clare pursued these meetings to attempt to negotiate and renegotiate new terms for the parties' relationship. During the meetings we discussed a variety of things, merging companies, forming a holding company, replacing the JVA with a new agreement. The reason TEG and Clare wanted to renegotiate the exclusivity terms of the JVA was because TEG fell $1.8 million dollars short of their required sales numbers in 2022 and did not want to lose exclusivity. After the meetings, Clare sent follow-up emails recapping his notes from the meetings. Each meeting took place at Max's headquarters in Carmel, Indiana, and lasted approximately four hours each day.

17. In August 2020, Max modified the Haptic login page to add a requirement that users agree to the Haptic "End User License Agreement" (EULA) when accessing the software

on the Haptic login page. The Haptic login page is part of the Haptic cloud, owned and maintained by Max.

18. Before a user can access the Haptic software, the user must agree that they read and accepted the EULA by checking a box that states "[X] I accept the End User License Agreement."

19. In addition to Clare and Mase, Mullican also was provided with a Haptic user account, but not until 2020.

20. Max keeps records of all users who login to Haptic with their user accounts and accept the EULA. I am familiar with those records. The records of logins by Clare, Mase and Mullican in Max's records indicate the following:

   a. Beginning on August 12, 2020 and continuing through November 13, 2021, Clare logged in and agreed to the Haptic EULA at least 124 times.

   b. Beginning on August 10, 2020 and continuing through November 16, 2021, Mase logged in and agreed to the Haptic EULA at least 317 times.

   c. Mullican logged in and agreed to the Haptic EULA at least two times, once on October 8, 2020 and again on July 22, 2021.

21. As CTO of TEG, Mullican had access to install the Haptic Federal "Lab License" on his personal servers. Mullican was given a copy of this Haptic Federal "Lab License" to test and evaluate on his personal servers. As with the Haptic software accessible online, the version of the Haptic software that Mullican received contained the Haptic EULA. In order to install the software, the user must agree that they read and accepted the EULA by checking a box that states "[X] I accept the terms in the License Agreement." Otherwise, the software will not install. A

screenshot is shown below:



22. Section 9.4.2 of the Haptic EULA that Clare, Mase and Mullican all accepted requires the user to agree to a number of terms including the following:

> "Any action at law or in equity arising under this EULA shall be finally adjudicated or determined in any court or courts of the state of **Indiana**, or of the United States of America, in Hamilton County, Indiana and the parties hereto hereby submit generally and unconditionally to the personal and exclusive jurisdiction and venue of these courts in respect to any such matter and consent to service of process by any means authorized by Indiana law."

23. In December 2021, Max changed the name of the Haptic software from Haptic to Alleo. Beginning in December of 2021, users needed to accept the "Alleo End User License Agreement" when logging into the software. Before logging in, users must check a box that states, "[X] I accept the End User License Agreement." The Alleo EULA contains a similar forum and jurisdiction selection clause to the Haptic EULA that reads "Any action or proceeding arising out of or relating to this Agreement shall be brought exclusively in a state or federal court of competent jurisdiction located in Indianapolis, Indiana."

24. Max keeps records of all users who login to Alleo with their user accounts and accept the EULA. I am familiar with those records. The records of logins by Clare, Mase and Mullican in Max's records indicate the following:

5

      a.   Clare accepted and agreed to the Alleo EULA at least 26 times between December 27, 2021, and March 27, 2022.

      b.   Mase accepted and agreed to the Alleo EULA at least 129 times between December 23, 2021, and February 19, 2024.

25.    I have reviewed the complaint in this case. The actions of Mullican, Clare and Mase caused harm to Max Minds in Indiana.

26.    The complaint alleges that after TEG and Max entered into the JVA, Max made the source code for Haptic available to TEG for limited purposes, such as to scan for vulnerabilities and security issues, subject to certain requirements including the requirement for chain of custody documentation.

27.    The meetings with TEG when Clare visited Indiana included discussion of issues including source code access by TEG.

28.    To permit TEG to obtain source code from Max, Max required TEG to sign the Source Code License Agreement ("SCLA").

29.    As a result of TEG's failure to follow chain of custody requirements for source code, Max required TEG to enter into the Certification Agreement ("CA").

30.    The SCLA, the CA, and the EULA are all agreements that protect the source code of Haptic that is the intellectual property of Max and contains Max's copyrights, Max's trade secrets, Max's copyright management information, and is protected against unauthorized use by anti-circumvention measures.

31.    When Mullican, Clare, and Mase engaged in the acts alleged in the complaint they committed infringement and trade secret misappropriation that injured Max in Indiana.

32. For example, on May 16, 2023, during a recorded Microsoft Teams Call, a TEG employee admitted to me that TEG was back-dating computers to circumvent licensing keys to the software and provide extended trials to customers of TEG.

33. I personally oversaw the issuance of license keys to TEG. When Clare or Mase would send a purchase request email, I would respond with the license key(s).

34. Based upon my experience with TEG and my conversation with the TEG employee, I believe that Mullican, Clare, and Mase authorized the back-dating to circumvent licensing keys to the software in order to provide extended trials to TEG customers and to provide additional unauthorized paid licenses and upgrades to their customers. This conduct is still ongoing.

35. Providing unauthorized access and extended trials to TEG customers without paying Max and in violation of the EULA for the software injured Max in Indiana. This conduct is still ongoing.

36. Defendants Mullican, Clare, and Mase authorized or directed employees of TEG to modify the Haptic Federal software source code and distribute that modified software to customers of TEG. These actions caused harm to Max Minds in Indiana. This conduct is still ongoing.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.
Executed on July 26, 2024.

*Brent*
BRANDON FISCHER