**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

MAX MINDS, LLC,             )
                                  )
          *Plaintiff,*       )
                                  )
        v.                   )  Case No.: 1:24-cv-00779-JPH-MG
                                  )
TRIANGLE EXPERIENCE GROUP, INC., *et al,*   )
                                  )
         *Defendants.*     )
                                  )

**DEFENDANT TRIANGLE EXPERIENCE GROUP, INC.'S REPLY BRIEF**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF**
**MAX MINDS, LLC'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY**

Marc T. Quigley, Atty. No. 21054-53
**KRIEG DeVAULT LLP**
12800 North Meridian Street, Suite 300
Carmel, Indiana 46032
Tel: (317) 566-1110
Fax: (317) 636-1507
mquigley@kdlegal.com


Alexandra Wilson Pantos, Atty. No. 37003-49
**KRIEG DeVAULT LLP**
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
Tel: (317) 636-4341
Fax: (317) 636-1507
awilson@kdlegal.com

Richard D. Kelley, *admitted pro hac vice*
Raighne C. Delaney, *admitted pro hac vice*
Stephen D. Caruso, *admitted pro hac vice*
Samuel J. Banks, *admitted pro hac vice*
**BEAN, KINNEY & KORMAN, PC**
2311 Wilson Boulevard, Suite 500
Arlington, VA 22201
Tel: (703) 525-4000
Fax: (703) 525-2207
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com
sbanks@beankinney.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

   I.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) .................... 1

      A.   Max Fails to State a Claim for Misappropriation of Trade Secrets ............................ 1

      B.   Max's Copyright Claims Should be Dismissed Because They Sound in Contract, Not Copyright ................................................................................................................. 3

      C.   Without a Plausible Claim of Copyright Infringement, Max Cannot Allege Plausible Claims under the DMCA .............................................................................................. 7

      D.   Max's Lanham Act Claim is Barred as a Matter of Law ............................................. 8

      E.   The John Doe Defendants Are Improper and Should be Dismissed .......................... 10

  II.   ANY REMAINING CLAIMS SHOULD BE STAYED UNDER RULE 13(a) AND PURSUANT TO THE COURT'S INHERENT POWER ............................................... 12

CONCLUSION .................................................................................................................... 14

## TABLE OF AUTHORITIES

Cases

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ................... 5, 6

*Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110 (2d Cir. 2010) ................................ 10, 11, 12

*Barron v. Ford Motor Co.*, 965 F.2d 195 (7th Cir. 1992) ................................................ 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .............................................. 2, 7

*Best Distrib. Co. v. Seyfert Foods*, 714 N.E.2d 1196 (Ind. Ct. App. 1999) ................................... 6

*Billman v. Indiana Dep't of Corrections*, 56 F.3d 785 (7th Cir. 1995) ........................................ 11

*Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876 (N.D. Ill. 2004 ................... 10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ........................... 8, 9, 10

*Diamond Sawblades Mfrs. Coal. v. Diamond Tools Tech.*,
    504 F. Supp. 3d 927 (S.D. Ind. 2020) ........................................................................ 9

*Eclipse Gaming Sys., LLC v. Antonucci*,
    No. 17 C 196, 2019 U.S. Dist. LEXIS 15078 (N.D. Ill. Jan. 31, 2019) .................................... 5

*Edgenet, Inc. v. Home Depot U.S.A., Inc.*,
    No. 09-CV-747, 2010 U.S. Dist. LEXIS 2276 (E.D. Wis. Jan. 12, 2010) ................................ 5

*Fisher v. Shellpoint Mortg. Servicing, LLC*,
    No. 4:23-cv-00044, 2023 U.S. Dist. LEXIS 97044 (S.D. Ind. Jun. 5, 2023) ......................... 10

*Flowers v. Bell*,
    No. 1:21-cv-01812, 2022 U.S. Dist. LEXIS 174652 (S.D. Ind. Sept. 27, 2022) ..................... 10

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) ................................................................ 6

*Hostway Corp. v. JPMorgan Chase Bank, N.A.*,
    No. 09-cv-151, 2009 U.S. Dist. LEXIS 75049 (N.D. Ill. Aug. 24, 2009) ............................. 13

*Hullinger v. Forgey*,
    No. 2:20-CV-417, 2021 U.S. Dist. LEXIS 66103 (N.D. Ind. Apr. 5, 2021) ........................... 10

