UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAX MINDS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-00779-JPH-MG |
| | ) |
| TRIANGLE EXPERIENCE GROUP, INC., | ) |
| ROBERT CLARE, | ) |
| JEFFREY MASE, | ) |
| KEVIN MULLICAN, | ) |
| JOHN DOES 1-10, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Max Minds, LLC (Max) has filed a motion for preliminary injunction. [Filing No. 12.] As ordered by the Court, the parties have engaged in targeted discovery related only to the issues in and arising from the preliminary injunction. [*See* Filing No. 47.] The parties came before me for an in-person discovery hearing on August 8, 2024, to give argument on twelve disputed discovery requests. After taking the matter under advisement, the Court decides as follows.

## I.
### DISPUTED REQUESTS

**1. Max's RFP No. 2 (Revised Version Offered by Plaintiff)**

*Documents and ESI sufficient to show all copies of the Software you distributed to, licensed, or gave to third parties.*

This request is relevant to show whether Triangle Experience Group, Inc. (TEG) distributed or otherwise sold or licensed the Software to be used by third parties, other than those parties which Max authorized. The Court disagrees that it is relevant to the issue of damages only.

1

TEG's *Tuohy* objection does not bar this Court from granting the request. RFP No. 2 is **GRANTED** and TEG must respond.

### 2. Max's RFP No. 7 (Revised Version Offered by Plaintiff)

*Documents and ESI sufficient to show all communications among developers of Derivative Works of the Source Code that have occurred since this case was filed.*

Max's RFP No. 7 is relevant to show ongoing harm, an element of a preliminary injunction request that Max bears the burden to demonstrate. TEG's objection regarding overbreadth is overruled. As always, protected communications will not be produced and will instead be documented on a privilege log. However, the Court agrees "developers," currently undefined, is too vague. Max is ordered to adopt TEG's definition of "Developers." The Court discussed this definition at the hearing and Max agreed TEG's definition of "Developers" was appropriate. RFP No. 7 is **GRANTED** (with TEG's "Developers" definition) and TEG must respond.

### 3. Max's RFP No. 10

*Documents and ESI sufficient to show your agreements with third parties authorizing those third parties to distribute and sell licenses for the Software.*

This request is relevant to show whether—and under what terms—TEG contracted third parties to distribute or otherwise sell or license the Software. The Court disagrees that it is relevant to the issue of damages only. Defendant's *Tuohy* objection does not bar this Court from granting the request. RFP No. 10 is **GRANTED** and TEG must respond.

### 4. Max's RFP No. 11

*Documents and ESI sufficient to identify each third-party you have authorized to distribute and sell licenses for the Software.*

RFP No. 11 is redundant. Max will capture this information through RFP Nos. 2 and 10. This request is **DENIED**.

5. **TEG's RFP No. 14[1]**

> *All confidentiality agreements and/or non-disclosure agreements between Max and every customer and/or user and/or organization, other than TEG, to which Max has granted access to the Software.*

Max lodged several formal objections for TEG's RFP Nos. 14-17 but offered instead to produce its standard confidentiality and non-disclosure agreement, along with an attestation that it used the standard agreement(s) with the relevant parties. A formal attestation will not do. TEG is not required to take Max's word that it used a certain agreement as a substitute for the terms of the agreements themselves. But the Court **DENIES** RFP No. 14, finding a third parties' access to the Software (without access to the source code) is not sufficiently targeted to the narrow scope of the discovery allowed at this stage.

6. **TEG's RFP No. 15**

> *All confidentiality agreements and/or non-disclosure agreements between Max and every customer and/or user and/or organization, other than TEG, to which Max has granted access to the Software source code.*

Because access to the Software source code (and related requirements of confidentiality) is relevant to TEG's argument that Max improperly maintained its trade secrets, the Court will **GRANT** RFP. No. 15 over Max's objection. However, before Max is required to answer, TEG must resubmit this request with "access" as a reasonably defined term.

7. **TEG's RFP No. 16**

> *All confidentiality agreements and/or non-disclosure agreements between Max and every customer and/or user and/or organization, other than TEG, to which Max has granted a license to the Software.*

The Court notes the parties' arguments for and against RFP No. 16 are the same as those for and against RFP No. 14, and **DENIES** RFP No. 16, finding information regarding a third

---

[1] The Court will discuss TEG's requests in the same order they were taken up at the hearing.

parties' license to the Software (without access to the source code) is not sufficiently targeted to the narrow scope of the discovery allowed at this stage.

### 8. TEG's RFP No. 17

*All confidentiality agreements and/or non-disclosure agreements between Max and every customer and/or user and/or organization, other than TEG, to which Max has granted a license to the Software source code.*

Because access to the Software source code (and related requirements of confidentiality) is relevant to TEG's argument that Max improperly maintained its trade secrets. The Court **GRANTS** RFP. No. 17 over Max's objection.

