UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

CASE NO.: 1:24-cv-00779-JPH-MKK

MAX MINDS, LLC,

        Plaintiff,

v.

TRIANGLE EXPERIENCE GROUP, INC.,
ROBERT EDWARD CLARE, JEFFREY
MASE, KEVIN G MULLICAN and JOHN
DOES 1-10,

        Defendants.

## MOTION FOR MODIFICATION OR CLARIFICATION

Plaintiff MAX MINDS, LLC by and through its undersigned counsel, moves for modification or clarification concerning the Magistrate Judge's Order (ECF 74) with respect to Triangle Experience Group, Inc.'s request for production number 6, and states as follows:

TEG's request for production number 6 requests "Native copies of all source code repositories containing source code for the Software, organized from earliest to latest version." The definition of "Software" in TEG's requests is

> **The software that is the subject of the Complaint, sometimes referred to as 'Alleo,' 'Haptic,' or 'Haptic Federal,' from its original development in or around January 2019 and continuing to the present, including all iterations, derivations, and/or versions. The term 'Software' should be read broadly to encompass not only the specific versions of the software in which Max registered a copyright as specified in the Complaint, but also all derivative works within the meaning of the Copyright Act.**

The Court noted in its decision concerning Max's software that it was "[i]nitially designed under the umbrella of Haptic source code, [the] two products have since branched off: (1) Alleo for commercial users; and (2) Haptic Federal for government users." (ECF 74 at 4).

At the hearing on the motion, Max argued, as the Court noted, that "TEG's Software definition is too broad. Max's definition is: "the 'Haptic Federal On-Premise Version, Expected Release Date: April 6, 2021' referenced in the SCLA including in Exhibit A thereto. Furthermore, the term 'Software' should be read broadly to encompass not only the specific 'Haptic Federal On-Premise Version, Expected Release Date: April 6, 2021,' but also all software in which Max has registered a copyright listed in the table below, as well as all Derivative Works of the Software created by or on behalf of TEG." (ECF 74 at 5).

In response, "TEG argue[d] it is not limited to Max's definition and that its claims and defenses encompass the Alleo software, as this software originates from the Haptic source code." (Id.) The Court concluded, "[t]his determination is difficult for the Court to make at this stage, where TEG has yet to formally file its claims and defenses and is instead building them. The Court believes TEG's relevancy argument is credible at this stage and will not limit its definition of Software. TEG's Request No. 6 is GRANTED."

Since the Court ruled on August 19, 2024, Max has assessed the burden it faces of producing, without any limitation, "[n]ative copies of all source code repositories containing source code for the Software, organized from earliest to latest version." Max has determined that the burden on Max is massive and significantly outweighs the relevancy of "all source code repositories". Only a few source code repositories are relevant to the issues of copyright validity in this case. Meanwhile, the cost and risk associated with producing "all source code repositories" to TEG—even under the protective order—far outweighs any relevancy those repositories have to Max's claims. The interests of proportionality—a central requirement of Rule 26 since the last major revisions to the discovery rules in 2015—is not served by an

unlimited definition of software where "TEG's relevancy argument" and its definition of "Software" is disproportionate to the needs of the case.

Accompanying this motion is a declaration of Robert Simon, the lead software engineer for Max. Attached to Mr. Simon's declaration as Exhibit 1 is a list of the **ninety-one (91) source code repositories** Max identified that contain source code meeting TEG's definition of "Software."[1] **Only four (4) of those 91 repositories are arguably relevant to the Haptic Federal software at issue in this case.**

Mr. Simon explains that the Haptic Federal software at issue in this case was "forked" or "branched" off from development of Max's Alleo software effective December 21, 2021. The Alleo branches since the fork contain significant new development, updates and an independent product feature set that did not exist in Haptic Federal.

