UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAX MINDS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CAUSE NO. 1:24-cv-00779-JPH-MKK |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| TRIANGLE EXPERIENCE GROUP, INC., | ) |
| ROBERT CLARE, JEFFREY MASE, | ) FILED UNDER SEAL PURSUANT TO 18 |
| KEVIN MULLICAN, and JOHN DOES 1-10, | ) U.S.C. § 1836(b)(2) |
| | ) |
| Defendants. | |

### DECLARATION OF ROBERT SIMON IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND SEIZURE ORDER

I, Robert Simon, declare and say:

1. I am a Senior Software Engineer for Max Minds, LLC ("MAX"). I make this declaration based on my personal knowledge.

2. I have over twenty years' experience developing and maintaining computer software. I am involved in the development of MAX's Alleo, and Haptic Federal software programs. I am familiar with the Haptic Federal source code.

3. I read the Court's Order entered at ECF 74 in this case. In particular, I familiarized myself with the Court's discussion of TEG's Request No. 6 at pages 4-5.

4. I understand that TEG's request number six seeks "Native copies of all source code repositories containing source code for the Software, organized from earliest to latest version." I also understand that TEG's definition of Software is "the software that is the subject of the Complaint, sometimes referred to as 'Alleo,' 'Haptic,' or 'Haptic Federal,' from its original development in or around January 2019 and continuing to the present, including all iterations,

derivations, and/or versions. The term 'Software' should be read broadly to encompass not only the specific versions of the software in which Max registered a copyright as specified in the Complaint, but also all derivative works within the meaning of the Copyright Act."

5. Prior to the hearing on the motion to compel that is the subject of the Court's Order at ECF 74, I assisted counsel for Max by familiarizing myself generally with the software repositories for Max's different software products. I was not with the company throughout its history since the beginning however, and as a result I was not intimately familiar with the details of each and every repository specifically or the software contained within those repositories.

6. After the hearing and after the Court's order was issued I went back and reviewed the entire history of Max's software development since the beginning of software development at Max. The earliest repositories I was able to find dated to 2019.

7. Attached hereto as Exhibit 1 is a chart I prepared that lists the ninety-one (91) different source code repositories I identified after the hearing on the motion to compel. The number of repositories far exceeds my initial estimate before the hearing.

8. Of the ninety-one (91) different source code repositories, only four (4) contain source code that I believe are relevant to this case. The four repositories are numbered 5 ("haptic-admin"), 6 ("haptic-backend"), 7 ("haptic-client"), and 21 ("haptic_demo") in the attached chart.

9. I am aware that the Court ruled concerning Request No. 6 on page 5 of its order as follows:

> TEG argues it is not limited to Max's definition and that its claims and defenses encompass the Alleo software, as this software originates from the Haptic source code. This determination is difficult for the Court to make at this stage, where TEG has yet to formally file its claims and defenses and is instead building them. The Court believes TEG's relevancy argument is credible at this stage and will not limit its definition of Software. TEG's Request No. 6 is GRANTED.

10. I am personally knowledgeable concerning the development of both Haptic Federal and Alleo. I make this declaration to provide the Court with my view on why TEG's "relevancy argument" is not credible and provide the Court with additional information to consider in determining whether to modify or reconsider its ruling on Request No. 6.

11. Based on my extensive review of Max's source code repositories, the Haptic Federal software at issue in this case was split or "branched" off effective December 21, 2021. The branches since the split contain significant new development, updates and an independent product feature set that do not exist in Haptic Federal.

12. The only relevant source code repositories listed on my chart are the four repositories are numbered 5 ("haptic-admin"), 6 ("haptic-backend"), 7 ("haptic-client"), and 21 ("haptic_demo"). Disclosure of the complete native source code repository with all branches from the repository number 21 ("haptic_demo") is acceptable as this repository has the earliest Haptic application code up to September 2019, prior to the advent of Haptic Federal. Disclosure of the complete native source code repository with all branches and all revision history of the remaining three (3) repositories would be devastating to Max. The only way that Max can be sure that its trade secrets and confidential source code would be protected would be under circumstances where the disclosure was performed in a highly controlled environment on a computer unconnected to the internet and disconnected from a printer or any a means copying code, and where the ability to view the code on a monitor was limited to a third-party expert with no relationship to TEG who had signed the undertaking in the protective order in this case and agreed not to disclose any information concerning the source code except to counsel under penalty of court sanction. Disclosure of the source code in full under any other circumstances would be extremely harmful to the company because it would disclose trade-secrets and

3

development work for products other than Haptic Federal. Alternatively, for the repositories number 5 ("haptic-admin"), 6 ("haptic-backend"), and 7 ("haptic-client"), a portion of the repository containing just the revision history of the Haptic Federal main branch, and separately a portion of the repository containing just the revision history of the 3.1.21.9 JWICS PoC v2 branch, the latter being the last branch of code shared with TEG, where these are the only portions of the code relevant to this case, would be an approach that would provide TEG with the necessary code to review. The Haptic Federal main branch contains the history of all code changes shared with Alleo up to the branching point in time of December 21, 2021. However, the same security controls would need to be applied.

13. It would be incredibly harmful to Max if any of the code repositories contained in my chart fell into a third-party's hands.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 12, 2024.

_____
ROBERT SIMON

Verified by signNow
09/13/2024 14:26:33 UTC
c718cf4bcc774179a17e

4