UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAX MINDS, LLC, | ) |
|       *Plaintiff*, | ) ) ) |
|       v. | ) Case No.: 1:24-cv-00779-JPH-MG ) |
| TRIANGLE EXPERIENCE GROUP, INC., *et al*, | ) ) |
|       *Defendants*. | ) ) |

**TRIANGLE EXPERIENCE GROUP, INC.'S MOTION FOR RECONSIDERATION**

On September 20, 2024, the Court issued an Order granting Plaintiff Max Minds, LLC's ("Max") Motion for Modification or Clarification "to which Defendants have not yet responded." (Dkt. 81 at 1.) Defendant Triangle Experience Group, Inc. ("TEG") moves for reconsideration of the Court's September 20, 2024 Order, and in support thereof, states as follows:[1]

The Court's September 20, 2024 Order will seriously impede TEG's ability to build its case against the hyper-aggressive relief sought by Max in its motion for a preliminary injunction, and the failure to receive all of the repositories related to TEG's Request for Production No. 6 will greatly and unfairly prejudice TEG and its ability to mount a proper defense in this matter. One of TEG's main defenses is that TEG is a co-developer, co-author, and co-owner of the source code and software at issue. The developmental evolution of this software, as evidenced through all the source code repositories since the parties began working together, will demonstrate that (i) Haptic was not, as Max suggests, an independently created idea, but was instead taken from prior software

---

[1] In its Order of September 20, 2024, the Court stated that, "[at] the upcoming telephonic status conference with this Court, scheduled for September 25, 2024, TEG shall be prepared to discuss its initial position on the production set forth in this Order." TEG submits this current motion for reconsideration in an effort to give the Court as much notice as possible and to clarify and elaborate upon these issues accordingly.

that TEG had separately paid for; (ii) TEG is a co-developer, co-owner and co-author of the source code and software at issue, and (iii) that TEG gave Mr. Fischer and Max the necessary information, designs, architecture, requirements, source code, instructions and other copyrightable essence to envision and create the very software at issue in this case.

In addition to the foregoing prejudice, Max's Motion for Modification or Clarification (Dkt. 76) ("Motion") raises no manifest errors in law or fact in this Court's August 19, 2024 Order, nor does it set forth any patent misunderstandings or misapprehensions made by the Court in issuing that Order as the motion to reconsider standard requires under Rule 54(b). Tellingly, Max cites no authority for its request for "modification or clarification." While the standard for a motion for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure is well established in the Southern District of Indiana, Max fails to meet that standard and TEG respectfully requests that the Court vacate its September 20, 2024 Order and reinstate its Order of August 19, 2024.[2] Respectfully, Max fails to establish how relief is warranted under the standard required and instead resorts to baseless accusations and false statements. This "failure to apply the law to the facts is reason alone to deny its Motion outright." *BioConvergence LLC v. Attariwala*, Case No. 19-cv-01745, 2023 U.S. Dist. LEXIS 87839, at *3 (S.D. Ind. May 19, 2023) (discussing and applying Rule 54(b)). Nevertheless, Max's "modification" requests do not meet the strict standard required for this Court to reconsider its well-reasoned August 19, 2024 discovery order.

As noted below, many of the issues related to this discovery represent disputed facts. The myriad of factual disputes underscores how relevant and necessary the additional repositories are for TEG's defense. These are the very early stages of discovery. There is a robust, negotiated, and

---

[2] In addition, Max filed its Motion 25 days after the Court's August 19 Order, thus waiving its right to challenge the Magistrate Judge's ruling. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the [magistrate judge's] order not timely objected to."); *Vela v. Corizon Health Inc.*, No. 3:16-CV-51 JD, 2022 U.S. Dist. LEXIS 89330, at *7 n. 3 (N.D. Ind. May 18, 2022) (citing *Davis v. Kayira*, 938 F.3d 910, 917 (7th Cir. 2019)).

Court ordered protective order in place. The repositories are critical to TEG's defense, and TEG respectfully requests that the Court vacate its September 20, 2024 Order related to Max's Motion and reinstate its original Order from August 19, 2024.

