

2311 WILSON BOULEVARD
SUITE 500
ARLINGTON, VA 22201
PHONE  703.525.4000
FAX    703.525.2207

RICHARD D. KELLEY
Admitted in VA
rkelley@beankinney.com

August 2, 2024

**Via Electronic Mail Only**
The Honorable Mario Garcia
United States Magistrate Judge
Southern District of Indiana
Birch Bayh Federal Building & U.S. Courthouse
46 East Ohio Street
Indianapolis, IN 46204
mjgarcia@insd.uscourts.gov

      *Re:*  ***Joint Party Discovery Dispute Statement;*** *Max Minds, LLC v. Triangle Experience Group, Inc., et al.*
         *Case No. 1:24-cv-00779-JPH-MG*
         *United States District Court Southern District of Indiana, Indianapolis Division.*

Dear Judge Garcia,

  Per the Court's Minute Entry of July 25, 2024 (Dkt. 55) (the "Order"), Defendant Triangle Experience Group, Inc. ("TEG") and Max Minds, LLC ("Max") jointly submit this position statement regarding existing discovery disputes between the parties related to Max's Motion for Preliminary Injunction and Seizure Order (Max's "Motion"). Per the Order's instructions, this letter to Court (1) identifies and states the text of each remaining disputed request and (2) sets forth each party's position regarding each request.

### I. MAX'S DISCOVERY REQUESTS TO TEG STILL IN DISPUTE

**1. Max's Preliminary Requests for Production of Documents to TEG**

**PLAINTIFF'S REQUEST FOR PRODUCTION NO. 2:**

Documents and ESI sufficient to show all copies of the Software in the possession of third-parties who obtained the Software from you.

**Plaintiff's Offered Revisions:** Documents and ESI sufficient to show all copies of the Software you distributed to, licensed, or gave to third-parties.



August 2, 2024
Page 2

**Plaintiff's Position:** The definition of software that accompanies the request is sufficiently specific to allow TEG to perform a search and produce responsive documents.

Max is at a loss with regards to the objections to this request. TEG's objections state that Max's definition of software is overbroad, yet their position contained herein is that the definition is too narrow. Similarly, the objection does not raise the issue of the documents being the property of the United States government. Max only recently learned that this was an issue at the parties' meet and confer.

**Defendant's Position:** TEG objects to this request and each of Max's "third party requests" (RPD 2, 10 and 11) because (1) they are beyond the limited scope of discovery necessary for Max's Motion and (2) more importantly, TEG is not able to produce any such documents or information without the express permission of the United States Government.

First, the documents requested by Max are beyond the limited scope of discovery because they are not related to any of the elements necessary for a preliminary injunction. At best, these are remedial documents, meaning that should Max succeed on its Motion, then the seizing of Max's alleged property may be appropriate. But instead, Max is attempting to use this preliminary injunction process as a means to harass and intimidate both TEG and its third-party clients and contractors.

Second, as Max is well aware, TEG's function in the Joint Venture Agreement and partnership between the parties involves not just co-development, co-authorship and co-ownership of the software and Source Code at issue, but also being the party to work with the United States Government, leveraging TEG's longstanding position and reputation as a government contractor. As such, TEG does not have the authority to produce the documents requested by Max without (1) express authorization by the General Counsel, Department of Defense ("DoD GC") to do so, pursuant to the DoD's *Touhy* requirements, or (2) an order issued by the Court in this case requiring TEG to produce the documents requested, again subject to prior review and approval by the DoD. In order to achieve such authority, Max is required to follow the *Touhy* process, which Max has, to date, failed to undertake.

Congress has authorized federal agencies to enact "housekeeping" regulations establishing agency policy and procedures regarding requests for government information from current of former employees. *See* 5 U.S.C. § 301; *see also United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951) (upholding such regulations as a valid exercise of statutory authority); *see also Edwards v. Department of Justice,* 43 F.3d 312, 316-17 (7th Cir. 1994) (*Touhy* is part of an unbroken chain of authority that a federal employee cannot be compelled to obey a subpoena that acts against valid agency regulations). The DoD's *Touhy* regulations are applicable to "the Office of the Secretary of Defense, the Military Departments, the office of the Chairman of the Joint Chiefs of Staff and Joint Staff, the Combatant Commands . . . the Defense Agencies, the DoD



August 2, 2024
Page 3

Field Activities and all other organizational entities within the DoD (collectively, the "DoD Components)." 32 C.F.R. § 97.2.

