UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

CASE NO.: 1:24-cv-00779-JPH-MKK

MAX MINDS, LLC,

        Plaintiff,

v.

TRIANGLE EXPERIENCE GROUP, INC.,
ROBERT EDWARD CLARE, JEFFREY
MASE, KEVIN G MULLICAN and JOHN
DOES 1-10,

        Defendants.

## OPPOSITION TO TEG'S MOTION FOR RECONSIDERATION OF DISCOVERY ORDER

Plaintiff MAX MINDS, LLC by and through its undersigned counsel, opposes the motion filed by Triangle Experience Group, Inc. (ECF 83) to reconsider the Magistrate Judge's discovery order entered at ECF 81 that modified in part the Court's discovery order entered at ECF 74, and states as follows:

### I.    BACKGROUND

We are back before the Court on TEG's request for production number 6 that requests "Native copies of all source code repositories containing source code for the Software, organized from earliest to latest version." The definition of "Software" in TEG's requests is

> The software that is the subject of the Complaint, sometimes referred to as *'Alleo,' 'Haptic,'* or *'Haptic Federal,'* from its original development in or around January 2019 and continuing to the present, including all iterations, derivations, and/or versions. The term *'Software'* should be read broadly to encompass not only the specific versions of the software in which Max registered a copyright as specified in the Complaint, but also all derivative works within the meaning of the Copyright Act.

The Court heard argument from the parties at the hearing on August 8, 2024, and the transcript of the hearing in filed in the record at ECF 72.

The Court's decision at ECF 74 noted that Max's software was "[i]nitially designed under the umbrella of Haptic source code, [the] two products have since branched off: (1) Alleo for commercial users; and (2) Haptic Federal for government users." (ECF 74 at 4). The Court raised concern in its Order that "TEG's Software definition is too broad. Max's definition is: "the 'Haptic Federal On-Premise Version, Expected Release Date: April 6, 2021' referenced in the SCLA including in Exhibit A thereto. Furthermore, the term 'Software' should be read broadly to encompass not only the specific 'Haptic Federal On-Premise Version, Expected Release Date: April 6, 2021,' but also all software in which Max has registered a copyright listed in the table below, as well as all Derivative Works of the Software created by or on behalf of TEG." (ECF 74 at 5). And in response, "TEG argue[d] it is not limited to Max's definition and that its claims and defenses encompass the Alleo software, as this software originates from the Haptic source code." (Id.)

Ultimately, the Court concluded in its discovery order at ECF 74 that "[t]his determination is difficult for the Court to make at this stage, where TEG has yet to formally file its claims and defenses and is instead building them. The Court believes TEG's relevancy argument is credible at this stage and will not limit its definition of Software. TEG's Request No. 6 is GRANTED."

After the discovery order was issued, Max went back and assessed the burden it faced of producing, without any limitation, "[n]ative copies of all source code repositories containing source code for the Software, organized from earliest to latest version." Max determined the burden was massive and significantly outweighs the relevancy of "all source code repositories".

Therefore, at ECF 76, Max filed a motion for clarification or modification of the Court's Discovery Order. The motion was supported by the declaration of Senior Software Developer Robert Simon filed at ECF 76-2, and a sealed declaration listing ninety one (91) software source code repositories that Max identified after the hearing filed at ECF 88.

As the declaration of Mr. Simon detailed, Max determined that only a few of the source code repositories he identified were relevant to the Haptic Federal source code at issue and the issues of copyright validity in this case. Meanwhile, Mr. Simon's declaration also explained the cost and risk associated with producing "all source code repositories" to TEG—even under the protective order—and that these costs and risk far outweighed any relevancy those repositories have to Max's claims. (ECF 76-2).

Max also explained that the interest of proportionality—a central requirement of Rule 26 since the last major revisions to the discovery rules in 2015—is not served by TEG's unlimited definition of software and that definition results in production that is disproportionate to the needs of the case. Mr. Simon explained that the Haptic Federal software was "forked" or "branched" off from development effective December 21, 2021, and that the later Alleo branches have little if anything to do with Haptic Federal. Mr. Simon also explained that the only relevant source code repositories are the four repositories listed in his chart numbered 5 ("haptic-admin"), 6 ("haptic-backend"), 7 ("haptic-client"), and 21 ("haptic_demo"), and that only portions of those repositories that contained the revision history of the Haptic Federal main branch would be necessary for TEG to review in this case.

