UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

CASE NO.: 1:24-cv-00779-JPH-MG

MAX MINDS, LLC,

        Plaintiff,

v.

TRIANGLE EXPERIENCE GROUP, INC.,
ROBERT EDWARD CLARE, JEFFREY
MASE, KEVIN G MULLICAN and JOHN
DOES 1-10,

        Defendants.

## SURREPLY TO TEG'S REPLY EVIDENCE ON MOTION FOR RECONSIDERATION OF DISCOVERY ORDER

Plaintiff MAX MINDS, LLC by and through its undersigned counsel, files this surreply to address the new evidence filed with the reply filed by Triangle Experience Group, Inc. (ECF 96). The new evidence is contained in the Declaration of Robert E. Clare, Jr. signed October 8, 2024 (ECF 96-1), and the Declaration of Nick Ferrara signed on October 8, 2024 (ECF 96-2).

### I.    SECOND DECLARATION OF CLARE (ECF 96-1)

Mr. Clare's declaration fails to address any of the issues raised in either the motion to compel or the motion for reconsideration. The only reason to address it here is the following statements in paragraph 16:

> 16. From the foregoing, it is clear that TEG was a co-developer and is a co-owner of the source code and the software at issue in this case. My understanding is that the various source code repositories in Max's possession are essential to demonstrate that TEG is a co-owner of Max's alleged trade secrets, source code, and software and did not infringe any of Max's alleged copyrights.

Mr. Clare's statements in paragraph 16 are conclusory. None of the factual conclusions Mr. Clare makes in his declarations are actually supported by facts. The legal conclusions Mr. Clare reaches—such as who is a "co-owner of the software"—are ones for the Court to make.

With respect to the "source code" for which Max claims copyright protection, that source code is an original work of authorship of Max. Max previously noted that copyrightable authorship requires fixation of original, creative expression in a tangible medium of expression. 17 U.S.C. § 102(a). Nothing in Mr. Clare's declaration or anywhere else in evidence supports the conclusion Mr. Clare reaches that "TEG was a co-developer and is a co-owner of the source code" because no one working for TEG ever authored any of Max's source code.

With respect to the conclusory statement that "TEG is a co-owner of Max's alleged trade secrets," that statement is unsupported and unsupportable. Mr. Clare appears to believe that trade secrets are property rights like copyrights and patents; trade secrets are not property rights. "The suggestion that one has a right to exclude others from the use of his trade secret because he has a right of property in the idea has been frequently advanced and rejected." Restatement of the Law, Torts § 757, cmt. b. Unlike copyright, the existence of a trade secret depends not on original creation and fixation by the author. Rather, trade secrets are a possessory right coupled with precautionary measures concerning the secrecy of the material protected. *Id*.

According to the DTSA, "the term 'owner', with respect to a trade secret, means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4). Ownership of a trade secret—like Max's ownership of its trade secret source code—gives a plaintiff advantages over competitors like TEG. See e.g., *Kreatio Software Priv. Ltd. v. IDG Commc'ns, Inc.,* Civil Action No. 1:23-cv-10273-IT, 2024 U.S. Dist. LEXIS 51279, at *12 (D. Mass. Mar. 22, 2024) (denying motion to dismiss software

trade secrets misappropriation claim because the complaint "adequately demonstrates the 'advantage' that ownership of [the software code] gave [the plaintiff] over competitors.")

All the facts this Court has seen show that Max provided its trade secret source code to TEG, not the other way around. Therefore, all the improper use or misuse of trade secret source code alleged herein was by TEG of Max's trade secrets. Max intends to prove that Max owns "rightful legal or equitable title to" the trade secret misappropriated by TEG. That is the point. Mr. Clare's second declaration should be ignored.

### II.    SECOND DECLARATION OF FERRARA (ECF 96-1)

Mr. Ferrara's second declaration appears to duplicate his prior declaration except in this new declaration he makes more vocal his need to be able to use "software to programmatically compare [] sets of source code files," just like Max's expert. (ECF 96-2 at 8). This request is reasonable and does not conflict with Max's demonstrated need to maintain the security of Max's source code and prevent misuse of that code while in the hands of TEG's expert.

It is typical for software experts to require the use of software to compare sets of source code files. It speeds the process. That is why Max's expert used his software to accomplish his tasks to prepare his expert report. Max does not object to Mr. Ferrara using his chosen comparison software in this case.

Max's counsel has prior experience working with experts to review software on secure computers unconnected to the internet under exactly these circumstances. Max anticipated that TEG's expert would propose the use of certain software. Max anticipated that the parties would discuss and agree upon the use of that software. Max anticipated that the parties would then agree to allow TEG's expert to load the software on the secure computer to be used for the source code review. Thereafter the code could be reviewed by TEG's expert.

In counsel's experience, each source code inspection is different. There may be other issues that need to be resolved. Counsel for TEG refuses to raise these issues with the undersigned for reasons unknown.

TEG's counsel never bothered to meet and confer with Max on this or many other issues. That is unfortunate. Max anticipated that there were numerous ways to facilitate TEG's expert's review of Max's source code. But TEG never bothered to meet and confer on these issues. Instead, we bombard the Court with paper unnecessarily. Max hopes this can stop soon.

The bottom line is that nothing in Mr. Ferrara's new declaration changes the innate sensitivity of the source code being disclosed and Max's demonstrated need to closely control to whom and how that disclosure is made.

For the reasons already stated, the motion for reconsideration should be denied.

Dated: October 9, 2024   Respectfully submitted,

/s/ J. Campbell Miller
J. CAMPBELL MILLER
Bar Number: 38279-49
campbell.miller@sriplaw.com

**SRIPLAW, P. A.**
231 South Rangeline Road
Suite H
Carmel, Indiana 46032
332.600.5599 – Telephone
561.404.4353 – Facsimile

and

JOSEPH A. DUNNE (*Pro Hac Vice*)
joseph.dunne@sriplaw.com

**SRIPLAW, P. A.**
175 Pearl Street
Third Floor
Brooklyn, New York 11201

929.200.8446 – Telephone
561.404.4353 – Facsimile

JOEL B. ROTHMAN (*Pro Hac Vice*)
joel.rothman@sriplaw.com

**SRIPLAW, P. A.**
21301 Powerline Road
Suite 100
Boca Raton, Florida 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

and

PHILIP D SEVER
Bar Number: 25384-49
phil@landownerattorneys.com

**SEVER, STORY, WALKER**
742 South Rangeline Road
Carmel, IN  46032
317.961.1202 - Telephone

*Counsel for Plaintiff Max Minds, LLC*