# Exhibit 9

# Source Code License Agreement

This Source Code License Agreement (this "**Agreement**"), effective as of March 30, 2021 (the "**Effective Date**"), is by and between **MAX MINDS, LLC**, an Indiana limited liability company with offices located at 12400 North Meridian Street, Suite 175, Carmel, Indiana 46032 ("**Licensor**") and **TRIANGLE EXPERIENCE GROUP INC**, a corporation organized and existing under the laws of the Commonwealth of Virginia with offices located at 11182 Hopson Road, Ashland, VA 23005 ("**Licensee**"). Licensor and Licensee may be referred to herein collectively as the "**Parties**" or individually as a "**Party**."

WHEREAS, Licensor has developed the Software described in **Exhibit A** attached hereto; and

WHEREAS, Licensee desires to obtain a license to use the Software Source Code (defined below) for its internal business purposes, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Definitions.

    (a) "**Authorized User**" means an employee or other end user of Licensee who Licensee permits to access and use the Source Code for the Software and/or Documentation pursuant to Licensee's license hereunder.

    (b) "**Documentation**" means Licensor's user manuals, handbooks, and installation guides relating to the Software provided by Licensor to Licensee either electronically or in hard copy form.

    (c) "**Software**" means the product described in **Exhibit A**, including any Updates provided to Licensee pursuant to this Agreement.

    (d) "**Source Code**" means the source code for the Software and any and all information and materials concerning the source code that Licensor delivers or discloses to Licensee and all updates of the source code.

    (e) "**Updates**" means any updates, bug fixes, patches, or other error corrections to the Source Code that Licensor generally makes available to all licensees of the Source Code.

2. License.

    (a) License Grant. Subject to and conditioned on Licensee's payment of Fees and compliance with all the terms and conditions of this Agreement, Licensor hereby grants Licensee a non-exclusive, non-sublicensable, and non-transferable (except in compliance with Section 12(g)) license during the Term to: (i) use the Source Code for the Software solely for Licensee's internal business purposes; and (ii) use and make a reasonable number of copies of the Documentation solely for Licensee's internal business purposes in connection with Licensee's use of the Source Code. Only Authorized Users are permitted to access and use the Source Code.

    (b) Use Restrictions. Licensee shall not use the Source Code or Documentation for any purposes beyond the scope of the license granted in this Agreement. Without limiting the

foregoing and except as otherwise expressly set forth in this Agreement, Licensee shall not at any time, directly or indirectly: (i) copy, modify, or create derivative works of the Source Code or the Documentation, in whole or in part; (ii) rent, lease, lend, sell, sublicense, assign, distribute, publish, transfer, or otherwise make available the Source Code or the Documentation to any third party; (iii) remove any proprietary notices from the Source Code or the Documentation; or (iv) use the Source Code in any manner or for any purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law.

(c) Reservation of Rights. Licensor reserves all rights not expressly granted to Licensee in this Agreement. Except for the limited rights and licenses expressly granted under this Agreement, nothing in this Agreement grants, by implication, waiver, estoppel, or otherwise, to Licensee or any third party any intellectual property rights or other right, title, or interest in or to the Source Code or Software.

(d) Delivery. Licensor shall deliver the Source Code and Documentation electronically, on tangible media, or by other means, to Licensee following the Effective Date. Risk of loss of any tangible media on which the Source Code is delivered will pass to Licensee on delivery to carrier.

3. Licensee Responsibilities. Licensee is responsible and liable for all uses of the Source Code and Documentation resulting from access provided by Licensee, directly or indirectly, whether such access or use is permitted by or in violation of this Agreement. Without limiting the generality of the foregoing, Licensee is responsible for all acts and omissions of Authorized Users, and any act or omission by an Authorized User that would constitute a breach of this Agreement if taken by Licensee will be deemed a breach of this Agreement by Licensee. Licensee shall take reasonable efforts to make all Authorized Users aware of this Agreement's provisions as applicable to such Authorized User's use of the Source Code, and shall cause Authorized Users to comply with such provisions.

