# Exhibit 6

**EXHIBIT**

**30**

24-cv-00779

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

MAX MINDS, LLC,            )
                                    )
           *Plaintiff*,        )
                                      )
           v.               )   Case No.: 1:24-cv-00779-JPH-MG
                                      )
TRIANGLE EXPERIENCE GROUP, INC., *et al*,  )
                                      )
          *Defendants*.     )

## TRIANGLE EXPERIENCE GROUP, INC.'S SECOND AMENDED ANSWERS AND OBJECTIONS TO MAX MINDS, LLC'S FIRST SET OF PRELIMINARY INJUNCTION INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Court's scheduling orders related to Plaintiff Max Minds, LLC's ("Max") Motion for Preliminary Injunction and Seizure Order (the "Motion"), the various agreements of counsel made in the meet and confer process, and the Parties' October 1, 2024 Stipulation regarding the definition of Software and Source Code with respect to Preliminary Injunction Discovery, Defendant Triangle Experience Group, Inc. ("TEG") provides the following second amended answers and objections to Max's first set of preliminary injunction interrogatories directed to TEG.

## INTERROGATORIES

**1. Please provide the name(s), residence address, business address, telephone number, email and occupation of the person answering these Interrogatories.**

**OBJECTIONS:**

TEG objects to this interrogatory to the extent it seeks information protected by attorney-client privilege or the work-product doctrine. During the Parties' initial meet and confer conference, Max indicated that it would narrow the scope of this interrogatory by asking TEG to identify only TEG representatives who provided information used in answering Max's

Interrogatories. TEG accepts Max's proposal to narrow the scope of Interrogatory No. 1 to identify only TEG representatives and responds as follows.

**ANSWER:**

The following TEG representatives provided information used to answer Max's Interrogatories:

> Robert Clare, Chief Executive Officer of TEG (contact through counsel)
>
> Jeff Mase, Chief Operating Officer of TEG (contact through counsel)
>
> Kevin Mullican, Chief Technology Officer of TEG (contact through counsel)

**2. Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to the facts alleged in the Declarations of Brandon Fischer and Robert Simon filed in support of Max's Motion for Preliminary Injunction.**

**OBJECTIONS:**

TEG objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and compound. The Brandon Fischer Declaration is 19 pages long, has a table of contents with 18 separate subparts, contains 129 paragraphs, and covers a wide variety of topics and legal arguments, which essentially track the allegations contained in Max's entire Complaint. Such an interrogatory is vague, ambiguous, overbroad, and not stated with reasonable particularity, as it is impossible for TEG to understand what particular facts Max is referring to in this interrogatory request. TEG further objects to this request on the ground that such vague "facts" are outside the scope of the limited discovery of Max's Motion. Moreover, TEG cannot possibly have within its knowledge the identity of any person "who has" or "claims to have" knowledge or information pertaining to the entirety of Brandon Fischer's declaration, which was prepared by him – not TEG. TEG repeats all the foregoing objections to this interrogatory's requests for the same information relating to the Robert Simon Declaration.

During the meet and confer process, TEG agreed to answer this Interrogatory No. 2 as amended in Max's counsel's letter dated July 27, 2024, namely: "**Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to the matters discussed in your answers to Interrogatories 4, 6, 7 and 8 below**."

**<u>ANSWER</u>:**

The following persons have, claim to have, or TEG believes may have knowledge or information pertaining to TEG's responses to Interrogatory Nos. 4, 6, 7 and 8.

1. **Robert Clare**
   Triangle Experience Group, Inc.
   Contact through undersigned counsel

Mr. Clare is the Chief Executive Officer of TEG. Mr. Clare has knowledge regarding the formation of the Joint Venture Agreement (the "JVA"), the parties' intended meaning and purpose of the JVA, daily and weekly communications with Max regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

Mr. Clare also has knowledge of the vital public interest in maintaining the status quo to ensure TEG's continued ability to provide the software at issue to its customers, the related threat to national security interests should a preliminary injunction issue, and the severe harm and hardship a preliminary injunction would cause to TEG and the U.S. Government.

