UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAX MINDS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:24-cv-00779-JPH-MG |
| | ) |
| TRIANGLE EXPERIENCE GROUP, INC., | ) |
| ROBERT CLARE, | ) |
| JEFFREY MASE, | ) |
| KEVIN MULLICAN, | ) |
| JOHN DOES 1-10, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Max Minds, LLC, a software-development company, alleges that Triangle Experience Group ("TEG") and several of its employees misappropriated source code from one of Max's software products. The individual defendants, who are employees of TEG, have filed a motion to dismiss for lack of personal jurisdiction. Dkt. [49]. For the reasons below, that motion is **GRANTED in part and DENIED in part**.

I.
Facts and Background

Because Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(2), this Court accepts "as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiffs." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

1

Max Minds, LLC creates "software platforms for commercial and governmental applications." Dkt. 1 at 4. One of Max's chief products—known as Alleo for commercial users and Haptic for government users—provides a real-time "collaborative workspace" that organizes people, content, and tools "in any hybrid environment." *Id.* at 4–5.

In February 2019, Max's CEO met representatives of TEG—which distributes software to the federal government—who invited Max to demonstrate Haptic at a federal government lab. *Id.* at 11. Max gave that demonstration in July 2019 and then in October provided Haptic Federal accounts to TEG's CEO Rob Clare and COO Jeffrey Mase so they could demonstrate Haptic to potential customers. *Id.* at 11–12.

In January 2020, Max and TEG entered a Joint Venture Agreement making TEG "the exclusive distributor/reseller of the Haptic Federal product into the federal market." *Id.* at 12. In return, TEG had to meet certain revenue targets, manage federal-government sales relationships, and make retainer payments to Max. *Id.* at 12–13. Max later made the Alleo version of the product available, which Mr. Clare logged into at least 26 times and Mr. Mase logged into at least 129 times, each time accepting its End User License Agreement. Dkt. 56-1 at 5–6.

Starting in June 2020, Max made Haptic source code available to TEG with the requirement that TEG provide Max with chain of custody documentation for the code. Dkt. 1 at 14. By summer 2023, however, TEG had failed to provide that documentation "on numerous occasions." *Id.* So,

2

that August, Max and TEG entered a "Certification Agreement" that required TEG to keep Haptic Federal's source code confidential. *Id.* at 14–15. TEG still failed to protect the confidentiality of the source code, and in December 2023 stopped responding to Max's concerns. *Id.* at 15–16.

In February 2024, Max learned that TEG had exposed Haptic Federal source code "to the public internet." *Id.* Mr. Clare, Mr. Mase, and TEG Program Manager Kevin Mullican were "aware of, kn[e]w about, and complicit in the exposure of Max's Haptic Federal source code online." *Id.* They also knew that the source code was Max's trade secret. *Id.* at 16. Each of them "personally disclosed and/or caused, directed and authorized" TEG employees to disclose Haptic Federal source code without Max's permission or authority. *Id.* at 20. They also "caused, directed and authorized" TEG employees to "circumvent Max's technical [copyright protection] measures" and to remove the Haptic trademark from the software. *Id.* at 23–24.

Mr. Clare is domiciled in Texas and does not live in or own property in Indiana. Dkt. 50-1 at 1 (Clare Decl.). He has traveled to Indiana only twice, to meet Max's CEO on December 19–20, 2022 and January 12–13, 2023. *Id.* at 2; dkt. 56-1 at 3 (Fischer Decl.). Mr. Mase is domiciled in New Jersey, does not live in or own property in Indiana, and has never been in the state of Indiana. Dkt. 50-2 at 1 (Mase Decl.). Mr. Mullican is domiciled in California, does not live in or own property in Indiana, and visited Indiana only once in 1991. Dkt. 50-3 at 1 (Mullican Decl.). He reached out in March 2018 to Max's CEO, who told Mr. Mullican that he couldn't help TEG at that time because he was under

3

a non-compete until June 2019.  Dkt. 56-1 at 2.  None of TEG's other employees are domiciled in Indiana.  Dkt. 50-1 at 2.

In May 2024, Max brought this action against TEG, Mr. Clare, Mr. Mase, Mr. Mullican, and ten "John Doe" employees.  Dkt. 1 at 3.  Max alleges that Defendants (1) misappropriated the Haptic Federal source code, which is Max's trade secret; (2) violated Max's copyright protections in the Haptic Federal source code; and (3) passed off Max's Haptic trademark as TEG's own.  Dkt. 1 at 19–24.  The individual defendants filed a motion to dismiss for lack of personal jurisdiction.  Dkt. 49.