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) ................................................... 4

*In re Price*, 42 F.3d 1068 (7th Cir. 1994) .......................................................... 13

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012) ............................... 4

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749 (11th Cir. 1997) ................................................ 4

*Johnston v. William E. Wood & Assocs.*, 292 Va. 222 (2016) ............................................... 6

*Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531 (7th Cir. 2021) ...................................... 3

*Ligtel Commc'ns, Inc. v. Baicells Techs., Inc.*, 455 F. Supp. 3d 792 (N.D. Ind. 2020) ................. 3

*M. Arthur Gensler Jr. & Assocs. v. Strabala*, 764 F.3d 735 (7th Cir. 2014) ............................ 8

*Naderi v. ResMed Inc.*,
    No. 1:22cv459, 2023 U.S. Dist. LEXIS 146126 (N.D. Ind. Aug. 21, 2023) .......................... 10

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293 (7th Cir. 2018) ................................. 4

*Old Utica Sch. Pres., Inc. v. Utica Twp.*, 46 N.E.3d 1252 (Ind. App. 2015) ................................ 5

*Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059 (N.D. Ill. 2020) ........................... 3

*Phoenix Entm't, LLC v. Rumsey*, 829 F.3d 817 (7th Cir. 2016) ................................................ 8, 9

*Prominence Advisors, Inc. v. Dalton*,
    No. 17-CV-04369, 2017 U.S. Dist. LEXIS 207617 (N.D. Ill. Dec. 18, 2017) ......................... 3

iii

*Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816 (7th Cir. 2009) ............................ 10, 11

*RT Computer Graphics, Inc. v. United States*, 44 Fed. Cl. 747 (1999) .......................................... 6

*Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship*,
    380 F.3d 126 (2d Cir. 2004)................................................................................................... 9

*Burlington N. R. Co. v. Strong*, 907 F.2d 707 (7th Cir. 1990).................................................. 12-13

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013)..................................................................... 4

<u>Statutes</u>

17 U.S.C. § 106........................................................................................................... 6, 7, 8, 9

18 U.S.C. § 1839(5)(B)................................................................................................................ 2

Ind. Code Ann. § 26-1-2-309 (Lexis 2024) ............................................................................... 6

Lanham Act........................................................................................................................ 8, 9, 10

<u>Rules</u>

Fed. R. Civ. P. 12(b)(6)........................................................................... 1, 2, 4, 8, 10, 11, 12, 14

Fed. R. Civ. P. 13(a) ............................................................................................... 1, 12, 13, 14

## INTRODUCTION

Max's response brief paints an incomplete picture of the facts and circumstances surrounding Max's and TEG's dispute. Throughout its response, Max claims this is not a contract dispute and that Max is not alleging breach of contract. But Max cannot ignore the claims it has pleaded in the First Filed Action or its affirmation of the Joint Venture Agreement as a "valid and enforceable contract."[1] With this Second Filed Action, Max recasts the identical facts it already alleged in the First Filed Action as intellectual property claims, which cannot withstand scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure and serve no purpose other than to distract from the parties' core contractual dispute, increase litigation costs, and waste judicial resources.

## ARGUMENT

Max's response brief fails to refute TEG's motion to dismiss or, in the alternative, to stay. Each of the six claims raised in this Second Filed Action, including the alleged claims against unknown "John Doe" defendants, should be dismissed for failure to state a claim under Rule 12(b)(6). Should any claims survive, however, those claims should be stayed under Rule 13(a) in the interests of judicial economy.

### I.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6)

#### A.   Max Fails to State a Claim for Misappropriation of Trade Secrets

Max's Complaint does not allege—and cannot allege—that TEG acquired Max's alleged trade secrets—the source code—by improper means because TEG obtained access to the source code directly from Max. (*See* TEG Br. 7-8, Dkt. 52.) Max concedes as much in its opposition brief. (Resp. Br. 13, Dkt. 57) ("TEG's failure to limit the use or disclosure of MAX's trade secrets is the

---

[1] *See* TEG Br. 3 and n.3, Dkt. 52.

focus of MAX's claims.").[2] Thus, Max's trade secret claims hinge on whether Max has plausibly alleged TEG's disclosure or use of the source code without Max's express or implied consent. 18 U.S.C. § 1839(5)(B). (TEG Br. 8-9, Dkt. 52.)