### 9. TEG's RFP No. 18

*All documents sufficient to reflect the identify of each and every person, whether internal or external to Max, who authored, edited, revised, developed, coded, contributed to, or otherwise worked on the Software and the Software source code.*

At the hearing, the parties told the undersigned this request was resolved. Should this not be the case, they may contact Judge Garcia's Chambers. As it stands, this request is **DENIED** as moot.

### 10. TEG's Request No. 6

*Native copies of all source code repositories containing source code for the Software, organized from earliest to latest version.*

Max argues that source code for Software that was not the basis for Max's copyright registration, or that predates agreements with TEG, is not relevant to this case. TEG disagrees and says the native versions of the source code should be produced because they are relevant to TEG's claims and defenses: that it jointly developed the source code with Max.

Initially designed under the umbrella of Haptic source code, two products have since branched off: (1) Alleo for commercial users; and (2) Haptic Federal for government users.

TEG's definition of Software is "the software that is the subject of the Complaint, sometimes referred to as 'Alleo,' 'Haptic,' or 'Haptic Federal,' from its original development in or around January 2019 and continuing to the present, including all iterations, derivations, and/or versions. The term 'Software' should be read broadly to encompass not only the specific versions of the software in which Max registered a copyright as specified in the Complaint, but also all derivative works within the meaning of the Copyright Act."

Max argues TEG's Software definition is too broad. Max's definition is: "the 'Haptic Federal On-Premise Version, Expected Release Date: April 6, 2021' referenced in the SCLA including in Exhibit A thereto. Furthermore, the term 'Software' should be read broadly to encompass not only the specific 'Haptic Federal On-Premise Version, Expected Release Date: April 6, 2021,' but also all software in which Max has registered a copyright listed in the table below, as well as all Derivative Works of the Software created by or on behalf of TEG."[2]

TEG argues it is not limited to Max's definition and that its claims and defenses encompass the Alleo software, as this software originates from the Haptic source code. This determination is difficult for the Court to make at this stage, where TEG has yet to formally file its claims and defenses and is instead building them. The Court believes TEG's relevancy argument is credible at this stage and will not limit its definition of Software. TEG's Request No. 6 is **GRANTED**.

---

[2]

| Title of Work | Registration Number | Effective Date | Certificate of Registration |
|---|---|---|---|
| Haptic Version 1.2.21.1 | TXu 2-425-362 | April 19, 2024 | Complaint, Ex. 1 |
| Haptic Version 1.2.125 | TXu 2-421-490 | April 2, 2024 | Complaint, Ex. 2 |
| Haptic Version 3.1.21.4 | TXu 2-419-714 | March 21, 2024 | Complaint, Ex. 3 |
| Haptic Version 3.1.21.8 | TXu 2-419-718 | March 21, 2024 | Complaint, Ex. 4 |

**11. TEG's RFP No. 11**

*Complete copies of the source code for the Software installed in or about November 2019 as alleged in Paragraph 37 of the Complaint.*

The parties lodge largely the same objections for RFP No. 11 as RFP No. 6. The Court will allow this request but limits it only to the Software source code installed <u>in</u> November of 2019. "In or about" is imprecise language and should be limited to the calendar month identified by TEG. TEG's RFP No. 11 is **GRANTED** with this revision.

**12. TEG's RFP No. 12**

*Complete copies of the Software as it existed on or before July 18, 2019.*

The parties lodge largely the same objections for RFP No. 13 as RFP No. 6. The Court will allow this request as relevant to the joint development defense (the time date will allow TEG to compare information about source code changes contained in the repository to the Software as it existed on this date) but only for copies of the Software as it existed <u>on</u> July 18, 2019. "On or before" is imprecise, unhelpful, and overly broad language when otherwise limiting a request to a calendar date. TEG's RFP No. 12 is **GRANTED** with this revision.

## II.
### ADDITIONAL TOPICS

**1. Anticipated Discovery Requests in 1:24-650-JPH-MG**

The parties alerted the undersigned that a discovery dispute in their parallel breach of contract case, 1:24-650-JPH-MG, looms. Court recognizes the scope of discovery is different—and larger—in the parallel case. However, the parties can still use their knowledge from the hearing, their own reached-agreements, and the Court's approach to definitions and reasonable limitations as guidance. They are further instructed to meet and confer as much as possible to narrow any disputes (as they successfully did in this case, which the Court appreciates).

**2. TEG's Response Deadline—September 13, 2024**

The Court has stayed briefing on Max's preliminary injunction which will be reset at the telephonic status conference scheduled for September 25, 2024, at 11:00am (Eastern). [*See* Filing No. 68.] TEG's September 13, 2024, Response deadline is VACATED.

**3. Due Dates for Outstanding and Now Granted Discovery Production**

For the request that must be amended and re-served according to the instructions above (TEG's RFP 15), this edited request should be served within 7 days of this Order, and any response should be produced to opposing counsel within 30 days of this Order. All other responses to requests the Court has granted within this Order should be produced within 30 days of this Order. Certain production, beyond the requests at issue here, is still outstanding. This discovery should be produced to opposing counsel within 30 days of this Order.

Date: 8/19/2024

_Mario Garcia_
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to counsel of record.**