According to Simon, the only relevant source code repositories are the four repositories listed in his chart numbered 5 ("haptic-admin"), 6 ("haptic-backend"), 7 ("haptic-client"), and 21 ("haptic_demo").  Disclosure of the complete native source code repository with all branches from the repository number 21 ("haptic_demo") is acceptable as this repository has the earliest Haptic application code up to September 2019, prior to the advent of Haptic Federal. Disclosure of the complete native source code repository with all branches and all revision history of the remaining three (3) repositories would be devastating to Max. The only way that Max can be sure that its trade secrets and confidential source code would be protected would be under circumstances where the disclosure was performed in a highly controlled environment on a computer unconnected to the internet and disconnected from a printer or any means of copying

---

[1] Exhibit 1 to the Declaration of Robert Simon, is marked Highly Confidential – Attorney's Eyes only – at the time of filing this motion this Exhibit was sent to counsel for TEG in anticipation of the filing of a motion to file that document under seal.

code, and where the ability to view the code on a monitor was limited to a third-party expert with no relationship to TEG who had signed the undertaking in the protective order in this case and agreed not to disclose any information concerning the source code except to counsel under penalty of court sanction. Disclosure of the source code in full under any other circumstances would be extremely harmful to the company because it would disclose trade-secrets and development work for products other than Haptic Federal.

Alternatively, for the repositories number 5 ("haptic-admin"), 6 ("haptic-backend"), and 7 ("haptic-client"), a portion of the repository containing just the revision history of the Haptic Federal main branch, and separately a portion of the repository containing just the revision history of the 3.1.21.9 JWICS PoC v2 branch, the latter being the last branch of code shared with TEG, where these are the only portions of the code relevant to this case, would be an approach that would provide TEG with the necessary code to review. The Haptic Federal main branch contains the history of all code changes shared with Alleo up to the branching point in time of December 21, 2021. However, the same security controls would need to be applied.

Federal Rule of Civil Procedure 26(b) states that "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Limiting disclosure to the versions numbered 5 ("haptic-admin"), 6 ("haptic-backend"), 7 ("haptic-client"), and 21 ("haptic_demo") is proportional and relevant because the lineage of the source code that TEG possesses and that it claims it is a co-owner of can only be traced to those four repositories.

Other district courts faced with similar requests for production of "all source code" have refused to order "all source code" produced and instead limited production of source code to

only that which is relevant and proportional to the needs of the case. *Uniloc USA, Inc. v. Apple Inc.*, No. 18-cv-00362-PJH (LB), 2018 U.S. Dist. LEXIS 72464, at *5-7 (N.D. Cal. Apr. 30, 2018) (Rejecting request for disclosure of "all source code," ordering a limited disclosure of source code, and collecting cases where "Courts in this district have rejected discovery requests for source code where the requesting party has not shown why the code is relevant to claims or defenses or the request is overbroad and disproportionate to the case."); *ACI Worldwide Corp. v. Mastercard Techs.*, LLC, No. 8:14CV31, 2016 U.S. Dist. LEXIS 149037 (D. Neb. Oct. 27, 2016) (refusing to order production of "the entire source code" as "not proportional to the needs of the case [and] would include information irrelevant to ACI's claims."); *LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171, 182 (D. Kan. 2021)(refusing to order production of source code where the request for production "encompasses functionalities in Garmin devices that are not accused of infringement" and therefore "they are not relevant."); *OCR Sols. v. Charactell, Inc.*, No. 6:17-cv-709-Orl-28DCI, 2018 U.S. Dist. LEXIS 245700, at *7 (M.D. Fla. July 19, 2018)("Plaintiff has shown no good reason why the entire source code for idCliQ and FormStorm should be produced. Moreover, the Court finds that such discovery is not proportional to the needs of the case.")

Max's claim of potential injury from disclosure must also be considered. See *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (the court balances the need for discovery against the claim of potential injury from disclosure). Broad and unrestrained disclosure of Max's source code puts Max at great risk. TEG already has some of Max's source code, albeit a limited amount. But TEG is not what it once was; TEG is now a competitor. Giving a competitor access to all of Max's source code the vast majority of which is not relevant to TEG's claims provides a greater opportunity for that source code to be mishandled and

misused. Giving TEG access to all of Max's source code gives TEG all the necessary information to commercialize Max's software within the Department of Defense where it will be treated as **CLASSIFIED** and Max will never be able to "put the genie back in the bottle." Under similar circumstances, other district courts have limited source code production to protect the source code producing party. See, *LoganTree,* 339 F.R.D. at 182 ("This is the crux of Garmin's position—namely, that LoganTree has requested a broad scope of printouts that are not relevant and also put Garmin at an increased risk of disclosure because producing printed copies provides a greater opportunity for the printouts to be mishandled. And, here, the entire source code modules provide all the necessary information for a competitor to plug-and-play Garmin's proprietary technology. Balancing the potential harm to Garmin against a thin showing of relevance also weighs in favor of limiting production.")