## FACTUAL BACKGROUND

On August 2, 2024, the parties submitted a joint letter to Magistrate Judge Garcia outlining their discovery disputes in accordance with the Court's previous Order (Dkt. 55), which instructed the parties to (1) identify and state the text of each disputed request and (2) set forth the parties' respective positions regarding each disputed request. *See* Aug. 2, 2024 Letter attached hereto as **Exhibit A**. At issue were TEG's request for complete native copies of source code and native source code repositories for the "Software" as defined by TEG. (Ex. A at 5.) TEG defines "Software" broadly to encompass not only the specific versions of the software for which Max obtained copyright registrations, but all versions, iterations, or derivations of the software that is the subject of the Complaint (whether called "Haptic," "Haptic Federal," "Alleo," or anything else) from the time of its original development and continuing to the present. (*Id.*).

TEG's definition of "Software" is not simply gratuitous. TEG's definition is critical to its defense in the upcoming preliminary injunction hearing, essential to TEG's forthcoming expert disclosure, opinion, analysis, and testimony, and indispensable for TEG's overall claims and defenses in this matter. *See* Aug 1., 2024 Dec. Nick Ferrara, attached hereto as **Exhibit B**. Indeed, TEG's requests for source code related to the "Software" as defined by TEG are relevant to the following *crucial* claims and defenses: (1) TEG is a co-developer, co-author, and co-owner of the source code and software at issue; (2) Max has likely incorporated source code from a third party (Prysm) for its early contributions to the software; (3) TEG provided critical independently copyrightable material to Max in 2018/2019, when the parties began working together to create

3

the software; and (4) Max never "branched" or "forked" the software and, therefore, "Alleo" is essentially the same software as "Haptic" or "Haptic Federal" and all of which is co-owned by TEG and Max. (*See* Ex. A at 5; Ex. B, ¶¶ 6-11.)

The parties further explained their positions on this issue during an extensive discovery conference held in-person before the Court on August 8, 2024. (Tr., Aug, 8, 2024, Dkt. 72.) Having taken the parties' factual and legal arguments into consideration, the Court issued its discovery Order on August 19, 2024. (Dkt. 74.) The Court ordered Max to produce native copies of all source code repositories for the "Software" as defined by TEG because TEG made credible relevancy arguments relating to (1) TEG's defense that it jointly developed the "Software" source code with Max and (2) that TEG's claims and defenses encompass "the Alleo software." (Dkt. 74 at 5.)

The source code repositories at issue, which Max has admitted correspond and relate to TEG's definition of "Software," will provide key facts and information that confirm that TEG's foregoing claims and defenses are well-founded. Max's attempts to limit the production of these repositories is telling, as Max wishes to hide that which TEG currently believes to be true – that Max likely used prior source code and software from Prysm that TEG bought from Prysm to facilitate its business with the federal government (the "Synthesis" software), and then used Synthesis' source code to rapidly create a foundation for Haptic, which TEG then, in its joint venture with Max, co-developed. *See* Sept. 23, 2024 Declaration of Robert Clare Jr. attached hereto as **<u>Exhibit C</u>**. The parties have been working together since 2018, but even before Max was formed as a company, Max's founder and sole owner, Brandon Fischer, had been working with TEG since late 2016 as an employee of Prysm, a company that provided and developed software for TEG. (*See,* Ex. C, ¶¶ 8-12.) Furthermore, Max did not, as it has stated, independently create the idea for or the substance of the source code and software at issue, but instead likely used the core source

4

code and software from the previous software that TEG paid for at Prysm, Synthesis. (*Id.* ¶¶ 11-18.) Max then incorporated TEG's further contributions to the co-developed source code and software and is now trying to pass them off as solely its own. (*Id.*). Max claims in its Motion that "only a few source code repositories are relevant to the issues of copyright validity in this case,"[3] but "copyright viability" is not the standard for discovery, is not the focus of this motion, and is not the focus of TEG's claims or defenses in this case.[4] As argued by TEG in the discovery conference on August 8, 2024, Max is welcome to its definitions of source code and software, but Max should not, and cannot, be allowed to simultaneously limit TEG's definitions and, by the same token, TEG's defenses.