The DoD's *Touhy* regulations provide that "present and former DoD personnel" may *not* produce "official information" acquired as part of their official duties, in response to a litigation request or demand, without the DoD GC's specific authorization. *See* 32 C.F.R. Appendix C to Part 516, § (F)(3)(a) ("DoD personnel shall not, in response to a litigation request or demand produce, disclose, release, comment upon, or testify concerning any official DoD information without the prior written approval of the appropriate DoD official designated [in these regulations.]" "*Official information*" is defined under the DoD's regulations as "all information of any kind, however stored, that ... was acquired by DoD's personnel as part of their official duties or because of their official status within the Department while such personnel were employed by or on behalf of the Department. *Id.* at § (C)(4). DoD "Personnel" is broadly defined to encompass "[a]ny individuals who perform or have performed services for a DoD Component through a contractual arrangement[,]" including contractors. 32 C.F.R. § 97.3(5); *see also* 32 C.F.R. § 97.9(b) ("former personnel" is defined to include "*past contractors*.").

The DoD's *Touhy* regulations set forth the specific procedures that must be followed with respect to disclosures of "official information" in "litigation," which the regulations define as "[a]ll pretrial, trial, and post-trial stages of all existing ... judicial ... actions, ... and includes responses to discovery requests, depositions, and other pretrial proceedings." 32 C.F.R. Appendix C to Part 516, § (C)(3).

Without question, the DoD's *Touhy* regulations are squarely applicable to Max's discovery requests to TEG. As a DoD contractor, TEG is deemed to be DoD personnel. *See* 32 C.F.R. § 97.3(5) *and* 32 C.F.R. § 97.9(b). The subjects of Max's discovery requests clearly fall within the confines of DoD "official information" that was acquired while TEG was an employee of the DoD as part of the performance of its contractual duties on behalf of the DoD. The same would hold true for DoD official information that has been exchanged by and between TEG and its contractors or subcontractors. The protected characteristic of official information of the DoD is not compromised or diminished in any way by the contractor-subcontractor relationship.

### PLAINTIFF'S REQUEST FOR PRODUCTION NO. 7:

Documents and ESI sufficient to show all communications among developers of Derivative Works of the Source Code.

**Plaintiff's Offered Revision:** Documents and ESI sufficient to show all communications among developers of Derivative Works of the Source Code that have occurred since this case was filed.

**Plaintiff's Position:** Max's position is that this request is specific and limited to a short time period. Any objection that this request is overbroad and unduly burdensome is misplaced.



August 2, 2024
Page 4

**Defendant's Position:** TEG asserts that this request is facially overbroad and will certainly include a multitude of communications which are not relevant to the limited scope of Max's Motion, making it unduly burdensome to review and produce. Further, Max's use of the term "developer" is vague and ambiguous. Another troubling element to Max's complaint about TEG's objection to Request No. 7 is Max's refusal to answer TEG's Request No. 18, which seeks documents sufficient to identify who worked on the Software. Moreover, seeking communications among developers at TEG may include communications made in anticipation of litigation or seeking legal advice, which would be protected by attorney-client privilege or the work-product doctrine.

### PLAINTIFF'S REQUEST FOR PRODUCTION NO. 10:

Documents and ESI sufficient to show your agreements with third-parties authorizing those third-parties to distribute and sell licenses for the Software.

**Plaintiff's Position:** Max never gave anyone including TEG the right to distribute and sell licenses for Max's Software without Max's involvement or agreement. Yet this appears to have occurred; TEG appears to have sold Max's software or agreed with unknown third parties that those third parties could sell Max's software. This is a relevant area of inquiry and plaintiff is entitled to documents and ESI on this issue.

Max restates that it has only recently been informed of TEG's position that it cannot produce the documents responsive to this request because they are property of the United States Government. TEG has not provided information to Max to support its contention.

**Defendant's Position:** TEG reasserts and incorporates it position as to Max's RPD No. 2.

### PLAINTIFF'S REQUEST FOR PRODUCTION NO. 11:

Documents and ESI sufficient to identify each third-party you have authorized to distribute and sell licenses for the Software.

**Plaintiff's Position:** Max restates its position from Plaintiff's Request for Production No. 10 above.

**Defendant's Position:** TEG reasserts and incorporates it position as to Max's RPD No. 2.

### II.   TEG'S DISCOVERY REQUESTS TO MAX STILL IN DISPUTE

In accordance with the Preliminary Injunction Discovery Order, Max served upon TEG various interrogatories, requests for production of documents and requests for admissions.



August 2, 2024
Page 5

## 1. Defendant's First Requests for Production of Documents to Max for Preliminary Injunction

### DEFENDANT'S REQUEST FOR PRODUCTION NO. 6:

Native copies of all source code repositories containing source code for the Software, organized from earliest to latest version.

**Plaintiff's Position:** Source code for the software that was not the basis for Max's copyright registration or that predates agreements with TEG are not relevant to this case.