## II.    THE COURT'S MODIFICATION ORDER

On September 20, 2024, the Court issued its Order at ECF 81 modifying its prior order at ECF 74. The Court's Order "credit[ed] Max's representation that the entire 91 repositories are

disproportional and not sufficiently relevant to TEG' claims, as well as the potential harm in full disclosure of these repositories. The Court reserves the right to modify this Order and enlarge the scope of TEG's Request for Production No. 6." (ECF 81 at 2). The Court ordered a production consistent with Max's representations in the sworn declaration of Mr. Simon. The Court further agreed that the disclosures "shall be performed in a controlled environment on a computer unconnected to the internet and disconnected from a printer or other means of copying code, and where the ability to view the code on a monitor was limited to a third-party expert with no relationship to TEG and who has signed the protective order." (ECF 81 at 2).

### III. THE MOTION FOR RECONSIDERATION

On September 23, 2024, TEG filed its motion for reconsideration at ECF 83. Max will not be reviewing the motion in every gory detail here. However, it is important to understand that TEG betrays fundamental misunderstandings about the nature of this case in its motion.

The introduction contains the following statement:

> The developmental evolution of this software, as evidenced through all the source code repositories since the parties began working together, will demonstrate that (i) Haptic was not, as Max suggests, an independently created idea, but was instead taken from prior software that TEG had separately paid for; (ii) TEG is a co-developer, co-owner and co-author of the source code and software at issue, and (iii) that TEG gave Mr. Fischer and Max the necessary information, designs, architecture, requirements, source code, instructions and other copyrightable essence to envision and create the very software at issue in this case.

(ECF 83 at 1-2).

What TEG proposes to demonstrate by obtaining all of Max's source code, at incredible risk to Max, is simply **not relevant to Max's copyright infringement claims.**

*First,* copyright does not protect "an independently created idea." In fact, it cannot protect ideas at all, because the Copyright Act expressly provides that "[i]n no case does

copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

*Second*, the copyrightable authorship Max claims in Haptic Federal concerns the four registered copyrights attached to the Complaint as Exhibits 1-4. Those are:

| Title of Work | Registration Number | Effective Date | Certificate of Registration |
|---|---|---|---|
| Haptic Version 1.2.21.1 | TXu 2-425-362 | April 19, 2024 | Complaint, Ex. 1 |
| Haptic Version 1.2.125 | TXu 2-421-490 | April 2, 2024 | Complaint, Ex. 2 |
| Haptic Version 3.1.21.4 | TXu 2-419-714 | March 21, 2024 | Complaint, Ex. 3 |
| Haptic Version 3.1.21.8 | TXu 2-419-718 | March 21, 2024 | Complaint, Ex. 4 |

Brandon Fischer, the CEO of Max, explains in his declaration accompanying this opposition ("Fischer Decl."), that that:

> The entire Haptic Federal source code was written originally by Max employees or independent contractors. All the authorship of Haptic Federal is owned by Max. No one working for TEG ever wrote any of the Haptic Federal source code.

Fischer Decl. ¶ 14. Mr. Fischer explains that the allegations made on information and belief by TEG's owner Robert Clare in his declaration about TEG's alleged contributions to the development of the Haptic Federal source code are false, unsupported, unsupportable, and pure speculation. Fischer Decl. ¶ 16.

*Third*, TEG's allegations that TEG gave Max "necessary information, designs, architecture, requirements, source code, instructions and other copyrightable essence to envision and create the very software at issue in this case" are both irrelevant and false for the same reasons as Max's first point and second point above. There is no such thing as "copyrightable

essence." Copyrightable authorship requires fixation of original, creative expression in a tangible medium of expression. 17 U.S.C. § 102(a).

As Mr. Fischer explains in his declaration, Mr. Ferrara's claimed need to review all Max's source code is based on nothing more than speculation. Mr. Ferrara's speculations are contradicted by Mr. Fischer's firsthand knowledge of Max's software development since the company's founding. Mr. Fischer denies that Max "misappropriated source code from a former employer to create early versions of the software at issue in this case." Fischer Decl. ¶¶ 12-13. Mr. Fischer confirms that all of Max's software is original to Max and none of it was copied from my former employer. *Id.*

## IV. THERE IS NO VALID LEGAL BASIS TO DISCOVER ALL OF MAX'S VALUABLE AND CONFIDENTIAL SOURCE CODE FOR ALL ITS PRODUCTS

TEG's expert Mr. Ferrara appears not to understand that this is a copyright case and that principles applicable to copyright apply. Mr. Ferrara submitted a declaration claiming he needs to determine whether TEG "provided Plaintiff with initial ideas and design as to how the software at issue in this case should be designed and operated." Declaration of Nick Ferrara ¶ 10 (ECF 83-2). But how software should be designed and operated is not protectible copyrightable authorship in source code. Copyright protects the authorship in the source code itself. Whether TEG "contributed to the development of Plaintiff's software" is not a consideration if, as Mr. Fischer swears in his declaration, "[n]o one working for TEG ever wrote any of the Haptic Federal source code." Fischer Decl. ¶ 14.