4. Fees and Payment.

(a) Fees. Licensee shall pay Licensor the fee(s) ("**Fee(s)**") set forth in **Exhibit A** without offset or deduction. Licensee shall make all payments hereunder in US dollars on or before the due date set forth in **Exhibit A**. If Licensee fails to make any payment when due, in addition to all other remedies that may be available, Licensor may prohibit access to the Source Code until the past due Fee(s) has (have) been paid, without incurring any obligation or liability to Licensee or any other person by reason of such prohibition of access to the Source Code.

(b) Taxes. The Fee(s) payable by Licensee under this Agreement are exclusive of taxes and similar assessments. Licensee is responsible for all sales, use, and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental or regulatory authority on any amounts payable by Licensee hereunder, other than any taxes imposed on Licensor's income.

(c) Auditing Rights and Required Records. Licensee agrees to maintain complete and accurate records regarding use of the Source Code by Licensee and its Authorized Users during the Term and for a period of two (2) years after the termination or expiration of this Agreement. Licensor may, at its own expense, on reasonable prior notice, periodically inspect and audit Licensee's records with respect to matters covered by this Agreement. Such inspection and auditing rights will extend throughout the Term of this Agreement and continue for a period of two (2) years after the termination or expiration of this Agreement.

5. Support. This Agreement does not entitle Licensee to any support for the Source Code.

6. Confidential Information. From time to time during the Term, Licensor may disclose or make available to Licensee information about its business affairs, products, the Software, the Source

Code, Documentation, confidential intellectual property (including trade secrets), third-party confidential information, and other sensitive or proprietary information, whether orally or in written, electronic, or other form or media, whether or not marked, designated or otherwise identified as "confidential" (collectively, "**Confidential Information**"). Confidential Information does not include information that, at the time of disclosure is: (a) in the public domain; (b) known to Licensee at the time of disclosure; (c) rightfully obtained by Licensee on a non-confidential basis from a third party; or (d) independently developed by Licensee without access to the Source Code as evidenced by documentation. Licensee shall not disclose Confidential Information to any person or entity, except to Licensee's Authorized Users who have a need to know the Confidential Information for Licensee to exercise its rights or perform its obligations hereunder. Notwithstanding the foregoing, Licensee may disclose Confidential Information to the limited extent required in order to comply with the order of a court or other governmental body, or as otherwise necessary to comply with applicable law, provided that Licensee shall first have given written notice to Licensor and made a reasonable effort to obtain a protective order. On the expiration or termination of the Agreement, Licensee shall promptly return to Licensor all copies, whether in written, electronic, or other form or media, of the Confidential Information, or destroy all such copies and certify in writing to Licensor that such Confidential Information has been destroyed. Licensee's obligations of non-disclosure with regard to Confidential Information are effective as of the Effective Date and will expire three (3) years from the date first disclosed to Licensee; provided, however, with respect to any Confidential Information that constitutes a trade secret (as determined under applicable law), such obligations of non-disclosure will survive the termination or expiration of this Agreement for as long as such Confidential Information remains subject to trade secret protection under applicable law.

7. Intellectual Property Ownership; Feedback.

(a) Licensee acknowledges that, as between Licensee and Licensor, Licensor owns all rights, title, and interests, including all intellectual property rights, in and to the Software, Source Code and Documentation.

(b) If Licensee or any of its employees or other Authorized User sends or transmits any communications or materials to Licensor by mail, email, telephone, or otherwise, suggesting or recommending changes to the Software, Source Code or Documentation, including without limitation, new features or functionality relating thereto, or any comments, questions, suggestions, or the like ("**Feedback**"), Licensor is free to use such Feedback irrespective of any other obligation or limitation between the Parties governing such Feedback. Licensee hereby assigns to Licensor on Licensee's behalf, and on behalf of its Authorized Users, all rights, title, and interests in the Feedback, and Licensor is free to use, without any attribution or compensation to any party, any ideas, know-how, concepts, techniques, or other intellectual property rights contained in the Feedback, for any purpose whatsoever, although Licensor is not required to use any Feedback.