**2. Jeff Mase**
   Triangle Experience Group, Inc.
   Contact through undersigned counsel

Mr. Mase is the Chief Operating Officer of TEG. Mr. Mase has general knowledge regarding the JVA, daily and weekly communications with Max regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

Mr. Mase also has knowledge of the vital public interest in maintaining the status quo to ensure TEG's continued ability to provide the software at issue to its customers, the related threat to national security interests should a preliminary injunction issue, and the severe harm and hardship a preliminary injunction would cause to TEG and the U.S. Government.

**3. Michael Bowers**
   Triangle Experience Group, Inc.
   Contact through undersigned counsel

Mr. Bowers is the Chief Strategy Officer of TEG. Mr. Bowers has general knowledge regarding the JVA, daily and weekly communications with Max regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

Mr. Bowers also has knowledge of the vital public interest in maintaining the status quo to ensure TEG's continued ability to provide the software at issue to its customers, the related threat to national security interests should a preliminary injunction issue, and the severe harm and hardship a preliminary injunction would cause to TEG and the U.S. Government.

Finally, Mr. Bowers also has knowledge of TEG's secure handling of software source code and maintenance of the security and secrecy of any trade secrets associated with the software at issue in this case or its source code. Mr. Mullican also has knowledge of TEG's compliance with the Stipulation to Lift Seal (Dkt. 44).

**4. Larry Lins**
Triangle Experience Group, Inc.
Contact through undersigned counsel

Mr. Lins is the Director of International Engagements for TEG. Mr. Lins has knowledge regarding the formation of the Joint Venture Agreement (the "JVA"), the parties' intended meaning and purpose of the JVA, daily and weekly communications with Max regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

Mr. Lins also has knowledge of the vital public interest in maintaining the status quo to ensure TEG's continued ability to provide the software at issue to its customers, the related threat to national security interests should a preliminary injunction issue, and the severe harm and hardship a preliminary injunction would cause to TEG and the U.S. Government.

**5. Kevin Mullican**
Triangle Experience Group, Inc.
Contact through undersigned counsel

Mr. Mullican is the Chief Technology Officer of TEG. Mr. Mullican has general knowledge regarding the JVA, daily and weekly communications with Max regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial

contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

Mr. Mullican also has knowledge of TEG's secure handling of software source code and maintenance of the security and secrecy of any trade secrets associated with the software at issue in this case or its source code. Mr. Mullican also has knowledge of TEG's compliance with the Stipulation to Lift Seal (Dkt. 44).

6. **David Sinnk**
   Triangle Experience Group, Inc.
   Contact through undersigned counsel

Mr. Sinnk is the Director of Technical Operations of TEG. Mr. Sinnk has general knowledge regarding the JVA, daily and weekly communications with Max regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

Mr. Sinnk also has knowledge of TEG's secure handling of software source code and maintenance of the security and secrecy of any trade secrets associated with the software at issue in this case or its source code. Mr. Mullican also has knowledge of TEG's compliance with the Stipulation to Lift Seal (Dkt. 44).

7. **Janna Clare**
   Triangle Experience Group, Inc.
   Contact through undersigned counsel

Mrs. Clare is the Chief Financial Officer of TEG. Mrs. Clare has general knowledge regarding the JVA, daily and weekly communications with Max regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA,

and other related matters. Such related matters include TEG's monetary payments made to Max for engineering services and custom software development for TEG.

    **8. Brandon Fischer**
       Max Minds, LLC
       c/o SRIPLAW, P.A.
       21301 Powerline Road
       Suite 100
       Boca Raton, FL 33433

Mr. Fischer is the Founder of Max Minds. Mr. Fischer has knowledge regarding the formation of the JVA, the parties' intended meaning and purpose of the JVA, daily and weekly communications with TEG regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

    **9. Jennifer Ryan**
       Max Minds, LLC
       c/o SRIPLAW, P.A.
       21301 Powerline Road
       Suite 100
       Boca Raton, FL 33433