## II.
## Rule 12(b)(2) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(2) to dismiss claims for lack of personal jurisdiction.  When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  "At this early stage in the litigation, and without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction."  *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010).

## III.
## Analysis

Indiana law governs this personal jurisdiction analysis.  Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Because Indiana

4

extends personal jurisdiction to any basis "consistent with the Federal Due Process Clause," the sole issue is "whether the exercise of jurisdiction comports with the limits imposed by federal due process." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing Ind. Trial Rule 4.4(A)).

Due process allows courts to exercise personal jurisdiction if "the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting "[t]he canonical decision" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946)). A party may also consent to personal jurisdiction even if the court would not otherwise be able to exercise jurisdiction over that party. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'").

Here, the individual defendants argue that the Court lacks personal jurisdiction over them because they did not direct their conduct at Indiana and lack any connection to Indiana that could support personal jurisdiction. Dkt. 50 at 9–12. Max does not contest that the Court does not have personal jurisdiction over the John Doe defendants, *see* dkt. 56, so those defendants are dismissed. Max argues, however, that the Court may exercise personal jurisdiction over Mr. Clare, Mr. Mase, and Mr. Mullican because they (1)

5

consented to jurisdiction by accepting software license agreements, and (2) committed intentional torts that were aimed at Max in Indiana. Dkt. 56 at 13–18.

### A. Consent to Personal Jurisdiction

Max contends that the individual defendants consented to personal jurisdiction in Indiana by accepting the Haptic and Alleo End User License Agreements ("EULA"). Dkt. 56 at 16–18.[1] The individual defendants argue that the Haptic EULA's language is too narrow to support personal jurisdiction and that they signed the EULAs as employees of TEG rather than individually. Dkt. 70 at 5–7.

### 1. Alleo EULA

In December 2021, Max started using Alleo as the new name for the Haptic software. Dkt. 56-1 at 5. Mr. Clare and Mr. Mase both used Alleo and accepted its EULA, which provides that "[a]ny action or proceeding arising out of or relating to this Agreement shall be brought exclusively in a state or federal court of competent jurisdiction located in Indianapolis, Indiana." *Id.* at 5–6 (Fischer Decl.). Mr. Clare and Mr. Mase do not dispute that they accepted the Alleo EULA or that its language is sufficient to consent to personal jurisdiction in this Court—which is in Indianapolis—for Max's claims. *See* dkt. 70 at 5–7

---

[1] Max also notes that TEG signed a Source Code License Agreement but does not argue that it supports personal jurisdiction over any individual defendant. *See* dkt. 56 at 10, 16–18.

(arguing about only the Haptic EULA's language).[2] Indeed, a "forum-selection clause can work only if both parties are amenable to suit in the chosen forum; to agree to a forum thus is to agree to personal jurisdiction in that forum." *BouMatic, LLC v. Idento Oper., BV*, 759 F.3d 790, 793 (7th Cir. 2014); *see Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction.").

Instead, the individual defendants argue only that their acceptance of the Alleo EULA did not operate as their assent to personal jurisdiction in this Court because they signed the EULA on behalf of TEG. Dkt. 70 at 7. The Alleo EULA, however, provided that "I"—the user—accepted the agreement, dkt. 56-1 at 5, and Mr. Clare and Mr. Mase have provided no evidence that they signed only on behalf of TEG despite that language, dkt. 70 at 7.[3] That distinguishes the district court case they rely on, because there the employee expressly signed the contract "in his representative capacity." *Patriot Res. Partners II, LLC v. Serv. Disabled Vets. Bus. Assocs., Inc.*, No. 06-C-5369, 2008 WL 4534017 at *6 (N.D. Ill. Oct. 3, 2008). Moreover, that case was decided under

---

[2] While Mr. Clare and Mr. Mase note that the Alleo EULA was a clickwrap agreement, they do not argue that this undermines consent. *See* dkt. 70 at 5–7; *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016) ("There is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement."). Moreover, Mr. Clare logged in at least 26 times and Mr. Mase logged in at least 129 times, each time accepting the Alleo EULA. Dkt. 56-1 at 5–6.

[3] Neither party provided the full Alleo EULA in connection with the personal jurisdiction briefing. However, Max's CEO testified to the relevant forum-selection language, which the individual defendants have not disputed.