Max has failed to make such a plausible claim, however, relying on merely conclusory statements that TEG exposed trade secret source code on certain internet facing servers, (Compl. ¶¶ 103, 105, Dkt. 1), and unsupported, boilerplate recitations. (Compl. ¶¶ 149, 158, Dkt. 1) ("Defendants disclosed MAX's trade secret Haptic Federal Source Code."). Such bare allegations do not meet Max's obligation to provide enough facts supporting its entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (stating that although the Rule 12(b)(6) standard does not require heightened fact pleading, it does require the complaint to contain enough facts to state a claim for relief that is plausible rather than merely speculative).

Indeed, Max's Complaint demonstrates that TEG posted the material on the alleged uniform resource locators ("URLs") because the JVA required TEG to "maintain a web presence for marketing material of the Haptic Federal product." (Compl. Ex. 9 at 1 ¶ 1, Dkt. 1-9.) As such, Max gave its implied consent to the disclosure. And Max makes no showing whatsoever that any "source code" allegedly disclosed to the public through these URLs revealed any "concrete

---

[2] Max vaguely suggests that Max's numerous transfers of the source code to TEG over the years somehow were not "consensual" on the part of Max. (Resp. Br. 14, Dkt. 57.) Such a suggestion is belied by the express factual allegations of the Complaint and Max's own statements in the opposition brief. *See* Compl. ¶ 96, Dkt. 1 ("Beginning in June 2020, MAX made the source code securely availably [sic] to TEG over a dozen times to allow their government customer(s) to scan for vulnerabilities and security issues."); Resp. Br. 7, Dkt. 57 ("Pursuant to the JVA, beginning in June 2020 MAX made the source code securely available to TEG . . . .); Compl. ¶ 111, Dkt. 1; Resp. Br. 8, Dkt. 57) (noting that Max further engaged in source code transfers to TEG in September 2023).

secrets." *See Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540-41 (7th Cir. 2021) (trade secret law focuses on concrete secrets rather than broad areas of technology).[3]

Moreover, the "plausible allegations" Max recites in its response brief do not demonstrate the disclosure of trade secrets, only that TEG allegedly breached the SCLA or the Certification Agreement. (Resp. Br. 8, 13, Dkt. 57; Compl. ¶ 112, Dkt. 1.) *See Ligtel Commc'ns, Inc. v. Baicells Techs., Inc.*, 455 F. Supp. 3d 792, 808 (N.D. Ind. 2020) ("[H]aving had access to trade secrets and misappropriating trade secrets are two entirely different allegations."); *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020) (failure to return lawfully acquired information does not constitute "misappropriation" of that information) (citing *Prominence Advisors, Inc. v. Dalton*, No. 17-CV-04369, 2017 U.S. Dist. LEXIS 207617, 2017 WL 6988661, at *4 (N.D. Ill. Dec. 18, 2017)).

Max has not alleged facts sufficient to draw a reasonable inference that TEG disclosed a trade secret without Max's express or implied consent. Counts I and II of the Complaint should be dismissed.

### B.  Max's Copyright Claims Should be Dismissed Because They Sound in Contract, Not Copyright

Max's Complaint fails to state a claim for copyright infringement because it alleges breaches of contractual covenants, not conditions precedent to Max's duty to grant TEG access to sell the software. As such, Max is limited to its breach of contract claims already alleged in the First Filed Action and Count III of this Complaint should be dismissed. (*See* TEG Br. 9-13, Dkt. 52.)

---

[3] These same URLs, moreover, have been disabled since June 4, 2004 and will remain disabled during the pendency of this lawsuit or until further order of the Court pursuant to a "so ordered" Stipulation. (Second Filed Action Stip., Dkt. 44.) *See* TEG Br. 23, 25, Dkt. 52.