The threat to Max from TEG's unrestrained access to Max's source code is real. As counsel for TEG explained at the hearing on the motion to compel, TEG is owned and staffed by former members of "Delta Force," a highly secretive unit of the miliary on which the Department of Defense tightly controls information and usually refuses to comment publicly on the secretive unit and its activities. See https://en.wikipedia.org/wiki/Delta_Force citing Haney, Eric L. (2002), "Inside Delta Force," New York: Delacorte Press. TEG employees have security clearances. Counsel for TEG has indicated that its operations are classified. If Max's source code is obtained by TEG, there may be nothing that Max can do to reverse the damage this disclosure would cause.

This is in fact what occurred in the prior case against TEG involving a software company that was the victim of the same sort of intellectual property violations alleged here against TEG. Attached hereto as **Exhibit 1** is the complaint filed in *Hadron Industries, Inc., et al. v. Triangle*

*Experience Group, Inc., et. al.*, 1:19-cv-00035-LO-MSN (E.D. Va. January 9, 2019). The allegations made by Hadron against TEG are eerily similar to those made by Max here. Furthermore, filing of the *Hadron* litigation coincides with TEG's approach to Max alleged in this case. In fact, in the *Hadron* case, like in this case, TEG obtained Hadron's source code for its software. According to counsel for Hadron, TEG still has Hadron's source code. This was confirmed by counsel for TEG—who was also TEG's counsel in the Hadron case—in the meet and confer conversation prior to the filing of this motion. And, since that source code was used by TEG for classified operations, there was effectively nothing that Hadron could do about it.

Max has real customers for its Alleo software that was branched or forked from the Haptic Federal software years ago. Production of all Max's software source code would give TEG not just "the keys to the castle," but unfettered access to the castle under the protection of secrecy and classified operations sponsored by the Department of Defense. It would be even worse than what was sought by the plaintiff in *Waymo LLC v. Uber Technologies, Inc.*, No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 173476, 2017 WL 6883929 (N.D. Cal. Oct. 19, 2017), where the plaintiff requested production of all of Uber's current source code, and the court denied Waymo's request as "profoundly overbroad" and "untethered," holding that Waymo had to make a showing of the relevance of the source code rather than "pawing through Uber's source code without limitation." *Id.*

Reconsideration and modification is necessary. Otherwise, Max could be destroyed and have no recourse.

Dated: September 13, 2024                              Respectfully submitted,

*/s/ J. Campbell Miller*
J. CAMPBELL MILLER
Bar Number: 38279-49

campbell.miller@sriplaw.com

**SRIPLAW, P. A.**
231 South Rangeline Road
Suite H
Carmel, Indiana 46032
332.600.5599 – Telephone
561.404.4353 – Facsimile

and

JOSEPH A. DUNNE (*Pro Hac Vice*)
joseph.dunne@sriplaw.com

**SRIPLAW, P. A.**
175 Pearl Street
Third Floor
Brooklyn, New York 11201
929.200.8446 – Telephone
561.404.4353 – Facsimile

JOEL B. ROTHMAN (*Pro Hac Vice*)
joel.rothman@sriplaw.com

**SRIPLAW, P. A.**
21301 Powerline Road
Suite 100
Boca Raton, Indiana 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

and

PHILIP D SEVER
Bar Number: 25384-49
phil@landownerattorneys.com

**SEVER, STORY, WALKER**
742 South Rangeline Road
Carmel, IN  46032
317 9611202 - Telephone

*Counsel for Plaintiff Max Minds, LLC*