In addition, while Max claims that only 4 of the 91 repositories are relevant, TEG's expert has identified numerous other repositories that appear on their face to be relevant to TEG's claims and defenses. (*See* Ex. D ¶¶ 6-11.) Finally, the Court notes in its order that, "Max alleges that disclosure of the complete native source code repository with branches and revision histories for 'haptic_demo' is acceptable, as it is the earlies[t] Haptic application code to September 2019, prior to the advent of Haptic Federal." But in the Declaration of Brandon Fischer in Support of Motion for Preliminary Injunction and Seizure Order, Mr. Fischer states that, "MAX began development of its software in or around March 2019. Full time development began in May 2019." (*See* Dkt. 15 at 11.) Clearly, Mr. Fischer and Max were developing Haptic well before September of 2019, and thus earlier repositories are relevant and necessary for TEG's claims and defenses.

Nonetheless, nearly a month after the Court's discovery Order and only 5 days before the parties were ordered to produce responsive documents and ESI (including Max's source code

---

[3] Motion at 2.
[4] TEG notes that these same issues will arise in the related Case No. 1:24-cv-00650, wherein TEG alleges all of the foregoing claims and defenses.

repositories), Max filed its Motion. On September 20, 2024, 8 days before TEG's response in opposition to Max's Motion was due under Local Rule 7-1(b)(3)(A), the Court granted Max's Motion and in doing so, altered the Amended Stipulated Protective Order agreed to by the parties and entered by the Court. (Dkt. 75.) The Court issued its Order before TEG had an opportunity to respond but invited TEG to discuss its position on these issues. In that spirit, TEG has now converted its intended response in opposition brief it had planned to file into this motion for reconsideration and asks the Court to enter an Order consistent with its August 19, 2024 Order.

## STANDARD OF REVIEW

"A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). The district court's power to reconsider interlocutory orders "emanates from the inherent power of the court." *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993). Indeed, the district court "practically [has] unbridled discretion . . . to reconsider a previous interlocutory order." *Id.* (internal citations omitted).

Courts in the Seventh Circuit apply Rule 59(e) or Rule 60(b) standards to motions to reconsider. *Barnhouse v. City of Muncie*, No. 1:19-cv-00958-TWP-DLP, 2020 WL 9349544, at *1 (S.D. Ind. Sept. 11, 2020); *Washington Frontier League Baseball, LLC v. Zimmerman*, No. 1:14-cv-01862-TWP-DML, 2016 WL 4798988, at *1 (S.D. Ind. Sept. 14, 2016). "If timely filed, a motion styled as a motion to reconsider should be considered under Rule 59(e)."[5] *Barnhouse*, 2020 WL 9349544, at *1.

---

[5] A motion to alter or amend under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e)

As this Court set forth in *BioConvergence*, motions for reconsideration serve to correct "manifest errors of law or fact or to present newly discovered evidence not available at the time of briefing." *BioConvergence*, 2023 U.S. Dist. LEXIS 87839, at *2 (quoting *Quality Leasing Co. Inc. v. Int'l Metals LLC*, No. 1:18-cv-01969-TWP-TAB, 2021 U.S. Dist. LEXIS 31181 at *1 (S.D. Ind. Feb. 19, 2021)). Thus, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.*, at *2 (quoting *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004)). "Relief pursuant to a motion to reconsider is an 'extraordinary remedy reserved for the exceptional case.'" *Id.*, at *3 (quoting *Quality Leasing Co.*, 2021 U.S. Dist. LEXIS 31181 at *2).

## **ARGUMENT**

TEG respectfully submits that Max's Motion should have been denied because it does not meet the high standard required for this Court to reconsider its discovery Order. In its Motion, Max failed to meet the that standard and instead, : (1) rehashes previously rejected arguments, (2) raises an allegedly "new" burden argument that could have been raised (and was raised) during the discovery dispute proceedings, and (3) makes the baseless accusation that TEG's counsel and independent expert will violate the Amended and Stipulated Protective Order (negotiated at length, agreed to by Max, and entered by the Court), which provides careful and strict procedures for the production of source code, and protection of the same.

TEG respectfully requests that the Court revisit and ultimately vacate its September 20, 2024 Order and reinstate its order of August 19, 2024 with respect to Max's production of its software repositories because the production of the Source Code as required by the August 19, 2024 Order is required, necessary, and critical for TEG's defenses and anticipated forthcoming expert disclosure.