**Defendant's Position:** RPD No. 6 seeks native copies of all Source Code repositories containing Source Code for the Software. Max argues that the only versions of the software that are relevant are the copyrighted versions noted in the Complaint and Motion. Max is incorrect. While the only versions of the Software and Source Code Max may wish to be relevant for its purposes are the versions listed in its definitions, including the versions Max registered in 2024, after TEG had already filed its lawsuit against Max in December of 2023, this definition is self-serving and too limiting given the arguments in this matter. TEG's defenses and claims, and the nature of the parties' business relationship over the years, necessitates that all versions of the Software and Source Code are relevant, going back to at least the beginning of 2018. In addition, Max contends that the Alleo source code and software is the same as the Haptic federal source code and software, so the burden of producing both is inconsequential. Finally, the changes to the Source Code and Software over the course of the parties' relationship will demonstrate how the parties jointly developed the Source Code and Software, as the Source Code will reflect that course of conduct and the related contributions of the parties, which is critical to TEG's defenses. In further support of this request, TEG attaches as **TEG Exhibit A** the Declaration of Nick Ferrara, TEG's software expert in this matter.

### DEFENDANT'S REQUEST FOR PRODUCTION NO. 11:

Complete copies of the source code for the Software installed in or about November 2019 as alleged in Paragraph 37 of the Complaint.

**Plaintiff's Position:** Max reasserts and incorporates its position to RPD No. 6.

**Defendant's Position:** TEG reasserts and incorporates it position to RPD No. 6.

### DEFENDANT'S REQUEST FOR PRODUCTION NO. 12:

Complete copies of the source code for the Software as it existed on or before July 17, 2019.

**Plaintiff's Position:** Max reasserts and incorporates its position to RPD No. 6.

**Defendant's Position:** TEG reasserts and incorporates it position to RPD No. 6.



August 2, 2024
Page 6

### DEFENDANT'S REQUEST FOR PRODUCTION NO. 14:

All confidentiality agreements and/or non-disclosure agreements between Max and every customer and/or user and/or organization, other than TEG, to which Max has granted access to the Software.

**Plaintiff's Position:** Max is willing to produce a standard confidentiality and non-disclosure agreement which it uses and attest that it enters into such agreements with all parties.

**Defendant's Position:** Max's objections to RPD No. 14 ignore the obvious relevance of the information sought to TEG's defenses in this dispute. TEG is entitled to demonstrate that Max has not properly maintained the items it claims are trade secrets from improper third-party disclosure. As such, all requested documents are relevant to TEG's claims and defenses, as TEG is not required to "take Max's word" that it maintained proper trade secret status across the spectrum of customers, potential customers, users and organizations. Max certainly did not do so with TEG, so there are likely others with whom Max had potentially similar interactions. Max's attempt to produce a demonstrative copy of its standard confidentiality and non-disclosure agreements is insufficient to fully respond to these valid requests given that TEG is entitled to this information under Rule 26 of the Federal Rules of Civil Procedure.

### DEFENDANT'S REQUEST FOR PRODUCTION NO. 15:

All confidentiality agreements and/or non-disclosure agreements between Max and every customer and/or user and/or organization, other than TEG, to which Max has granted access to the Software source code.

**Plaintiff's Position:** Max reasserts and incorporates its position to RPD No. 14.

**Defendant's Position:** TEG reasserts and incorporates it position to RPD No. 14.

### DEFENDANT'S REQUEST FOR PRODUCTION NO. 16:

All confidentiality agreements and/or non-disclosure agreements between Max and every customer and/or user and/or organization, other than TEG, to which Max has granted a license to the Software.

**Plaintiff's Position:** Max reasserts and incorporates its position to RPD No. 14.

**Defendant's Position:** TEG reasserts and incorporates it position to RPD No. 14.



August 2, 2024
Page 7

### DEFENDANT'S REQUEST FOR PRODUCTION NO. 17:

All confidentiality agreements and/or non-disclosure agreements between Max and every customer and/or user and/or organization, other than TEG, to which Max has granted a license to the Software source code.

**Plaintiff's Position:** Max reasserts and incorporates its position to RPD No. 14.

**Defendant's Position:** TEG reasserts and incorporates it position to RPD No. 14.

### DEFENDANT'S REQUEST FOR PRODUCTION NO. 18:

All Documents sufficient to reflect the identity of each and every person, whether internal or external to Max, who authored, edited, revised, developed, coded, contributed to, or otherwise worked on the Software and the Software's source code.

**Plaintiff's Offer in Compromise:** produce a list of its Software developers.

**Plaintiff's Position:** Max maintains its position that this request is overly broad, unduly burdensome and disproportionate to the needs of the case. The request asks for identifying information on individuals who have nothing to do with this case or the motion for preliminary injunction.