Mr. Ferrara's claim that he needs to "stand[] up the software" in order to determine whether Max is entitled to a preliminary injunction makes no sense. TEG's claim that it is a co-author of a joint work because it contributed "copyrightable essence"—whatever that means—is simply not enough.

A "joint work" is defined as a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole. *Erickson v. Trinity Theatre, Inc*., 13 F.3d 1061, 1063 (7th Cir. 1994), citing 17 U.S.C. § 101. The Seventh Circuit follows the copyrightable subject matter test for joint works. *Erickson v. Trinity Theatre, Inc*., 13 F.3d 1061, 1066 (7th Cir. 1994). The test has two prongs: (1) the contribution of each joint author must be copyrightable (i.e., each contribution must represent "original expression that could stand on its own as the subject matter of copyright"); and (2) "the parties must have intended to be joint authors at the time the work was created." *Id.* (internal quotations omitted); *Vaughn v. Kelly*, No. 06 C 6427, 2008 U.S. Dist. LEXIS 144383, at *7-8 (N.D. Ill. Mar. 31, 2008).

Federal Rule of Civil Procedure 26(b) states that "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Allowing TEG to obtain discovery of all of Max's source code without any legal basis for the theory underlying TEG's discovery goes well beyond the bounds of Rule 26.

To the contrary, limiting disclosure to the versions numbered 5 ("haptic-admin"), 6 ("haptic-backend"), 7 ("haptic-client"), and 21 ("haptic_demo") as the Court did in its clarification order is proportional and relevant because the lineage of the source code that TEG possesses and that it claims it is a co-owner of can only be traced to those four repositories.

As previously noted, other district courts faced with similar requests for production of "all source code" have refused to order "all source code" produced and instead limited production of source code to only that which is relevant and proportional to the needs of the case. *Uniloc USA, Inc. v. Apple Inc*., No. 18-cv-00362-PJH (LB), 2018 U.S. Dist. LEXIS 72464,

at *5-7 (N.D. Cal. Apr. 30, 2018) (Rejecting request for disclosure of "all source code," ordering a limited disclosure of source code, and collecting cases where "Courts in this district have rejected discovery requests for source code where the requesting party has not shown why the code is relevant to claims or defenses or the request is overbroad and disproportionate to the case."); *ACI Worldwide Corp. v. Mastercard Techs.,* LLC, No. 8:14CV31, 2016 U.S. Dist. LEXIS 149037 (D. Neb. Oct. 27, 2016) (refusing to order production of "the entire source code" as "not proportional to the needs of the case [and] would include information irrelevant to ACI's claims.); *LoganTree LP v. Garmin Int'l, Inc.,* 339 F.R.D. 171, 182 (D. Kan. 2021)(refusing to order production of source code where the request for production "encompasses functionalities in Garmin devices that are not accused of infringement" and therefore "they are not relevant."); *OCR Sols. v. Charactell, Inc.*, No. 6:17-cv-709-Orl-28DCI, 2018 U.S. Dist. LEXIS 245700, at *7 (M.D. Fla. July 19, 2018)("Plaintiff has shown no good reason why the entire source code for idCliQ and FormStorm should be produced. Moreover, the Court finds that such discovery is not proportional to the needs of the case.")

Max's claim of potential injury from disclosure must also be considered. See *MGP Ingredients, Inc. v. Mars, Inc.,* 245 F.R.D. 497, 500 (D. Kan. 2007) (the court balances the need for discovery against the claim of potential injury from disclosure). Broad and unrestrained disclosure of Max's source code puts Max at great risk. TEG already has some of Max's source code, albeit a limited amount. But TEG is not what it once was; TEG is now a competitor. Giving a competitor access to all of Max's source code the vast majority of which is not relevant to TEG's claims provides a greater opportunity for that source code to be mishandled and misused. Giving TEG access to all of Max's source code gives TEG all the necessary information to commercialize Max's software within the Department of Defense where it will be

treated as **CLASSIFIED** and Max will never be able to "put the genie back in the bottle." Under similar circumstances, other district courts have limited source code production to protect the source code producing party. See, *LoganTree,* 339 F.R.D. at 182 ("This is the crux of Garmin's position—namely, that LoganTree has requested a broad scope of printouts that are not relevant and also put Garmin at an increased risk of disclosure because producing printed copies provides a greater opportunity for the printouts to be mishandled. And, here, the entire source code modules provide all the necessary information for a competitor to plug-and-play Garmin's proprietary technology. Balancing the potential harm to Garmin against a thin showing of relevance also weighs in favor of limiting production.")