8. Warranty Disclaimer. LICENSOR MAKES NO WARRANTY REGARDING THE SOFTWARE, SOURCE CODE OR DOCUMENTATION. THE SOFTWARE, SOURCE CODE AND DOCUMENTATION ARE PROVIDED "AS IS" AND LICENSOR HEREBY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE. LICENSOR SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT, AND ALL WARRANTIES ARISING FROM COURSE OF DEALING, USAGE, OR TRADE PRACTICE. LICENSOR MAKES NO WARRANTY OF ANY KIND THAT THE SOFTWARE, SOURCE CODE AND DOCUMENTATION, OR ANY PRODUCTS OR RESULTS OF THE USE THEREOF, WILL MEET LICENSEE'S OR ANY OTHER PERSON'S REQUIREMENTS, OPERATE WITHOUT INTERRUPTION, ACHIEVE ANY INTENDED RESULT, BE COMPATIBLE OR WORK WITH ANY SOFTWARE, SYSTEM OR OTHER SERVICES, OR BE SECURE, ACCURATE, COMPLETE, FREE OF HARMFUL CODE, OR ERROR FREE.

9. Indemnification.

(a) Licensor Indemnification.

(i) Licensor shall indemnify, defend, and hold harmless Licensee from and against any and all losses, damages, liabilities, and costs (including reasonable attorneys' fees) ("**Losses**") incurred by Licensee resulting from any third-party claim, suit, action, or proceeding ("**Third-Party Claim**") that the Source Code or Documentation infringes or misappropriates such third party's US intellectual property rights, provided that Licensee promptly notifies Licensor in writing of the claim, cooperates with Licensor, and allows Licensor sole authority to control the defense and settlement of such claim.

(ii) If such a claim is made or appears possible, Licensee shall permit Licensor, at Licensor's sole discretion, to (A) modify or replace the Source Code or Documentation, or component or part thereof, to make it non-infringing, or (B) obtain the right for Licensee to continue use. If Licensor determines that none of these alternatives is reasonably available, Licensor may terminate this Agreement, in its entirety or with respect to the affected component or part, effective immediately on written notice to Licensee.

(iii) This Section 9(a) will not apply to the extent that the alleged infringement arises from: (A) use of the Source Code in combination with data, software, hardware, equipment, or technology not provided by Licensor or authorized by Licensor in writing; (B) modifications to the Source Code not made by Licensor; or (C) use of any version other than the most current version of the Source Code or Documentation delivered to Licensee.

(b) <u>Licensee Indemnification</u>. Licensee shall indemnify, hold harmless, and, at Licensor's option, defend Licensor from and against any Losses resulting from any Third-Party Claim based on Licensee's, or any Authorized User's: (i) negligence or willful misconduct; (ii) use of the Source Code or Documentation in a manner not authorized or contemplated by this Agreement; (iii) use of the Source Code in combination with data, software, hardware, equipment or technology not provided by Licensor or authorized by Licensor in writing; (iv) modifications to the Source Code not made by Licensor; or (v) use of any version other than the most current version of the Source Code or Documentation delivered to Licensee, provided that Licensee may not settle any Third-Party Claim against Licensor unless such settlement completely and forever releases Licensor from all liability with respect to such Third-Party Claim or unless Licensor consents to such settlement, and further provided that Licensor will have the right, at its option, to defend itself against any such Third-Party Claim or to participate in the defense thereof by counsel of its own choice.

(c) <u>Sole Remedy</u>. THIS SECTION 9 SETS FORTH LICENSEE'S SOLE REMEDIES AND LICENSOR'S SOLE LIABILITY AND OBLIGATION FOR ANY ACTUAL, THREATENED, OR ALLEGED CLAIMS THAT THE SOFTWARE OR DOCUMENTATION INFRINGES, MISAPPROPRIATES, OR OTHERWISE VIOLATES ANY INTELLECTUAL PROPERTY RIGHTS OF ANY THIRD PARTY.

10. <u>Limitations of Liability</u>. IN NO EVENT WILL LICENSOR BE LIABLE UNDER OR IN CONNECTION WITH THIS AGREEMENT UNDER ANY LEGAL OR EQUITABLE THEORY, INCLUDING BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, AND OTHERWISE, FOR ANY: (a) CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, ENHANCED, OR PUNITIVE DAMAGES; (b) INCREASED COSTS, DIMINUTION IN VALUE OR LOST BUSINESS, PRODUCTION, REVENUES, OR PROFITS; (c) LOSS OF GOODWILL OR REPUTATION; (d) USE, INABILITY TO USE, LOSS, INTERRUPTION, DELAY OR RECOVERY OF ANY DATA, OR BREACH OF DATA OR SYSTEM SECURITY; OR (e) COST OF REPLACEMENT GOODS OR SERVICES, IN EACH CASE REGARDLESS OF WHETHER LICENSOR WAS ADVISED OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES OR SUCH LOSSES OR DAMAGES WERE OTHERWISE FORESEEABLE. IN NO EVENT WILL LICENSOR'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT UNDER ANY LEGAL OR EQUITABLE THEORY, INCLUDING BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, AND OTHERWISE EXCEED THE TOTAL