Ms. Ryan is or was an employee of Max Minds with the title "Haptic Federal Project Manager." Ms. Ryan has knowledge regarding the JVA, daily and weekly communications with TEG regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

10. **James Gilcrest**
    Max Minds, LLC
    c/o SRIPLAW, P.A.
    21301 Powerline Road
    Suite 100
    Boca Raton, FL 33433

Mr. Gilcrest is an employee of Max Minds. Mr. Gilcrest has knowledge regarding the

JVA, daily and weekly communications with TEG regarding the performance of the JVA, Max's

repeated failures to satisfactorily comply with Max's obligations under the JVA, and other

related matters. Such related matters include TEG's substantial contributions to the development

of the software at issue in this case and TEG's co-ownership of that software.

11. **Scott Herren**
    Max Minds, LLC
    c/o SRIPLAW, P.A.
    21301 Powerline Road
    Suite 100
    Boca Raton, FL 33433

Mr. Herren is an employee of Max Minds. Mr. Herren has knowledge regarding the JVA,

daily and weekly communications with TEG regarding the performance of the JVA, Max's

repeated failures to satisfactorily comply with Max's obligations under the JVA, and other

related matters. Such related matters include TEG's substantial contributions to the development

of the software at issue in this case and TEG's co-ownership of that software.

12. **Rich Gargus**
    Max Minds, LLC
    c/o SRIPLAW, P.A.
    21301 Powerline Road
    Suite 100
    Boca Raton, FL 33433

Mr. Gargus is an employee of Max Minds. Mr. Gargus has knowledge regarding the

JVA, daily and weekly communications with TEG regarding the performance of the JVA, Max's

repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

**13. Robert Schuster**
Squad Wall
Squadwall.com
c/o Squadware, Inc.
1208 N. County Road 425 E
Avon, IN 46123

Mr. Schuster is a former employee or independent contractor of Max Minds. Mr. Schuster has knowledge regarding the formation of the JVA, the parties' intended meaning and purpose of the JVA, daily and weekly communications with TEG regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

**14. Megan Nordwig**
Max Minds, LLC
c/o SRIPLAW, P.A.
21301 Powerline Road
Suite 100
Boca Raton, FL 33433

Ms. Nordwig is an employee of Max Minds. Ms. Nordwig has knowledge regarding the JVA, daily and weekly communications with TEG regarding the performance of the JVA, Max's repeated failures to satisfactorily comply with Max's obligations under the JVA, and other related matters. Such related matters include TEG's substantial contributions to the development of the software at issue in this case and TEG's co-ownership of that software.

**3.   Please summarize the nature and substance of the knowledge and information that you believe the person(s) identified in your response to Interrogatory No. 2 may have.**

**OBJECTIONS:**

TEG hereby repeats and incorporates by reference each of its objections related to Interrogatory No. 2 above.

During the meet and confer process, TEG agreed to answer this Interrogatory No. 3 as amended in Max's counsel's letter dated July 27, 2024, namely, to limit the scope of Interrogatory No. 3 in the same manner as Interrogatory No. 2 above.

**ANSWER:**

See TEG's answer to Interrogatory No. 2 for the requested summary corresponding to each of the persons identified in response to Interrogatory No. 2.

**4.   If you contend that Max's Motion for Preliminary Injunction should be denied in whole or in part, please summarize the reasons why it should be denied including all your defenses to the entry of the Motion for Preliminary Injunction.**

**OBJECTIONS:**

TEG objects to this request because it is overly broad, unduly burdensome, seeks legal conclusions as a part of fact discovery, and seeks information protected by the attorney-client privilege and the work-product doctrine. Max bears the burden of establishing the well-known elements for entry of a preliminary injunction and it would be premature and not in accordance with the scheduling order entered by the Court in connection with Max's Motion to require TEG to state *each and every* reason why Max's Motion should be denied. As such, this is a contention interrogatory, as defined by Fed. R. Civ. P. 33(a)(2). Additionally, Max's interrogatory request for all reasons why Max's Motion should be denied, "in whole or in part," is vague, ambiguous, not proportional to the needs of Max's Motion, and stated without reasonable particularity.