Illinois law, *see id.*, and Indiana law does not allow an employee to avoid personal jurisdiction merely because "he or she was acting solely as a fiduciary of a corporation," *Honda Mfg. of Ind. LLC v. Custom Machs., Inc.*, No. 1:15-cv-42-LJM-MPB, 2016 WL 7156081 at *5 (S.D. Ind. Dec. 7, 2016). *See also Hardin Roller Corp. v. Univ. Printing Mach., Inc.*, 236 F.3d 839, 842 (7th Cir. 2001) ("[T]he Constitution does not shield persons who act as corporate agents from individual-capacity suits."). Mr. Clare and Mr. Mase therefore consented to this Court's jurisdiction when they repeatedly accepted the Alleo EULA, which has a mandatory forum selection clause requiring any related litigation to be brought in a court in or with jurisdiction over Indianapolis, Indiana. *See BouMatic*, 759 F.3d at 793; *Heller Fin., Inc.*, 883 F.2d at 1292 n.4.

### 2. Haptic EULA

For Mr. Mullican, however, there is no indication in the record that he accepted the Alleo EULA. *See* dkt. 56-1 at 4–6. He accepted the Haptic EULA, which includes consent "to the personal and exclusive jurisdiction" of "any court or courts of the state of Indiana, or of the United States of America, in Hamilton County, Indiana." Dkt. 56-1 at 5. Mr. Mullican therefore argues that the Haptic EULA does not support personal jurisdiction because this Court is not in Hamilton County. Dkt. 70 at 6–7. Max does not address this argument, and indeed, this Court is not in Hamilton County—instead, Hamilton County is in this district. 28 U.S.C. § 94(b)(1) ("The Indianapolis Division [of the Southern District of Indiana] comprises the counties of . . . Hamilton[.] Court for the Indianapolis Division shall be held at Indianapolis and Richmond.").

8

And "[a] forum selection clause that specifies venue in a county that has no federal court cannot reasonably be interpreted to permit suit in a federal court located in a different county," *Sompo Japan Ins., Inc. v. Alarm Detection Sys., Inc.*, No. 03-C-2322, 2003 WL 21877615 at *2 (N.D. Ill. Aug. 6, 2003).[4] Mr. Mullican therefore has not consented to this Court's jurisdiction.

### B. Specific Jurisdiction over Mr. Mullican

The Court can exercise personal jurisdiction over Mr. Mullican if "the nature and extent of [his] relationship to the forum State" supports either general or specific personal jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction allows "any and all claims" when the defendant is "essentially at home" in the state, while specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* Here, Max does not argue that the Court has general jurisdiction over Mr. Mullican, so only specific jurisdiction is at issue. *See id.*; dkt. 50-3 (Mr. Mullican has never lived in Indiana, owns no property in Indiana, conducts no personal business in Indiana, and visited Indiana only once in 1991 when he drove through.).

---

[4] While the Seventh Circuit has not addressed the issue, this is the prevailing view among other circuit courts and district courts in the Seventh Circuit addressing similar language. *See Fieldturf USA, Inc. v. Quest Turf, LLC*, 2008 WL 906428 at *1–2 (S.D. Ind. Apr. 1, 2008); *Exhibit Sys., Inc. v. Pico Art Int'l Pte., Ltd.*, 2015 WL 3930265 at *2 (N.D. Ill. June 25, 2015); *Wausau Steel Corp. v. Roper Whitney of Rockford, Inc.*, 2009 WL 2197376 at *3 (W.D. Wis. July 23, 2009); *see also Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 674 (4th Cir. 2018); *Alliance Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 400 (5th Cir. 2008); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997).

To establish specific jurisdiction, a plaintiff must show "three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). The parties here focus on the first requirement—whether Mr. Mullican "purposefully directed" his actions at Indiana. *See* dkt. 50 at 9–12; dkt. 56 at 13–16.

The "nature of the purposeful-direction . . . inquiry depends in large part of the type of claim at issue." *Felland*, 682 F.3d at 674. Here, "the crux" of the claims against Mr. Mullican is that he intentionally modified Haptic source code—a Max trade secret—without permission to facilitate copyright infringement, which harmed Max in Indiana. *Id.*; dkt. 1 at 15–16; 23–24.[5] Harm to the plaintiff in the forum state alone, however, is not enough to show that a defendant's activities were purposefully directed at the forum state. *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023) ("[The plaintiff] has to show

---

[5] While the individual defendants dispute these claims, Max's framing of them "[a]s alleged in the complaint" controls the inquiry. *Felland*, 682 F.3d at 674–75.

that [the defendant] purposely directed its activities at [Indiana] and at its residents.").