In response, Max makes much of TEG's reference to itself as the "joint owner of the Software" and to the "Intellectual Property" paragraph in the JVA (Response Br. 15-16, Dkt. 57.) To be sure, TEG alleges that the contractual relationship between the parties established joint ownership of the software, as it alleged in detail in the First Filed Action. But TEG does not rely on joint ownership in moving to dismiss Max's claims in this case. As it must under Federal Rule of Civil Procedure 12(b)(6), TEG's motion accepts the factual allegations of Max's Complaint as true. Max chose to plead extensive factual allegations concerning the JVA, as well as the ancillary EULA, SCLA, and Certification Agreement, and to attach them to its Complaint. (Compl. Exs. 5, 6, 9, and 10. Dkt. Nos. 1-5, 1-6, 1-9, 1-10.) Evaluation of these contracts to determine the plausibility of Max's Complaint is therefore appropriate. *Williamson v. Curran*, 714 F.3d 432, 436-37 (7th Cir. 2013) (in evaluating whether a claim is sufficient to survive a motion to dismiss, a court limits its consideration to the allegations set forth in the complaint, documents central to the complaint and referred to in it, and documents that are attached to the complaint).[4]

The plain, unambiguous terms of the JVA and the other agreements demonstrate—regardless of the label—that TEG was authorized to distribute and sell the software (and gain access to the source code in the process) under the joint venture contractual relationship with Max.[5] Where there is a contractual relationship governing a copyrighted work, whether a defendant's alleged conduct constitutes grounds for a copyright infringement claim, rather than a breach of

---

[4] Moreover, though a plaintiff has no duty to plead facts negating an affirmative defense, "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299-300 (7th Cir. 2018) (citing *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)).

[5] The label applied to the authorization granted TEG under the joint venture relationship is of no matter. "Consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996); *see Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997) (copyright owner's "giving permission" and "failing to object" created a nonexclusive license).

contract claim, "hinges on the distinction in contract law between a condition and a covenant." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, No. 09-CV-747, 2010 U.S. Dist. LEXIS 2276, at *23-24, *27-30 (E.D. Wis. Jan. 12, 2010) (discussing rule and granting motion to dismiss copyright infringement claim because plaintiff's complaints regarding failure to pay fees was "a contractual dispute, not a copyright dispute").

In response, Max points only to vague and inconsistent allegations of software licenses exceeded by TEG. (Resp. Br. 15, 17, Dkt. 57). Such bare legal conclusions are insufficient to allege a breach of a *condition precedent* rather than a covenant. (TEG Br. 11-12, Dkt. 52.) There is a well-settled presumption in contract law that agreement terms should be construed as covenants, not conditions, unless it is *clear* that a condition precedent was intended. *See, e.g.*, *Eclipse Gaming Sys., LLC v. Antonucci*, No. 17 C 196, 2019 U.S. Dist. LEXIS 15078, at *5 (N.D. Ill. Jan. 31, 2019) ("Courts usually disfavor conditions and thus interpret any ambiguous provisions as covenants."); *Old Utica Sch. Pres., Inc. v. Utica Twp.*, 46 N.E.3d 1252, 1259 (Ind. App. 2015) ("Covenants are favored by the law, and a court will construe a recital as a covenant, rather than a condition, whenever such a construction is possible.").

Max cites *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) to support its argument but that case sheds no light on what constitutes copyright infringement when the parties are in a contractual relationship. The owner of the work at issue in that case, photographer Lynn Goldsmith, had no contract with the Andy Warhol Foundation. *Id.* at 514-20. And the Foundation did not challenge the Court of Appeals' holding that Goldsmith's photograph and Warhol's "Prince Series" works were substantially similar. *Id.* at 525. The only issue before the Court was the application of the fair use defense under Section 107 of the

Copyright Act. *Andy Warhol Found.*, 598 U.S. at 525-26, 534. It has no relevance to this motion to dismiss.

Finally, Max suggests in its response brief that "[a]ll those licenses were terminated." (Resp. Br. 17, Dkt 57.) Yet the Complaint contains no allegations that any of the agreements referenced in and attached to Max's Complaint were terminated. Similarly, there are no allegations in Max's counterclaims to the First Filed Action that any of the agreements referenced in and attached to Max's counterclaims were terminated. Max does not allege in either this or the First Filed Action that it ever provided the reasonable notice to TEG necessary to terminate a contract under either Indiana or Virginia state contract law.[6] Where, as here, a contract lacks a specific termination provision, both Indiana and Virginia contract law require a party to provide the other party with reasonable notice of its desire to terminate that contract. *See* Ind. Code Ann. § 26-1-2-309 (Lexis 2024); *Best Distrib. Co. v. Seyfert Foods*, 714 N.E.2d 1196, 1206-07 (Ind. Ct. App. 1999); *Johnston v. William E. Wood & Assocs.*, 292 Va. 222, 225 (2016).

Any belated attempt to disavow the JVA after these litigations commenced is inappropriate and ineffective as a matter of law. *See RT Comput. Graphics, Inc. v. United States*, 44 Fed. Cl. 747, 759-60 (1999) (discussing and agreeing with other courts that a copyright holder must take affirmative steps to rescind or terminate an agreement authorizing use of the work prior to the filing of an infringement suit); *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) (noting that "the district court could not have found that Graham infringed James's copyright unless the licensing agreement already had been rescinded").

---

[6] A choice-of-law analysis is unnecessary because the laws of Indiana and Virginia—the only two potential state-law candidates in this matter—are the same in this regard. *Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992) ("before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states").

At best, Max's Complaint pleads facts that are "merely consistent with [TEG's] liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. Count III of the Complaint should be dismissed.

### C. Without a Plausible Claim of Copyright Infringement, Max Cannot Allege Plausible Claims under the DMCA

Counts IV and V of the Complaint should be dismissed because Max cannot state a plausible claim for the infringement nexus required by Section 1201 of the DMCA (Count IV) or the similar scienter requirement—the intent to infringe or facilitate infringement—required by Section 1202 (Count V). (*See* TEG Br. 14-17, Dkt. 52.)

As detailed in TEG's opening brief, Section 1201 requires Max to allege facts sufficient to draw a reasonable inference that the access resulting from TEG's alleged circumvention either infringes or facilitates infringement of a right protected by copyright. The mere violation of Max's contractual rights is insufficient. (TEG Br. 14-16, Dkt. 52.) But Max's response brief makes clear that contractual violations of the JVA are its main concern, asserting that TEG's alleged circumvention was "in order to make millions of dollars of undisclosed software sales of the Haptic software, sales of service for the Haptic software, or trials of the Haptic software." (Resp. Br. 18, Dkt. 57.) All these alleged software sales were made pursuant to the JVA and both Max and TEG have sufficiently pleaded those claims for contractual sales revenue shares owed or not owed in the First Filed Action. Count IV should be dismissed.

Section 1202 similarly requires Max to allege facts sufficient to draw a reasonable inference that TEG's conduct in replacing the Haptic name with "C4MAP" or "VJOC" was committed with knowledge that CMI was being removed or altered, as well as with the intent to engage in copyright infringement or to facilitate copyright infringement. (TEG Br. 16-17, Dkt. 52.) Max has no support for this dual intent other than bare legal conclusions and recitation of the

7

elements of the claim. For the same reason that Max cannot state a plausible claim for the necessary infringement nexus for Section 1201 of the DMCA and cannot state a plausible claim for copyright infringement (rather than breach of contract), Count V should be dismissed.

### D. Max's Lanham Act Claim is Barred as a Matter of Law

Max's Lanham Act claim must be dismissed with prejudice because it is barred as a matter of law by the Supreme Court's *Dastar* decision and its progeny. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 (2003). (*See* TEG Br. 17-19, Dkt. 52.) Max's arguments to the contrary fail as a matter of law.

The decision in *M. Arthur Gensler Jr. & Associates v. Strabala*, 764 F.3d 735 (7th Cir. 2014), is inapplicable to the facts of this case. Unlike the factual allegations in *Dastar* or here, the facts alleged in *Gensler* did not include any claim that defendant made or sold "copies of any plans or drawings in which [plaintiff] Gensler claims a copyright." *Id.* at 737. Thus, the court concluded, "[a] false claim of authorship, without the making of copies (or some other act covered by 17 U.S.C. § 106), is outside the scope of copyright law." *Id.* And, therefore, "[plaintiff's] only plausible federal claim rests on § 43(a)." *Id.*[7] That is not the case here because Max's Complaint alleges violations of Section 106 of the Copyright Act.

Another case cited by Max in its response brief, *Phoenix Entertainment, LLC v. Rumsey*, 829 F.3d 817 (7th Cir. 2016), supports TEG's position, not Max's. In *Phoenix Entertainment*, the Seventh Circuit applied the *Dastar* rule to affirm the district court's Rule 12(b)(6) dismissal of

---

[7] The *Gensler* court's side observation that Twentieth Century Fox, the plaintiff in *Dastar*, "did not contend that [defendant] Dastar had falsely identified itself as the videos' creator, wrongly imputed the newly made copies to Twentieth Century Fox, or made any other false claim" is a red herring. 764 F.3d at 737. Twentieth Century Fox did allege that Dastar's sale of its videos "without proper credit" constituted "reverse passing off" in violation of § 43(a) of the Lanham Act," which the Court explained is a type of misrepresentation. *Dastar*, 539 U.S. at 27 and n.1. Whether the alleged misrepresentation is in the form of an affirmative statement or an omission is a distinction without a difference and does not refute the application of the *Dastar* principles to this case.

plaintiff Slep-Tone's Lanham Act claims. 829 F.3d at 819, 821. In that case, plaintiff Slep-Tone alleged that defendant's unauthorized copies of Slep-Tone's commercial karaoke files constituted "passing off" of the unauthorized copies as genuine Slep-Tone tracks. Discussing *Dastar* at length, *id.* at 826-31, the Seventh Circuit affirmed the dismissal of plaintiff's Lanham Act claims because "what lies at the heart of the defendants' alleged wrongdoing is the unauthorized copying of Slep-Tone's karaoke tracks" which were "derivative works that enjoy protection under the Copyright Act." *Id.* at 824. Thus, the Seventh Circuit concluded, the Supreme Court's decision in *Dastar* "makes clear that the law of trademark cannot be invoked to assert what in fact is really a claim of copyright infringement." *Id.* at 826.[8]

Similarly, here, the heart of the wrongdoing alleged in Max's Complaint is TEG's alleged unauthorized sales of a software product derived from Max's copyrighted software, without giving appropriate credit to Max as the alleged author of the source code embodied in the product. (*See* TEG Br. 18-19, Dkt. 52.) Max squarely alleges that TEG misrepresented not the origin of its software product (for surely TEG is the origin of the allegedly unauthorized derivative software), but rather, the author of the copyrighted expression embodied in the software. For example, TEG misrepresented the software "as TEG's own creation," (Compl. ¶ 134, Dkt. 1), TEG promoted the software "without mentioning Haptic Federal or MAX," (*id.* ¶ 138), and "TEG marketed MAX's

---

[8] The other cases cited by Max are similarly unavailing. The plaintiff in *Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship*, 380 F.3d 126 (2d Cir. 2004), alleged only that defendant's hotel directories falsely designated defendant as the origin of the services provided at certain hotel properties because those services were provided by plaintiff. *Id.* at 130-32. Plaintiff made no allegations of "false designation" or "reverse passing off" concerning the authorship or creation of any idea, concept, or communication embodied in those services. *See Dastar*, 539 U.S. at 37 (concluding that the Lanham Act's phrase "origin of goods" "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."). *Diamond Sawblades Mfrs. Coal. v. Diamond Tools Tech.*, 504 F. Supp. 3d 927, 942 (S.D. Ind. 2020) merely states and applies the rule of Lanham Act § 43(a).. The decision mentions *Dastar* only because plaintiff cited it for the proposition that geographic location is included within the meaning of the term "origin." *Id.* at 941.

intellectual property as its own in various bid proposals." (Compl. ¶ 139, Dkt. 1.) Such claims are solely the province of the copyright laws under *Dastar*. 539 U.S. at 32-37. *See Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 878-80 (N.D. Ill. 2004) (granting motion to dismiss Lanham Act claim under *Dastar* where plaintiff alleged defendant was selling software directly derived from plaintiff's software, giving the false impression to customers that the unauthorized derivative software was defendant's own creation).

Max's Lanham Act claim fails as a matter of law and Count VI should be dismissed with prejudice.

### E. The John Doe Defendants Are Improper and Should be Dismissed

Max's response brief fails to address Seventh Circuit precedent dictating that "John Doe" defendants are improper, particularly when, as here, there are no facts pled that allege who the anonymous individuals are or what exactly they allegedly did wrong. *See, e.g., Naderi v. ResMed Inc.*, No. 1:22cv459, 2023 U.S. Dist. LEXIS 146126, at *8 (N.D. Ind. Aug. 21, 2023); *Flowers v. Bell*, No. 1:21-cv-01812, 2022 U.S. Dist. LEXIS 174652, at *15 (S.D. Ind. Sept. 27, 2022); *Fisher v. Shellpoint Mortg. Servicing, LLC*, No. 4:23-cv-00044, 2023 U.S. Dist. LEXIS 97044, at *8 (S.D. Ind. Jun. 5, 2023); *Hullinger v. Forgey*, No. 2:20-CV-417, 2021 U.S. Dist. LEXIS 66103, at *21 (N.D. Ind. Apr. 5, 2021). Max's repeated, conclusory, and unsupported allegation that TEG "caused, directed and authorized" its employees (the supposed John Doe defendants) to copy or distribute Max's source code is insufficient to withstand the plausibility standard of Rule 12(b)(6) and should not be accepted by this Court to permit the John Doe defendants.

The two cases cited by Max to support its pleading of anonymous defendants warrant a brief discussion. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816 (7th Cir. 2009); *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110 (2d Cir. 2010). In *Rodriguez*, an inmate brought a

10

claim against various, unnamed health care providers alleging that, while acting under the color of state law, they violated the Eighth Amendment's prohibition against cruel and unusual punishment by exhibiting deliberate indifference to his medical needs. 577 F.3d at 819. Because the inmate brought his lawsuit pro se, the court "construe[d] liberally the factual allegations" in his complaint. *Id.* at 821. The court concluded that the inmate should be entitled to limited discovery to ascertain the identities of the individuals "whose conduct he has explicitly described." *Id.* at 832.

In contrast to the pro se inmate in *Rodriguez*, Max has not "explicitly described" the alleged misconduct of the John Doe defendants. Rather, Max alleges a single unsupported, yet repeated, allegation that "employees" were "directed and authorized" to engage in bad acts. (Compl. ¶¶ 18, 151, 161, Dkt. 1.) Moreover, as opposed to the pro se, incarcerated inmate in *Rodriguez*, Max is a sophisticated software company represented by counsel. To the extent the constitutional tort case of *Rodriguez* is even analogous, Max is not entitled to the same pleading leniency as an incarcerated individual. 577 F.3d at 832 ("Our point is that because [plaintiff] is a prisoner he may not be in a position to identify the proper defendants, or all of them, in his complaint") (citing *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785 (7th Cir. 1995))).

In *Arista*, the Second Circuit reviewed a lower court's decision to deny a motion to quash a subpoena issued to a third-party internet service provider. 604 F.3d at 112. In deciding whether to quash the subpoena, the court analyzed the balance between the First Amendment right to remain anonymous with a copyright owner's right to disclosure of the identity of a potential infringer. *Id.* at 114. The *Arista* decision is not apt.

First, the *Arista* decision did not concern a motion to dismiss or the sufficiency of a complaint to state a claim. In fact, the district court had "rejected the proposition that the motion to quash was in essence a motion to dismiss under Rule 12(b)(6) and hence was a dispositive

motion." *Id.* at 115. Instead, the court analyzed the motion under the *Sony* factors which "dealt with the tension between First Amendment rights and copyright rights." *Id.* at 119. In the present case, TEG challenges Max's failure to state a claim against the John Doe defendants due to insufficient facts, which requires an entirely different analysis and legal framework.

Second, the allegations against the anonymous defendants in *Arista* were far more specific than Max's sole conclusory statement. For each of the anonymous defendants in *Arista*, the plaintiff alleged their IP address, the name of the file sharing network they used, and the titles of 6-10 songs they allegedly illegally downloaded. *Id.* at 113. These specific allegations are in stark contrast to Max's bare allegation that the John Doe defendants "are employees of TEG" who were "directed and authorized" to disclose Max's trade secrets. (Compl. ¶¶ 18, 151, Dkt. 1.)

In sum, Max's allegation(s) against the John Doe defendants is insufficient to state a claim as a matter of law, and the John Doe defendants are properly dismissed.

## II.   ANY REMAINING CLAIMS SHOULD BE STAYED UNDER RULE 13(a) AND PURSUANT TO THE COURT'S INHERENT POWER

Should any of the Second Filed Action's claims survive Rule 12(b)(6) scrutiny, those claims should be stayed because they are compulsory counterclaims that should have been asserted in the First Filed Action. (*See* TEG Br. 20-26, Dkt. 52.)

Rule 13(a) of the Federal Rules of Civil Procedure provides that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). In the Seventh Circuit, the standard for determining whether two claims arise out of the same transaction or occurrence under Fed. R. Civ. P. 13(a) is whether the claims are "logically related." *Burlington N. R. Co. v. Strong* , 907 F.2d 707, 711 (7th

Cir. 1990); *Hostway Corp. v. JPMorgan Chase Bank, N.A.,* No. 09-cv-151, 2009 U.S. Dist. LEXIS 75049, at *7 (N.D. Ill. Aug. 24, 2009) (citing *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994)).

Here, there is a "logical relationship" between the claims (and counterclaims) in the First Filed Action and this lawsuit. The factual foundation of Max's Counterclaims in the First Filed Action and its Complaint in this Second Filed Action are essentially identical and appear to have been "cut and pasted" from the same source, as shown in the attached demonstrative chart comparing Max's factual allegations in the First and Second Filed Actions. (See attached Ex. 1.)

Max has no response in opposition other than to proclaim, "the two cases are different" merely because the two actions raise different legal theories and were brought in the same district court. (Resp. Br. 25, Dkt. 57.) Max's "different legal theories" argument is unavailing. The judicial economy objectives of Rule 13(a) focus on the logical relationship of the factual allegations—the transaction or occurrence—underlying the competing actions. To find two actions "different" simply because they bring different legal theories would swallow the rule of Rule 13(a) and defeat its judicial economy goals. And the fact that both actions were filed in this Court does not require the Court to consolidate the First and Second Filed Actions. To be sure, consolidation would have the benefit of a single case management and discovery plan, for example. But a stay is more appropriate here. The Court need not expend its judicial resources on a vastly more complex lawsuit litigating the contractual claims of the First Filed Action at the same time as the intellectual property claims of the Second Filed Action.

Under Rule 13(a) and the Court's inherent power to control its docket and promote judicial economy, the Court can and should stay the complex intellectual property counts of the Second Filed Action until after the First Filed Action's contractual claims are resolved. Such a stay will promote judicial economy and sound judicial administration because resolution of the contractual

claims at the heart of the parties' dispute in the First Filed Action are likely to resolve any possible remaining claims in this Second Filed Action. A joint owner cannot infringe its own intellectual property and cannot misappropriate its own trade secrets. On the other hand, should Max prevail on its contractual claims in the First Filed Action, it will have the opportunity to be made whole with injunctive and monetary relief in that action. In all events, the likelihood that either party will have any need to proceed with the Second Filed Action is remote.

The Court, therefore, should exercise its discretion pursuant to Rule 13(a) and the Court's inherent power to stay any claims that may survive this motion to dismiss (together with Max's stale preliminary injunction request). Max raises no opposition to TEG's assertion that Max's preliminary injunction request is effectively moot. (*See* TEG Br. 22-26, Dkt. 52.) Having conceded that, Max cannot use its claims of "seizure" and irreparable harm to oppose a stay that will conserve judicial and litigant resources.

## CONCLUSION

For the foregoing reasons, TEG respectfully requests that the Court grant TEG's motion to dismiss all Counts of this Second Filed Action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Should any of Max's claims survive dismissal, TEG requests that the Court stay those causes of action, as well as Max's preliminary injunction request, pending resolution of the First Filed Action.

Dated: August 9, 2024                                      Respectfully submitted,


Marc T. Quigley, Atty. No. 21054-53                 */s/ Richard D. Kelley*
**KRIEG DeVAULT LLP**                               _____
12800 North Meridian Street                         Richard D. Kelley, *admitted pro hac vice*
Suite 300                                           Raighne C. Delaney, *admitted pro hac vice*
Carmel, Indiana 46032                               Stephen D. Caruso, *admitted pro hac vice*
Tel: (317) 566-1110                                 Samuel J. Banks, *admitted pro hac vice*
Fax: (317) 636-1507                                 **BEAN, KINNEY & KORMAN, PC**
mquigley@kdlegal.com                                2311 Wilson Boulevard, Suite 500
                                                    Arlington, VA 22201
Alexandra Wilson Pantos, Atty. No.                  Tel: (703) 525-4000
37003-49                                            Fax: (703) 525-2207
**KRIEG DeVAULT LLP**                               rkelley@beankinney.com
One Indiana Square, Suite 2800                      rdelaney@beankinney.com
Indianapolis, Indiana 46204                         scaruso@beankinney.com
Tel: (317) 636-4341                                 sbanks@beankinney.com
Fax: (317) 636-1507
awilson@kdlegal.com

                                                    ***Attorneys for Triangle Experience Group, Inc.***