7

### A. Max's Arguments Fail to Meet the Legal Standard for Modification

As the Court noted in its September 20, 2024 Order, Max repeatedly argues that only four of the source code repositories are "arguably relevant." (Dkt. 76 at 2-3; Dkt. 76-2 at 2-3.) But all of Max's arguments set forth in its Motion concerning the repositories' alleged lack of relevance had been fully heard and were initially rejected by the Court. Max outlined its relevancy arguments to the Court in the joint discovery letter, (Ex. A at 5), and developed them fully before the Court during the discovery conference, including Max's argument that the software "forked" or "branched" at some time. (*See, e.g.*, Dkt. 72 at 47:24-48:25, 52:22-25, 54:8-16; *see also* Dkt. 72 at 44:23-47:11, 49:1-51:2, 51:9-52:21, 58:3-13.) The Court initially granted TEG's request for all of the source code repositories as relevant and proportional. (Dkt. 74 at 5.) TEG respectfully argues that the Court's August 19, 2024 Order was correctly decided, and that Max has not been able to sufficiently establish that this information is not relevant to TEG's claims and defenses outside of conjecture and baseless accusations.

Max cites assorted discovery rulings from other federal circuits, none of which are relevant or instructive here. (Dkt. 76 at 5.)[6] All of these cases discuss discovery disputes concerning source code based on highly case-specific claims, none of which are similar to the claims in this case. For example, in *Uniloc USA, Inc. v. Apple, Inc.*, the court denied plaintiff's request for all of Apple's source code for iPhones, iPads, and Apple Watches because plaintiff's patent infringement claims related solely to a step counter. *Uniloc USA, Inc.*, 2018 U.S. Dist. LEXIS 72464 at *7.

---

[6] *See Uniloc USA, Inc. v. Apple Inc.*, No. 18-cv-00362-PJH (LB), 2018 U.S. Dist. LEXIS 72464, at *5-7 (N.D. Cal. Apr. 30, 2018); *ACI Worldwide Corp. v. Mastercard Techs., LLC*, No. 8:14CV31, 2016 U.S. Dist. LEXIS 149037 (D. Neb. Oct. 27, 2016); *LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171, 182 (D. Kan. 2021); *OCR Sols. v. Charactell, Inc.*, No. 6:17-cv-709-Orl-28DCI, 2018 U.S. Dist. LEXIS 245700, at *7 (M.D. Fla. July 19, 2018); *Waymo LLC v. Uber Technologies, Inc.*, No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 173476, 2017 WL 6883929 (N.D. Cal. Oct. 19, 2017).

Only one of Max's cited cases involves reconsideration (although in the form of objections to the district judge under Fed. R. Civ. P. 72(a)), but it is similarly inapposite. *See Waymo*, 2017 U.S. Dist. LEXIS 173476. In *Waymo*, the district court denied the challenges to the magistrate judge's discovery ruling because the movant sought to retroactively limit its discovery request—which had been found by the magistrate judge to be "profoundly overbroad" and "untethered" to any claim—based on the discovery of new evidence. *Id.* at *9. In the present case, this Court has already found TEG's Request No. 6 to be reasonable and relevant.

Moreover, TEG's software expert has confirmed and amplified his prior expert opinion, (Ex. B at ¶¶ 6-11), regarding the relevance of the source code repositories. *See* Sept. 20, 2024 Dec. Nick Ferrara, attached hereto as **Exhibit D** at ¶¶ 12-15.)[7] As explained by Mr. Ferrara, the source code repositories at issue are critical to TEG's defenses. *Id.* The unsupported "belief" of Max's Senior Software Engineer (a Max employee, not Max's expert) should not convince this Court otherwise.

Max raises an allegedly "new" burden argument. (Dkt. 76 at 2) ("Since the Court ruled on August 19, 2024, Max has assessed the burden it faces" and "has determined that the burden on Max is massive."). Not only are new arguments inappropriate for reconsideration, *BioConvergence*, 2023 U.S. Dist. LEXIS 87839 at *2-3, but the burden issue was raised during the discovery conference, giving Max's counsel an opportunity to discuss any undue burden in producing the source code repositories. (*See* Dkt. 72 at 50:20-25.) Instead, Max's counsel informed the Court that it anticipated being able to produce source code "within two weeks" of the August 8, 2024 conference. (Dkt. 72 at 59:22-60:6.)

---

[7] The September 20, 2024 Ferrara Declaration contains material designated by Max as Highly Confidential – Attorneys Eyes Only and TEG is complying with Local Rule 5-11 with respect to this document. Simultaneously with the filing of this motion, TEG has provided Max's counsel with a complete, unredacted copy of the Sept. 20, 2024 Ferrara Declaration.

9

Moreover, Max's "new" and vague complaints of burden are simply false. (Ex. D at ¶¶ 7-11.) Max failed to articulate any burden Max would suffer from producing the source code repositories then, and it fails to do so now.

**B. The Amended Stipulated Protective Order Provides Ample Protection for Attorneys' Eyes Only Source Code Production**

Max's only apparent support for the "burden" of producing the source code repositories is the baseless allegation that TEG's counsel or its independent software expert will violate the Amended Stipulated Protective Order, negotiated at length by the parties and entered by the Court, (Dkt. 75) by disclosing the source code to TEG personnel. (Dkt. 76 at 5-6; Dkt. 76-2 at 3-4.)[8] Putting aside the inappropriate nature of such allegations, there is absolutely no basis for Max's contention that TEG's counsel or its expert will fail to abide by the strict procedures outlined in the Amended Stipulated Protective Order. (Dkt. 75 at 5-6 ¶ 5.) TEG's independent expert testifies that he has reviewed and is familiar with the Amended Stipulated Protective Order and has agreed to be bound by its terms. (Ex. D at ¶ 20.)

Furthermore, Max's unilateral and unjustified modification of the Amended Stipulated Protective Order (Dkt. 75) is atypical, "substantially limits what kinds of analysis an expert can do and how much effort can be applied in such analyses," and will potentially prolong—even further—expert review of the source code. (Ex. D at ¶¶ 16-19, 21.) In contrast, Max provides no evidence to support its unilateral modification of the Amended Stipulated Protective Order or its insulting allegations. Accordingly, TEG requests that Max be ordered to comply with the Amended Stipulated Protective Order's procedures for production of source code.

---

[8] Max's argument essentially undermines any discovery protective order in any case. Max's argument that it should not comply with an otherwise appropriate discovery request because TEG's counsel *may* violate an Order of the Court, is unsupported, and the argument could be used to undermine every protective order. The Amended Stipulated Protective Order in this case serves no purpose if a party is excused from complying because the party thinks the other party might violate it.

Finally, Max's recent claim that TEG is now a "competitor" is also unfounded. Other than for purposes of TEG's defenses in this matter, TEG has no interest in Max's source code or software at this point – it didn't work and was rejected by the government customer after TEG paid Max almost Five Million Dollars to co-develop the software. (Ex. C, ¶¶ 17-18.)

### C. Max's Statements Regarding an Unrelated Case are Baseless and Improper

Max spends the final one and one-half pages of its Motion casting baseless aspersions against United States veteran service members and making false statements on the record about current counsel and a past lawsuit involving TEG: *Hadron Industries, Inc., et al. v. Triangle Experience Group Inc., et al.*, 1:19-cv-00035-LO-MSN (E.D. Va. January 9, 2019) (the "Hadron Lawsuit"). (Dkt. 76 at 6-7; Dkt. 76-1.)[9] Such unsupported, ad hominem attacks are red herrings designed to distract from the merits of the dispute actually before the Court. (*See generally* Declaration of Richard D. Kelley attached as **Exhibit E**.)

The Hadron Lawsuit involved contractual claims and business torts between TEG's former business partner, Hadron, and another government contractor, ALQIMI Analytics & Intelligence, LLC. (*See* Dkt. 76-1; Ex. C, ¶ ¶ 5-8.)[10] There were no claims or even mention in the Hadron Lawsuit of any stolen, misused or misappropriated source code. *Id.* In fact, TEG was never in possession of any source code in that case, so TEG could not "have obtained Hadron's source code for its software," (Dkt. 76 at 7; Ex. C, ¶ 7), as misrepresented by Max in its Motion. (Ex. E, Kelley Decl. ¶¶ 5-7) Nor could TEG still have it. Max's citation to an unidentified "counsel for Hadron"

---

[9] The reference to the Hadron Litigation itself is a red flag. A lawsuit filed more than five years ago, among different parties, regarding different legal claims and facts, which was resolved by confidential settlement, without an adjudication on the merits, has absolutely no relevance or probative value to this lawsuit. TEG intends to file a protective order regarding this issue.

[10] After TEG's and ALQIMI's motions for summary judgment were filed, the case was resolved to the mutual satisfaction of the parties in accordance with a confidential Settlement Agreement and Mutual Release. To be sure, there was never, once, a finding or adjudication of adverse fact or claims against TEG, and certainly nothing *close* to the accusations made by Max in its Motion.

11

is suspicious, at best. (Dkt. 76 at 7).[11] Finally, and unequivocally, TEG's counsel **never stated** that TEG was ever in possession of Hadron's source code. (*See* Ex. E, Kelley Decl. ¶¶ 9-15; Ex. F, Banks Decl. ¶¶ 9-13; Ex. G, Koustenis Decl. ¶¶ 5-6.) Regardless, the fact that TEG has been in a resolved business dispute with another software company does not make it probable that TEG would, or even could, violate the Amended Stipulated Protective Order at issue in this matter.

In addition, citing to Wikipedia, Max recklessly implies that TEG's veteran employees are dishonest and are sure to violate this Court's orders because they "have security clearances." (Dkt. 76 at 6.) This conjecture is not only shameful and untrue, but irrelevant. As discussed in Part B. above, the source code at issue will never be in the possession of TEG personnel (or even its attorneys) but will only be produced in accordance with the strict procedures outlined in the Amended Stipulated Protective Order for the production of source code on a Highly Confidential – Attorneys' Eyes Only basis and secured on an encrypted hard drive. (Dkt. 75 at 5-6 ¶ 5.) TEG's independent expert testifies that he has reviewed and is familiar with the Amended Stipulated Protective Order already entered in this case and has agreed to be bound by its terms. (Ex. D at ¶ 20.)

Max is casting aspersions and making false allegations in an attempt to avoid production of materials that will support the claims and defenses TEG has previously (and successfully) argued will support TEG's claims and defenses.

## **CONCLUSION**

In sum, Max failed to demonstrate any manifest errors of law or fact or to present newly discovered evidence not available at the time of the Court's discovery dispute proceedings.

---

[11] Counsel for TEG asked counsel Max to disclose who this unidentified "counsel for Hadron" who made this unsupported and untrue statement, but counsel for Max refused. (Ex. E, Kelley Decl. ¶ 10.) This allegation, along with Max's other unsupported and demonstrably false allegations, should be given no credence by the Court.

Moreover, TEG has demonstrated the crucial need for this discovery information and the safeguards related to the exchange of the same. TEG therefore respectfully requests that the Court reconsider, deny Max's motion, and order Max to: (1) comply with the Court's August 19 Order ordering Max to produce native copies of all source code repositories containing source code for the Software (as defined by TEG), organized from earliest to latest version, (Dkt. 74 at 4-5); and (2) produce such repositories in accordance with the Amended Stipulated Protective Order entered on August 28, (Dkt. 75), including Paragraph 5 of that Order pertaining to the production of source code discovery materials. (*Id*. at 5-6 ¶ 5.)

Dated: September 23, 2024                               Respectfully submitted,

| | |
|---|---|
| Marc T. Quigley, Atty. No. 21054-53<br>**KRIEG DeVAULT LLP**<br>12800 North Meridian Street<br>Suite 300<br>Carmel, Indiana 46032<br>Tel: (317) 566-1110<br>Fax: (317) 636-1507<br>mquigley@kdlegal.com<br><br>Alexandra Wilson Pantos, Atty. No. 37003-49<br>**KRIEG DeVAULT LLP**<br>One Indiana Square, Suite 2800<br>Indianapolis, Indiana 46204<br>Tel: (317) 636-4341<br>Fax: (317) 636-1507<br>awilson@kdlegal.com | */s/ Richard D. Kelley*<br>Richard D. Kelley, *admitted pro hac vice*<br>Raighne C. Delaney, *admitted pro hac vice*<br>Stephen D. Caruso, *admitted pro hac vice*<br>Samuel J. Banks, *admitted pro hac vice*<br>**BEAN, KINNEY & KORMAN, PC**<br>2311 Wilson Boulevard, Suite 500<br>Arlington, VA 22201<br>Tel: (703) 525-4000<br>Fax: (703) 525-2207<br>rkelley@beankinney.com<br>rdelaney@beankinney.com<br>scaruso@beankinney.com<br>sbanks@beankinney.com<br><br>***Attorneys for Triangle Experience Group, Inc.*** |