**Defendant's Position:** RPD No. 18 seeks documents sufficient to reveal the identity of all individuals who worked on the Software or Source Code. Max objects to this request as overbroad and not proportionate to the needs of the case or the Motion. TEG, however, is entitled to this information as it is directly relevant to various claims at issue in this litigation and Max's copyright and trade secrets claims. Max's offer to produce a list of only its software developers is insufficient as it could potentially leave out individuals who may affect Max's ability to prove the elements of its multiple claims. Moreover, as noted above, Max requested information related to all users and all developers makes objecting to this request a demonstration of a double standard. Finally, as Max argued in response to similar objections made by TEG, Max is not a large company, and the list of potential individuals cannot be so large as to make this RPD unduly burdensome. This issue is particularly relevant to the extent Max has used contractors located outside the United States.



August 2, 2024
Page 8

                Respectfully submitted,

                BEAN, KINNEY & KORMAN, P.C.

                *Richard D. Kelley*

                Richard D. Kelley
                *Counsel for Triangle Experience Group, Inc.*

                **SRIPLAW**

                */s/ Joel Rothman*

                Joel B. Rothman
                *Counsel for Max Minds, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **MAX MINDS, LLC,** | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) Case No.: 1:24-cv-00779-JPH-MG |
| **TRIANGLE EXPERIENCE GROUP, INC.,** *et al*, | ) ) ) ) |
| *Defendants.* | ) ) |

DECLARATION OF NICK FERRARA

I, Nick Ferrara, declare as follows:

1. I am a senior IT litigation consultant employed by DisputeSoft, an independent consulting firm in North Bethesda, Maryland specializing in software dispute consulting, e-discovery and computer forensics. I have been retained by Bean Kinney & Korman PC, counsel for Defendant Triangle Experience group, Inc. through DisputeSoft as an expert in connection with this case.

2. I have approximately 20 years' experience in the information technology field, including consulting work, IT management, staffing, and systems administration. While at DisputeSoft, I have consulted on more than 100 matters and have been engaged as an expert in state, national, and international jurisdictions. I have testified both in U.S. federal courts and before the American Arbitration Association.

3. My experience as a consultant at DisputeSoft includes in-depth technical analysis of software projects, source code, and IT systems for clients across numerous industries, including government, finance, health care, pharmaceutical, energy production, insurance, construction,

TEG
Exh. A

advertising, transportation, and retail. I have conducted dozens of code reviews of computer programs and web solutions written in numerous programming languages and have performed source code comparisons in numerous cases involving claims of copyright infringement and trade secret misappropriation.

4. In addition to my work as an expert for DisputeSoft, I serve as DisputeSoft's Director of Software Development, a role in which I am responsible for the management and development of complex software projects, including work in software architectural design, requirements elaboration, software development, configuration management, testing and quality control, and implementation. As a result of my work, both as an engineer and consultant, I am thoroughly familiar with current standards, practices, and trends in the software development industry.

5. I am a certified computer forensics examiner, holding the "EnCase Certified Examiner" ("EnCE") certification, a well-known forensics certification widely used by law enforcement and private entities who conduct investigations and proffer testimony in a court setting. As a certified forensics examiner, I have received detailed training in how computer systems store and manage data and how such data is analyzed.

6. I understand from counsel that the parties are currently in dispute over production of one or more source code repositories containing Plaintiff's source code. For reference, a "source code repository" is a database that tracks all changes made to a set of source code files over time, including details such as what the changes were, who made the changes, and when.

7. When a developer makes a change to the files in a source code, they typically include a short description known as a "commit message." Typically commit messages may explain the nature of certain changes, identify new features that have been added, and list defects that have been remediated.

2

8. I understand that at issue in the parties' dispute is the nature of who developed the source code. "Source code development" typically describes a set of activities used to create software, including (1) identifying what the requirements are for the software ("requirements elaboration"), (2) planning how the software will be constructed ("design"), (3) writing source code ("construction"), (4) ensuring that the software is generally free of defects and meets the agreed upon requirements ("testing"), and (5) delivery to a customer ("implementation").

9. To the extent that there is evidence that Defendant contributed to the development of Plaintiff's software, *e.g.*, in identifying requirements, planning designs, directing defects to be fixed, etc., commit messages in Plaintiff's repositories could provide evidence of these activities.

10. Further, I understand from counsel that Defendant contends that they provided Plaintiff with initial ideas and design as to how the software at issue in this case should be designed and operated. Production of Plaintiff's source code repositories would enable this assertion to be tested, as source code repositories allow any specific version to be extracted for analysis.

11. Finally, I understand from counsel that Defendant contends that Plaintiff may have misappropriated source code from a former employer to create early versions of the software at issue in this case. If so, again, production of Plaintiff's source code repositories would enable this assertion to be tested. Specifically, the history of early changes to the source code files in the repository could be subjected to expert analysis in order to reach a conclusion as to whether this assertion has merit.

12. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of August 2024, in North Bethesda, MD.

*Nick Ferrara*
_____
Nick Ferrara

3