The threat to Max from TEG's unrestrained access to Max's source code is real. As counsel for TEG explained at the hearing on the motion to compel, TEG is owned and staffed by former members of "Delta Force," a highly secretive unit of the miliary on which the Department of Defense tightly controls information and usually refuses to comment publicly on the secretive unit and its activities. See https://en.wikipedia.org/wiki/Delta_Force citing Haney, Eric L. (2002), "Inside Delta Force," New York: Delacorte Press. TEG employees have security clearances. Counsel for TEG has indicated that its operations are classified. If Max's source code is obtained by TEG, there may be nothing that Max can do to reverse the damage this disclosure would cause.

Max has real customers for its Alleo software that was branched or forked from the Haptic Federal software years ago. Production of all Max's software source code would give TEG not just "the keys to the castle," but unfettered access to the castle under the protection of secrecy and classified operations sponsored by the Department of Defense. It would be even worse than what was sought by the plaintiff in *Waymo LLC v. Uber Technologies, Inc.*, No. C

17-00939 WHA, 2017 U.S. Dist. LEXIS 173476, 2017 WL 6883929 (N.D. Cal. Oct. 19, 2017), where the plaintiff requested production of all of Uber's current source code, and the court denied Waymo's request as "profoundly overbroad" and "untethered," holding that Waymo had to make a showing of the relevance of the source code rather than "pawing through Uber's source code without limitation." *Id.*

### V.   THE COURT'S ORDER WAS NOT CLEARLY ERRONEOUS AND THEREFORE THE MOTION SHOULD BE DENIED.

A motion for reconsideration of a discovery order is even more limited than one for reconsideration of a substantive ruling, as discovery rulings involve matters of discretion. Overturning a discovery order requires a showing that the ruling was "clearly erroneous." *Hassebrock v. Bernhoft*, 815 F.3d 334, 340 (7th Cir. 2016); *Stagger v. Experian Info. Sols., Inc.*, No. 21 C 2001, 2021 U.S. Dist. LEXIS 228355, at *2-4 (N.D. Ill. Nov. 29, 2021); *Berkeley*IEOR v. Teradata Operations, Inc.*, 2020 U.S. Dist. LEXIS 160208, 2020 WL 5230744, at *1 (N.D. Ill. 2020).

The Court's order was reasonable and certainly not clearly erroneous. By prefacing its decision to limit Max's need to produce 91 software repositories with the phrase "[a]t this time," the Court was signaling that if at a later time TEG can demonstrate relevance and need for other source code production, the Court would consider it. However, at this point in the process, it simply cannot be said that "clearly erroneous" applies to the Court's well reasoned order, especially after the Court explained at the status conference that followed the order that production of source code could be an iterative process if necessary.

"Motion practice is not a series of trial balloons where you [submit] what you think is sufficient, [you] see how it flies, and if it does not, you go back and try again. If that is the way the system worked we would have motion practice going on forever." *Hansel 'N Gretel Brand,*

*Inc. v. Savitsky*, 1997 U.S. Dist. LEXIS 17615, 1997 WL 698179, *2 (S.D.N.Y. 1997). We are before the Court on a motion for preliminary injunction. The discovery should be limited to that which is necessary for TEG to defend the motion. Whether the other source code repositories are relevant for other reasons is not the issue here. They are not relevant to the pending motion and that is what matters.

The motion for reconsideration should be denied.

Dated: October 1, 2024                             Respectfully submitted,

*/s/ J. Campbell Miller*
J. CAMPBELL MILLER
Bar Number: 38279-49
campbell.miller@sriplaw.com

**SRIPLAW, P. A.**
231 South Rangeline Road
Suite H
Carmel, Indiana 46032
332.600.5599 – Telephone
561.404.4353 – Facsimile

and

JOSEPH A. DUNNE (*Pro Hac Vice*)
joseph.dunne@sriplaw.com

**SRIPLAW, P. A.**
175 Pearl Street
Third Floor
Brooklyn, New York 11201
929.200.8446 – Telephone
561.404.4353 – Facsimile

JOEL B. ROTHMAN (*Pro Hac Vice*)
joel.rothman@sriplaw.com

**SRIPLAW, P. A.**
21301 Powerline Road
Suite 100
Boca Raton, Indiana 33433

11
**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ INDIANA ◆ TENNESSEE ◆ NEW YORK ◆ TEXAS

561.404.4335 – Telephone
561.404.4353 – Facsimile

and

PHILIP D SEVER
Bar Number: 25384-49
phil@landownerattorneys.com

**SEVER, STORY, WALKER**
742 South Rangeline Road
Carmel, IN  46032
317 9611202 - Telephone

*Counsel for Plaintiff Max Minds, LLC*