AMOUNTS PAID TO LICENSOR UNDER THIS AGREEMENT IN THE ONE YEAR PERIOD PRECEDING THE EVENT GIVING RISE TO THE CLAIM OR $10,000, WHICHEVER IS LESS.

11. <u>Term and Termination</u>.

    (a)    <u>Term</u>. The initial term of this Agreement begins on the Effective Date and, unless terminated earlier pursuant to any of the Agreement's express provisions, will continue in effect until <u>July 01, 2021</u> year from such date (the "**Initial Term**"). This Agreement will automatically renew for additional successive ninety (90) day term[s] unless earlier terminated pursuant to this Agreement's express provisions or either Party gives the other Party written notice of non-renewal at least thirty (30) days prior to the expiration of the then-current term (each a "**Renewal Term**" and together with the Initial Term, the "**Term**").

    (b)    <u>Termination</u>. In addition to any other express termination right set forth in this Agreement:

        (i)    Licensor may terminate this Agreement, effective on written notice to Licensee, if Licensee: (A) fails to pay any amount when due hereunder, and such failure continues more than five (5) days after Licensor's delivery of written notice thereof; or (B) breaches any of its obligations under this Agreement and such breach is incapable of cure or being capable of cure, remains uncured thirty (30) days after Licensor provides Licensee with written notice of such breach;

        (ii)    either Party may terminate this Agreement, effective immediately upon written notice to the other Party, if the other Party: (A) becomes insolvent or is generally unable to pay, or fails to pay, its debts as they become due; (B) files or has filed against it, a petition for voluntary or involuntary bankruptcy or otherwise becomes subject, voluntarily or involuntarily, to any proceeding under any domestic or foreign bankruptcy or insolvency law; (C) makes or seeks to make a general assignment for the benefit of its creditors; or (D) applies for or has appointed a receiver, trustee, custodian, or similar agent appointed by order of any court of competent jurisdiction to take charge of or sell any material portion of its property or business.

    (c)    <u>Effect of Expiration or Termination</u>. Upon expiration or earlier termination of this Agreement, the license granted hereunder will also terminate, and, without limiting Licensee's obligations under Section 6, Licensee shall cease using and delete, destroy, or return all copies of the Source Code and Documentation and certify in writing to the Licensor that the Source Code and Documentation has been deleted or destroyed. No expiration or termination will affect Licensee's obligation to pay all Fees that may have become due before such expiration or termination, or entitle Licensee to any refund.

    (d)    <u>Survival</u>. This Section 11(d) and Sections 1, 5, 6, 7, 8, 9, 10, and 12 survive any termination or expiration of this Agreement. No other provisions of this Agreement survive the expiration or earlier termination of this Agreement.

12. <u>Miscellaneous</u>.

    (a)    <u>Entire Agreement</u>. This Agreement, together with any other documents incorporated herein by reference and all related Exhibits, constitutes the sole and entire agreement of the Parties with respect to the subject matter of this Agreement and supersedes all prior and contemporaneous understandings, agreements, and representations and warranties, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements made in the body of this Agreement, the related Exhibits, and any other documents incorporated herein by reference, the following order of precedence governs: (a) first, this Agreement, excluding its Exhibits; (b) second, the Exhibits to this Agreement as of the Effective Date; and (c) third, any other documents incorporated herein by reference.

(b) <u>Notices</u>. All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each, a "**Notice**") must be in writing and addressed to the Parties at the addresses set forth on the first page of this Agreement (or to such other address that may be designated by the Party giving Notice from time to time in accordance with this Section). All Notices must be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), facsimile, or email (with confirmation of transmission) or certified or registered mail (in each case, return receipt requested, postage pre-paid). Except as otherwise provided in this Agreement, a Notice is effective only: (i) upon receipt by the receiving Party, and (ii) if the Party giving the Notice has complied with the requirements of this Section.

(c) <u>Force Majeure</u>. In no event shall Licensor be liable to Licensee, or be deemed to have breached this Agreement, for any failure or delay in performing its obligations under this Agreement, if and to the extent such failure or delay is caused by any circumstances beyond Licensor's reasonable control, including but not limited to acts of God, flood, fire, earthquake, explosion, war, terrorism, invasion, riot or other civil unrest, strikes, labor stoppages or slowdowns or other industrial disturbances, or passage of law or any action taken by a governmental or public authority, including imposing an embargo.

(d) <u>Amendment and Modification; Waiver</u>. No amendment to or modification of this Agreement is effective unless it is in writing and signed by an authorized representative of each Party. No waiver by any Party of any of the provisions hereof will be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Agreement, (i) no failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Agreement will operate or be construed as a waiver thereof and (ii) no single or partial exercise of any right, remedy, power, or privilege hereunder will preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

(e) <u>Severability</u>. If any provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability will not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

(f) <u>Governing Law; Submission to Jurisdiction</u>. This Agreement is governed by and construed in accordance with the internal laws of the State of Indiana without giving effect to any choice or conflict of law provision or rule that would require or permit the application of the laws of any jurisdiction other than those of the State of Indiana. Any legal suit, action, or proceeding arising out of or related to this Agreement or the licenses granted hereunder will be instituted exclusively in the federal courts of the United States in Indiana or the courts of the State of Indiana located in the City of Carmel and County of Hamilton, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.

(g) <u>Assignment</u>. Licensee may not assign or transfer any of its rights or delegate any of its obligations hereunder, in each case whether voluntarily, involuntarily, by operation of law or otherwise, without the prior written consent of Licensor. Any purported assignment, transfer, or delegation in violation of this Section is null and void. No assignment, transfer, or delegation will relieve the assigning or delegating Party of any of its obligations hereunder. This Agreement is binding upon and inures to the benefit of the Parties hereto and their respective permitted successors and assigns.

(h) <u>Export Regulation</u>. The Software may be subject to US export control laws, including the Export Control Reform Act and its associated regulations. Licensee shall not,

directly or indirectly, export, re-export, or release the Software to, or make the Software accessible from, any jurisdiction or country to which export, re-export, or release is prohibited by law, rule, or regulation. Licensee shall comply with all applicable federal laws, regulations, and rules, and complete all required undertakings (including obtaining any necessary export license or other governmental approval), prior to exporting, re-exporting, releasing, or otherwise making the Software available outside the US.

(i) Equitable Relief. Licensee acknowledges and agrees that a breach or threatened breach by Licensee of any of its obligations under Section 6 or Section 2(b), would cause the Licensor irreparable harm for which monetary damages would not be an adequate remedy and agrees that, in the event of such breach or threatened breach, the Licensor will be entitled to equitable relief, including a restraining order, an injunction, specific performance, and any other relief that may be available from any court, without any requirement to post a bond or other security, or to prove actual damages or that monetary damages are not an adequate remedy. Such remedies are not exclusive and are in addition to all other remedies that may be available at law, in equity, or otherwise.

(j) Counterparts. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date.

"Licensor"

**MAX MINDS, LLC**

By: _[signature]_
Name: Brandon Fischer
Title: Managing Member

"Licensee"

**TRIANGLE EXPERIENCE GROUP, INC**

By: _[signature]_
Name: Rob Clare
Title: President

EXHIBIT A

Capitalized terms used but not defined in this Exhibit A have the meaning given to those terms in the Agreement.

1. PURPOSE:

    The purpose of this agreement is to enable the LICENSEE to establish a DevSecOps environment at the customer site that demonstrates the ability to provide a security-first continuous software development lifecycle and to demonstrate a process that bridges the gap between on-site and off-site software development teams, while meeting the stringent security requirements set by the customer.

2. DESCRIPTION OF SOFTWARE:

    Haptic Federal On-Premise Version
    Expected Release Date: April 06, 2021

3. FEES:

    Fees waived until July 01, 2021. If this agreement remains in-effect beyond that date, the LICENSOR and LICENSEE agree to either: (a) establish an ongoing fee structure and amend this agreement; or (b) terminate this agreement.