TEG's opposition to Max's Motion will be fully briefed according to the briefing schedule set by
the Court.

During the meet and confer process, TEG agreed to answer this Interrogatory as written.

**ANSWER:**

Max's Motion for Preliminary Injunction should be denied in whole for the following
reasons.

**Max's Request for Seizure under the DTSA**

Max seeks an ex parte seizure order under the Defend Trade Secrets Act ("DTSA"), 18
U.S.C. § 1836(b)(2)(A). TEG contends that ex parte seizure is unnecessary and unwarranted
under the facts and the law. A court may not order such a seizure under the DTSA unless all of
the following conditions clearly appear from specific facts: (1) an injunction or other equitable
relief would be inadequate "because the party to which the order would be issued would evade,
avoid, or otherwise not comply with such an order;" (2) an immediate and irreparable injury will
occur if the seizure is not ordered; (3) the harm to the party requesting the seizure if the seizure is
denied outweighs the harm to the legitimate interests of the person against whom seizure would
be ordered if so granted and substantially outweighs the harm to any third parties impacted by
the seizure; (4) the party requesting the seizure is likely to succeed in showing: (a) the
information is a trade secret; and (b) the party who would be subject to the seizure order
misappropriated the trade secret by improper means or conspired to use improper means to
misappropriate the trade secret; (5) the person against whom seizure would be ordered has actual
possession of the trade secret and any property to be seized; (6) the application for seizure
"describes with reasonable particularity the matter to be seized and, to the extent reasonable
under the circumstances, identifies the location where the matter is to be seized;" (7) the party

against whom seizure is sought, or individuals acting in concert with that party, "would destroy, move, hide, or otherwise make such matter inaccessible to the court" if notice were given; and (8) the party seeking seizure has not publicized the requested seizure. 18 U.S.C. § 1836(b)(2)(A)(ii). Max cannot meet all of these conditions.

First, Max cannot demonstrate the crucial requirement that an order issued under Fed. R. Civ. P. 65 would be inadequate because TEG "would evade, avoid, or otherwise not comply with such an order." 18 U.S.C. § 1836(b)(2)(A)(ii). Simply by bringing its preliminary injunction motion, Max has effectively conceded that preliminary injunctive relief (sought on notice to TEG) would be adequate and, therefore, an ex parte seizure order is unnecessary. Moreover, TEG's actions before the Court belie any claim that TEG would ever fail to comply with a Court order. After conferring with Max's counsel regarding its concerns about alleged public disclosure of the source code's trade secrets, TEG removed from public access the URLs and servers in question.[1] TEG further certified in a "so ordered" Stipulation to Lift Seal "that public internet access to the software and the allegedly copyrighted and trade secret source code has been disabled/terminated and will remain disabled/terminated during the pendency of this lawsuit and/or until further order of this Court." (Stipulation to Lift Seal, So Ordered June 4, 2024, Dkt. 44.)

Second, the servers that Max's motion describes with reasonable particularity as the matter to be seized[2] are the very same servers that TEG has agreed under Court Order "will remain disabled/terminated during the pendency of this lawsuit and/or until further order of this Court." (Stipulation to Lift Seal, So Ordered June 4, 2024, Dkt. 44.) It is thus evident that, even

---

[1] At the same time, Max was also exposing the same information publicly via its own website.

[2] *See* PI Br. 25, Dkt. 13; Simon Decl. and Ex. 1, Dkt. 14 and 14-1.

if any extraordinary and urgent circumstances ever did exist (which TEG denies), those circumstances have long passed. Moreover, as TEG notes in response to Interrogatory Nos. 6 and 7, TEG does not have actual possession of any other material that Max may argue is subject to seizure.

Finally, as demonstrated below, Max cannot make the clear showing required for several other crucial requirements under the DTSA, which essentially repeat the elements required for issuance of a Rule 65 preliminary injunction.

## Max's Request for Preliminary Injunction

To prevail on its motion for preliminary injunction, Max must show (1) a reasonable likelihood of success on the merits, (2) no adequate remedy at law, and (3) irreparable harm if preliminary relief is denied. *Graham v. Medical Mut.*, 130 F.3d 293, 295 (7th Cir. 1997). If Max can demonstrate these three requirements (the "threshold phase"), the Court continues to the "balancing phase." *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 965 (7th Cir. 2018). If it reaches the balancing phase, the Court must weigh the harm TEG will suffer if the injunction is granted against the irreparable harm to Max if the injunction is denied. *Id*. The Court must also consider whether a preliminary injunction is in the public interest. *Id*. Max faces a burden that is especially high here because it seeks relief that would alter the status quo rather than maintain it. Such a mandatory preliminary injunction is rarely issued and only "upon the clearest equitable grounds." *Graham*, 130 F.3d at 295. Max cannot meet this stringent standard.

### *Max is Unlikely to Succeed on the Merits of its Claims*

TEG has moved to dismiss each of Max's substantive claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For all of the reasons provided in TEG's opening brief in support of its motion to dismiss [Dkt. 52] and in TEG's reply brief in further support of its motion to dismiss [Dkt. 69], Max is unlikely to succeed on the merits of its trade secret claims

(Counts I and II), copyright infringement claim (Count III), DMCA claims (Counts IV and V), and its Lanham Act claim (Count VI). TEG need not repeat those arguments here but incorporates them in full by reference.

For purposes of the motion to dismiss only, TEG assumed the sufficiency of Max's allegations of a trade secret. Based on Max's responses to TEG's discovery requests, however, TEG contends that Max has not sufficiently identified any trade secret at issue. The crux of any trade secrets claim turns upon the identification of a trade secret. 18 U.S.C. § 1836(b)(1). Indeed, Max must identify the trade secret and carry the burden of proving that it is, in fact, a trade secret. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (applying Indiana's trade secret act). Max states only that the entirety of the software is a trade secret. This is, TEG contends, insufficient identification of a trade secret.

For purposes of the motion to dismiss only, TEG assumed Max's ownership of a valid copyright. TEG contends, however, that Max's claim to sole ownership of the copyrights in the software and source code is contrary to the facts and the law because the facts in this case will demonstrate that TEG provided significant and sustained contributions of authorship to the software and source code. The parties, based on their significant business relationship and joint work on the software and source code, intended to create the software and code. Thus, TEG and Max are joint authors and joint owners of the software and source code. As such, not only are the copyright registrations alleged in Max's complaint invalid and should be cancelled , but also, TEG is the joint owner of any alleged trade secrets found within the software and source code. At the very least, TEG is an authorized licensee of the software and source code.

### Max Cannot Establish Irreparable Harm
### Monetary Damages Are an Adequate Remedy

Max has failed to explain why the calculation of monetary damages based on TEG's continued sales of the software would fail to compensate it for any injury, should it prevail in its claims against TEG. Where monetary compensation can atone for the harm, it is not irreparable. Moreover, even though it became clear that Max's and TEG's business relationship was in serious dispute at least as early as December 2023 when TEG filed its first lawsuit against Max in the district court for the Eastern District of Virginia, Max failed to seek preliminary injunctive relief until nearly six months later. Such a long delay seriously undermines Max's claim that an injunction is necessary to prevent immediate, irreparable injury to Max.

Max appears to rely on a presumption of irreparable injury should it show that it is likely to succeed on the merits of its copyright claims. After the Supreme Court decision in *eBay v. MercExchange*, however, courts including the Seventh Circuit have made clear that no such presumption can be applied in a copyright case. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) (finding the district court erred when, as a practical matter, it limited its analysis to plaintiff's likelihood of success on its copyright claims and presumed irreparable injury) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006)).

Max's motion for preliminary injunction should be denied based on its failure to meet the threshold elements alone. *Kiel v. City of Kenosha*, 236 F.3d 814, 817 (7th Cir. 2000) (finding that plaintiff's failure to meet the threshold elements for obtaining preliminary injunctive relief is sufficient to end the analysis). Nevertheless, the balance of harm as well as the public interest both weigh heavily in TEG's favor and against the issuance of a preliminary injunction.

### *The Balance of Harm and Hardship Favors TEG*
### *The Public Interest is Not Served by the Issuance of Preliminary Injunctive Relief*

The issuance of the preliminary injunction requested by Max would potentially put TEG out of business. The impact of the Court's granting the relief Max articulated at the August 8, 2024 discovery hearing would be catastrophic to TEG's business. An injunction would likely force TEG to breach its contracts with existing government customers, particularly the Department of Defense (DoD), and prevent it from acquiring new government customers. Such an injunction would constitute, in effect, an injunction against the federal government, which is impermissible under 28 U.S.C. § 1498(b). TEG's government customers must be able to perform their essential functions without the threat of judicial interference that could impede or halt their operations. This principle extends to actions that would indirectly enjoin the government by targeting its contractors, such as TEG. In the context of national security, this principle is even more crucial. The government relies on contractors like TEG for critical software services essential to national defense operations. Enjoining TEG would disrupt these operations, which are vital to national security, thus implicating serious public policy concerns.

On the other hand, there is no hardship to Max should the injunction fail to issue. The parties will merely continue operating under the status quo of the Joint Venture Agreement. Depending on the outcome of this and the First Filed Action, ultimately, one party may owe the other party monetary compensation. Responsible accounting practices during the pendency of both actions will protect both parties. The balance of harm and hardship weighs heavily in favor of TEG.

Max has not shown that the public interest will be served by preliminary injunctive relief. The interests of national defense and national security are rightly considered when entertaining requests for injunction in the government contracts context. But Max is incorrect that these

concerns favor injunctive relief here. To the contrary, if the preliminary injunction were granted,

the Nation's security would be threatened. When national defense and national security interests

are concerned, the law is clear that public interest militates against awarding injunctive relief.

The public interest therefore strongly disfavors Max's request for preliminary injunctive relief.

TEG reserves the right to supplement this answer to Interrogatory No. 4 as discovery is

ongoing.

**5.   If your contention that Max's Motion for Preliminary Injunction should be denied
relies in whole or in part on the provisions of the EULA, the SCLA, the MDNA, the PP, the
JVA, the CA, or any other document, please set forth what provisions of what document
you rely upon and explain why the provisions provide a basis for denial of the Motion for
Preliminary Injunction.**

<u>**OBJECTIONS**</u>**:**

TEG objects to this request because it is overly broad, unduly burdensome, compound,

seeks legal conclusions as a part of fact discovery, is cumulative of Interrogatory No. 4, and

seeks information protected by the attorney-client privilege and the work-product doctrine. Max

bears the burden of establishing the well-known elements for entry of a preliminary injunction

and it would be premature and not in accordance with the scheduling order entered by the Court

in connection with Max's Motion to require TEG to state *each and every* contractual reason why

Max's Motion should be denied. As such, this is a contention interrogatory, as defined by Fed. R.

Civ. P. 33(a)(2). In addition, Max's interrogatory request for all reasons why Max's Motion

should be denied, "in whole or in part," on "the provisions of" six separate documents is vague,

ambiguous, overbroad, not proportional to the needs of the case, and stated without reasonable

particularity. TEG's opposition to Max's Motion will be fully briefed according to the briefing

schedule set by the Court.

During the meet and confer process and as confirmed in Max's counsel's letter dated August 1, 2024, Max has agreed to defer Interrogatory No. 5 and, therefore, TEG need not provide an answer to this Interrogatory at this time. TEG reserves the right to raise any objections should Max seek to have this interrogatory answered at a later date.

**6.   Are you in possession of the Software? If so, please list all copies of the Software in your possession, including the physical and IP address location of each computer, computer server, or electronic media (including all USB thumb drives, DVDs, etc.) containing the Software. Your identification of the copies of the Software in your possession should be specific enough to permit the parties or the court to indicate in an order or stipulation what action must be taken or what disposition must be made concerning each copy.**

**<u>OBJECTIONS</u>:**

TEG objects to this interrogatory on the ground that it contains multiple interrogatories within a single interrogatory. TEG further objects to this request on the ground that it is irrelevant to any Party's claim or defense of the merits of Max's Motion. Rather, this request appears to relate solely to Max's requested remedies of injunction and seizure.

During the meet and confer process, TEG agreed to answer this Interrogatory as written.

**<u>ANSWER</u>:**

See Response to Interrogatory No. 7.

**7.   Are you in possession of Source Code? If so, please list all copies of the Source Code in your possession, including the physical and IP address location of each computer, computer server, or electronic media (including all USB thumb drives, DVDs, etc.) containing the Source Code. Your identification of copies of the Source Code in your possession should be specific enough to permit the parties or the court to indicate in an order or stipulation what action must be taken or what disposition must be made concerning each copy.**

**<u>OBJECTIONS</u>:**

TEG objects to this interrogatory on the ground that it contains multiple interrogatories within a single interrogatory. TEG further objects to this request on the ground that it is

irrelevant to any Party's claim or defense of the merits of Max's Motion. Rather, this request appears to relate solely to Max's requested remedies of injunction and seizure.

During the meet and confer process, TEG agreed to answer this Interrogatory as written.

**ANSWER:**

Based on the Parties' stipulated definition of Source Code and Software for purposes of Preliminary Injunction Discovery, Source Code and Software within TEG's possession is located:

- Stored in the history of repositories located in the "Triangle Experience Group-Development" organization in GitHub

- In Azure DevOps ("ADO") repositories located in the "TEG-Development-Workspace" workspace

- On the following servers:

    o vjocappserver01 = 10.0.0.4

    o dev-vjoc-app = 10.0.0.6

    o vjoc-dev-qa = 10.0.0.7

- Local copies on the following computers:

    o DEV LAPTOP 1 - Lenovo ThinkPad X1 - PF-4JNENL

    o DEV LAPTOP 2 - Lenovo Thinkpad X1 - P4-4EMZC3

    o DEV LAPTOP 3 - Lenovo Thinkpad X1 - PF - 4JNEN9

**8.    Do you contend that any copies of the Software or Source Code you identified in response to the two prior questions are Derivative Works? If so, please explain why you contend that they are Derivative Works, identify the Software or Source Code versions that the Derivative Works were derived from, list all individuals involved in creating the Derivative Works, and list all the Derivative Works copies in your possession, including the physical and IP address location of each computer, computer server, or electronic media (including all USB thumb drives, DVDs, etc.) containing the Derivative Works. Your identification should be specific enough to permit the parties or the court to indicate in an order or stipulation what action must be taken or what disposition must be made concerning each copy.**

**OBJECTIONS:**

TEG objects to this interrogatory on the ground that it contains multiple interrogatories within a single interrogatory. TEG further objects to this request on the ground that it is irrelevant to any Party's claim or defense of the merits of Max's Motion. Rather, this request appears to relate solely to Max's requested remedies of injunction and seizure.

During the meet and confer process, TEG agreed to answer this Interrogatory as written.

**ANSWER:**

At this stage of early Preliminary Injunction Discovery, with respect to what Software or Source Code at issue in this matter may constitute a "derivative work" within the meaning of the Copyright Act, TEG makes no contentions, agreements, or admissions. Whether any of the Software or Source Code at issue constitute a derivative work of any particular Software or Source Code is an ultimate conclusion of law based on disputed issues of fact to be determined by the trier of fact.

Applying the Copyright Act's definition of "derivative work," 17 U.S.C. § 101, TEG states that Software or Source Code arguably constituting a derivative work(s) works based upon (1) Prysm's "Synthesis" program and/or (2) TEG's preexisting technology provided by TEG to Brandon Fischer and/or Max may be found in TEG's possession in the history of repositories located in the "Triangle Experience Group-Development" organization in GitHub and:

- Local copies on the following computers:

    o DEV LAPTOP 1 - Lenovo ThinkPad X1 - PF-4JNENL

    o DEV LAPTOP 2 - Lenovo Thinkpad X1 - P4-4EMZC3

    o DEV LAPTOP 3 - Lenovo Thinkpad X1 - PF - 4JNEN9

TEG lacks full knowledge or information concerning the individuals involved in creating the derivative works who were employed or contracted by Fischer and/or Max. On information and belief, TEG identifies the following individuals:

- Brandon Fischer

- Jennifer Ryan

- Chad Coles

- James Gilcrest

- Scott Herren

- Rich Gargus

- Robert Schuster

- Megan Nordwig

- Stefan Wywior

- Szymon Szelag

- Additional unknown non-U.S. citizen software developers

With respect to TEG individuals involved in creating the derivative works, TEG identifies the following individuals:

- Kevin Mullican

- Philip Branning

- Jeff Mase

- Robert Clare

- Michael Bowers

21

- Mark Mahoney

- Leland Kraatz

- Kirk Etchberger

- David McCutcheon

- Dave Sinnk

- Larry Lins

Applying the Copyright Act's definition of "derivative work," 17 U.S.C. § 101, TEG states that Software or Source Code arguably constituting a derivative work(s) works based upon a Haptic Federal version (on information and belief, version 3.1.21.7) may be found in TEG's possession in the repositories located in the Azure DevOps ("ADO") repositories located in the "TEG-Development-Workspace" workspace and:

- On the following servers:
  - o vjocappserver01 = 10.0.0.4
  - o dev-vjoc-app = 10.0.0.6
  - o vjoc-dev-qa = 10.0.0.7
- Local copies on the following computers:
  - o DEV LAPTOP 1 - Lenovo ThinkPad X1 - PF-4JNENL
  - o DEV LAPTOP 2 - Lenovo Thinkpad X1 - P4-4EMZC3
  - o DEV LAPTOP 3 - Lenovo Thinkpad X1 - PF - 4JNEN9

## **<u>VERIFICATION</u>**

In accordance with 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct. Executed on October 15, 2024.

TRIANGLE EXPERIENCE GROUP, INC.

By: _____
              Robert Clare, CEO

Dated: October 15, 2024

**AS TO OBJECTIONS:**

Respectfully submitted,

*s/ Samuel J. Banks*
Richard D. Kelley, *admitted pro hac vice*
Raighne C. Delaney, *admitted pro hac vice*
Stephen D. Caruso, *admitted pro hac vice*
Samuel J. Banks, *admitted pro hac vice*
Kandis M. Koustenis, *admitted pro hac vice*
**BEAN, KINNEY & KORMAN, PC**
2311 Wilson Boulevard, Suite 500
Arlington, VA  22201
Tel: (703) 525-4000
Fax: (703) 525-2207
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com
sbanks@beankinney.com
kkoustenis@beankinney.com

Heather J. Kliebenstein, *admitted pro hac vice*
**MERCHANT & GOULD**
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
hkliebenstein@merchantgould.com

Alexander P. Orlowski, Atty. No. 30794-29
Amanda Jane Gallagher, Atty. No. 32662-79
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 566-1110
Fax: (317) 636-1507
alexander.orlowski@btlaw.com
amanda.gallagher@btlaw.com

*Attorneys for Triangle Experience Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 15, 2024, the foregoing document was

served on the following via electronic mail.

J. Campbell Miller
campbell.miller@sriplaw.com
SRIPLAW, P. A.
231 South Rangeline Road Suite H
Carmel, IN 46032
332.600.5599 – Telephone
561.404.4353 – Facsimile

Joseph A. Dunne
joseph.dunne@sriplaw.com
SRIPLAW, P. A.
175 Pearl Street Third Floor
Brooklyn, IN 11201
929.200.8446 – Telephone
561.404.4353 – Facsimile

Joel B. Rothman
joel.rothman@sriplaw.com
SRIPLAW, P. A.
21301 Powerline Road Suite 100
Boca Raton, IN 33433
561.404.4335 – Telephone
561.404.4353 – Facsimile

Philip D Sever
phil@landownerattorneys.com
SEVER, STORY, WALKER
742 South Rangeline Road
Carmel, IN 46032
317.961.1202 – Telephone

*Counsel for Plaintiff Max Minds, LLC*

*/s/ Samuel J. Banks*
Samuel J. Banks