Mr. Mullican's work on the Haptic software involved Indiana only tangentially because Max is based in Indiana—that work did not involve soliciting business in Indiana or "target[ing] the [Indiana] market" for customers. *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 879 (7th Cir. 2019); *see North*, 72 F.4th at 225 ("[A] defendant's 'random,' 'fortuitous,' or 'attenuated' contacts with a state are not enough to establish personal jurisdiction."). Indeed, Max cites no authority to support its contention that Mr. Mullican's intentional interference with Max's source code alone is enough to support personal jurisdiction in Indiana. Dkt. 56 at 16. That makes sense because the personal-jurisdiction analysis is not relaxed "when intentional torts are involved," *Walden*, 571 at 286, and "it is a defendant's contacts with the forum state, not with the plaintiff, that count." *Lexington Ins. Co.*, 938 F.3d at 880.

In fact, Max has shown only one deliberate contact in Indiana—that Mr. Mullican contacted Max's CEO in Indiana in March 2018 "to solicit [his] assistance to supply software to TEG." Dkt. 56-1 at 2 (Fischer Decl.). While that solicitation is "significant," what's "more important" is the lack of a continuing relationship between Mr. Mullican "himself and a resident of the forum state." *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1218 (7th Cir. 1990). There's no evidence that Mr. Mullican negotiated any contracts in Indiana, visited Max in Indiana, or "contact[ed] anyone residing there" again.

11

*Lexington Ins. Co.*, 938 F.3d at 879–80 ("To conclude that personal jurisdiction exists, we need to see evidence that Zurich and Taian reached out to Wisconsin during the formation and execution of [the insurance contracts at issue]."). In fact, Mr. Mullican's solicitation went nowhere because Max's CEO was under a non-compete for nearly another year. Dkt. 56-1 at 2.

Max cites no case in which a sole, initial, and unfruitful contact like Mr. Mullican's supported personal jurisdiction over an individual defendant. *See* dkt. 56 at 14–16; *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. . . . Each defendant's contacts with the forum State must be assessed individually."). Instead, the Supreme Court has required either that "the defendant has deliberately engaged in significant activities within the forum state," or "has created continuing obligations between itself and a resident of the forum." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492–93 (7th Cir. 2014). The Seventh Circuit and this district have therefore found similar initial solicitations insufficient to support personal jurisdiction. *See Koster v. Automark Indus., Inc.*, 640 F.2d 77, 79 (7th Cir. 1981) (preliminary contract discussions mailed to Illinois were insufficient to support personal jurisdiction); *Rolls–Royce Corp. v. Alcor Engine Co., Inc.*, No. 1:04-cv-968-SEB-JMS, 2007 WL 1021450 at *8–9 (S.D. Ind. Mar. 29, 2007) (at least ten faxes, emails, and letters soliciting business and advice were too sporadic and limited in number to support personal jurisdiction). Something more is required—such as substantial negotiations or "travel[ling] to the forum

12

state to solicit or transact business"—but is absent here. *Madison Consult. Grp. v. South Carolina*, 752 F.2d 1193, 1200–01 (7th Cir. 1985).

In short, Mr. Mullican tried one time—unsuccessfully—to solicit business with Max months before TEG and Max began working together. That single "deliberate contact with the resident of a state is not the same thing as deliberate contact with the state itself." *Lexington Ins. Co.*, 938 F.3d at 879 ("While the merits of this case turn on [Mr. Mullican's] relationship with [Max], personal jurisdiction turns on [his] relationship with [Indiana]."). So even if his later actions for TEG outside Indiana harmed Max in Indiana, Mr. Mullican did not have sufficient contact with Indiana to support personal jurisdiction here. *See Walden*, 571 U.S. at 290; *Young v. Colgate–Palmolive Co.*, 790 F.2d 567, 572 (7th Cir. 1986) ("[I]t is clear that mere adverse effects on a corporation which is present within a state are not enough.").

This Court therefore cannot exercise personal jurisdiction over Mr. Mullican.[6]

## IV.
## Conclusion

The individual defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED** as to Defendants Kevin Mullican and John Does 1–10

---

[6] Max alternatively requests jurisdictional discovery to show that the individual defendants are subject to personal jurisdiction in Indiana. Dkt. 56 at 18–20. Max has not, however, explained why jurisdictional discovery may show that Mr. Mullican is subject to personal jurisdiction in Indiana when more than harm to Max in Indiana is required. *See id.*; *see Central States, Se. & Sw. Areas Pension Fund v. Reimer Exp. World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted.").

13

and otherwise **DENIED**.  Dkt. [49].  The **Clerk shall remove** Defendants Kevin Mullican and John Does 1–10 from the docket.

**SO ORDERED.**

Date: 2/24/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel